UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| NORA FERNANDEZ; AUGUSTO SCHREINER; EDDIE TORO VELEZ; VICTOR R. VELA DIEZ DE ANDINO; JUAN VIERA; GEORGINA VELEZ MONTES; and ESTHER SANTANA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBS AG; UBS FINANCIAL SERVICES, INC.; UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO; UBS TRUST COMPANY OF PUERTO RICO; UBS BANK USA; CARLOS V. UBIÑAS; MIGUEL A. FERRER; BANCO POPULAR de PUERTO RICO; and POPULAR SECURITIES, LLC,<br><br>Defendants. | No. 3:14-cv-01441 (CCC) |

**THE UBS DEFENDANTS' MOTION TO TRANSFER VENUE**

**Table of Contents**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ........................................................................................................................ 4

ARGUMENT .............................................................................................................................. 7

    I.     THE FORUM SELECTION CLAUSE IS MANDATORY, VALID AND
          REQUIRES THIS ACTION TO BE LITIGATED IN NEW YORK ............................ 9

          A.     The Forum Selection Clause Applies to All of the Claims Alleged ............... 10

          B.     The Forum Selection Clause Applies to All of the Plaintiffs ......................... 11

    II.    THE FORUM SELECTION CLAUSE MUST BE ENFORCED UNDER
         *ATLANTIC MARINE* ................................................................................................ 12

          A.     There Are No Exceptional or Extraordinary Public Interest Factors
               Present That Warrant Denying the Motion to Transfer .................................. 13

          B.     The Pending Securities Action And Consolidation Motion Do Not
               Justify Setting Aside the Forum Selection Clause .......................................... 14

CONCLUSION ......................................................................................................................... 15

## TABLE OF AUTHORITIES

### Cases

*Alliance Comm'ns. Coop. v. Global Crossing Telecomms.*, Nos. Civ. 06-4221, 06-3023, 2007 WL 1964271 (D.S.D. July 2, 2007) ........................................................ 15

*Atlantic Marine Constr. Co. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013) ........................................................................................ passim

*Banco Popular de Puerto Rico v. Airborne Grp. PLC*, 882 F. Supp. 1212 (D.P.R. 1995) ................................................................................................................. 10, 11, 12

*Canatelo, LLC v. Bosch Sec. Sys., Inc.*, 959 F. Supp. 2d 220 (D.P.R. 2013) ................................ 4

*Caribbean Rests., LLC v. Burger King Corp.*, Civ. No. 14-1200, 2014 WL 2465133 (D.P.R. June 3, 2014).......................................................................................... 8, 13, 14

*Ciro Energy Partners, LLC v. Torres-Torres*, No. 12-1917, 2013 WL 6628139 (D.P.R. Dec. 12, 2013)................................................................................................................ 10, 14

*Couvertier v. Concourse Rehab. And Nursing, Inc.*, 984 N.Y.S.2d 683 (N.Y. App. Div. 2014) ........................................................................................................................ 10

*D.I.P.R. Mfg., Inc. v. Perry Ellis Intern, Inc.*, 472 F. Supp. 2d 151 (D.P.R. 2007) ................ 11, 13

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735 (S.D.N.Y. 2013)................................................................................................................ 5

*Gateway Cos. v. Vitech Am., Inc.*, 33 Fed. Appx. 578 (2d Cir. 2002) ......................................... 15

*Huffington v. T.C. Grp.*, 637 F.3d 18 (1st Cir. 2011) .................................................................. 10

*K&S Assocs. v. Edwardsville Cmty.*, No. 22-cv-598, 2012 WL 76143 (N.D Ill. Jan. 10, 2012) ........................................................................................................................ 15

*Langsam v. Vallarta Gardens*, No. 08 Civ. 2222, 2009 WL 8631353 (S.D.N.Y. June 15, 2009)................................................................................................................ 9

*M/S Bremen v. Zapata Off-Shore, Co.*, 407 U.S. 1 (1972) ............................................................ 9

*Marano Enters. v. Z-Teca*, 254 F.3d 753 (8th Cir. 2001) ............................................................. 12

*Margquez v. Drugs Unlimited, Inc.*, 737 F. Supp. 2d 66 (D.P.R. 2010)....................................... 13

*Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10 (1st Cir. 2009).......................................... 8

*Seguro de Servicio de Salud de Puerto Rico v. McAuto Sys. Grp., Inc.*, 878 F.2d 5 (1st Cir. 1989)................................................................................................................ 15

*St. Jude Medical, S.C., Inc. v. Biosense Webster, Inc.*, No. 12-621, 2012 U.S. Dist. LEXIS 62534 (D. Minn. May 4, 2012) .................................................................................. 12

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ...................................................... 8

*Taxes of Puerto Rico, Inc. v. Taxworks, Inc.*, No. 12-2059, 2014 WL 1089259 (D.P.R. Mar. 20, 2014) .................................................................................................................. 8

*United States v. Raphelson*, 802 F.2d 588 (1st Cir. 1986) ............................................................. 9

**Statutes**

28 U.S.C. § 1404 ............................................................................................................................ 15

28 U.S.C. § 1404(a) ......................................................................................................................... 1

**Federal Rules**

Fed. R. Evid. 801(d)(2) .................................................................................................................... 9

UBS AG, UBS Financial Services Inc. ("UBS Delaware"), UBS Financial Services Incorporated of Puerto Rico ("UBS Puerto Rico"), UBS Trust Company of Puerto Rico, UBS Bank USA ("UBS Bank") (together "UBS"), Carlos V. Ubiñas and Miguel A. Ferrer (together with UBS, the "UBS Defendants")[1] respectfully move the Court to transfer venue to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## PRELIMINARY STATEMENT

Immediately prior to filing this case, the very same Plaintiffs, represented by the very same attorneys, bringing suit against the very same Defendants, filed a putative class action complaint in the United States District Court for the Southern District of New York (the "New York Complaint") asserting the very same underlying allegations and causes of action. Indeed, 158 of the New York Complaint's 163 paragraphs are word-for-word the same as the Class Action Complaint before this Court (the "Puerto Rico Complaint"). The only substantive difference between the complaints concerns venue. In the New York Complaint, Plaintiffs confirmed that they were bound to litigate this case exclusively in New York:

> Venue is proper in [the Southern District of New York] . . . because the UBS Client Relationship Agreement (the "UBS Client Relationship Agreement"), and its predecessors, provide that venue is appropriate in this District [the Southern District of New York]. The UBS Client Relationship Agreement specifically states that clients **"submit to the exclusive jurisdiction of the courts of the State of New York and the Federal courts sitting in the Southern District of New York for the purpose of determining all matters with regard to the Agreement."** Further, the UBS Client Relationship Agreement provides that "any objection to the venue" or "claims that an action or proceeding has been brought in an inconvenient forum" are waived.

---

[1] Defendants in this action also include Banco Popular de Puerto Rico and Popular Securities, LLC (together, "Popular Defendants"), who join in this motion and are contemporaneously filing a separate brief.

1

Ex. A (New York Compl.) ¶ 14 (emphasis added).[2]  Despite Plaintiffs' affirmative statement that the only appropriate venue for this matter is New York, on May 30, 2014, Plaintiffs dismissed the New York Complaint and, on the same day, filed the Puerto Rico Complaint.  In doing so, Plaintiffs brazenly dropped the original venue paragraph, and, in conclusory language, replaced it with a paragraph claiming venue in this district is proper.  Plaintiffs' strategic ploy, however, cannot erase the mandatory forum selection clause that requires this action to be heard in New York.

*First*, this case alleges the purported breach of certain contractual and fiduciary duties and obligations, which, Plaintiffs themselves have pled were set forth in the UBS Client Relationship Agreements and the master account agreements (the "Client Agreements").  These same Client Agreements contain the broad, mandatory forum selection clause cited to in the New York Complaint that requires Plaintiffs to "submit to the ***exclusive*** jurisdiction of [New York courts] . . . for the purpose of determining ***all matters*** with regard to the Agreement." *See* Millett Aff. ¶ 4; *see, e.g.*, Millett Aff. Ex. 1 at 9.[3]  Thus, as a matter of black letter contract interpretation, Plaintiffs' claims for breach of contract, fiduciary duty and aiding and abetting fall squarely within the scope of this mandatory forum selection clause.

*Second*, in the recent December 2013 decision, *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, the United States Supreme Court reiterated the high degree of deference that courts should afford a mandatory forum selection clauses, such as the one at issue here: "When a defendant files [a §1404 motion], we conclude, a

---

[2]  "Ex. _" refers to the exhibits to Defendants' Motion to Transfer and "Millett Aff." refers to the Affidavit of Maureen Millett and the exhibits attached thereto.

[3]  The forum selection provision which is contained in the Client Agreements provides for the exclusive jurisdiction of New York courts only if the arbitration provisions contained in the Client Agreements are inapplicable.  The arbitration provisions do not apply to this case, at this stage, because it is a putative class action. *See, e.g.*, Millett Aff. Ex. 1 at 12.

2

district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." 134 S. Ct. 568, 575 (2013).  Here, there simply are no "extraordinary circumstances" which, under the authority of *Atlantic Marine*, could possibly justify the denial of this motion to transfer.  Plaintiffs are private parties who have sued for monetary damages.  There is no reason why Plaintiffs cannot seek or obtain recovery in the Southern District of New York, where they originally filed suit.  This is especially true given that the Client Agreements contain a choice of law provision that states they are governed by New York law.  Moreover, not only did Plaintiffs first file this lawsuit in New York, but certain of their attorneys are also located in New York.  Thus, even if *Atlantic Marine* were not dispositive—which it is—Plaintiffs, by their own conduct, have demonstrated that the Southern District of New York is not an inconvenient forum.

   The fact that there is a securities action against certain UBS entities already pending before this Court (*In re UBS Financial Services, Inc. of Puerto Rico Securities Litigation*, Civil Case No. 3:12-cv-01663-CCC (D.P.R.) (the "Securities Action")) that involves several (but far from all) of the same closed-end funds complained of in the Puerto Rico Complaint does not constitute an extraordinary circumstance which justifies depriving UBS of a valid contractual right.  As set forth in Defendants' contemporaneously filed Brief in Opposition to the Consolidation Motion ("Opposition Brief"), the Securities Action involves different parties, different class periods, different claims and will entail different discovery.  Little would be served by consolidating the two cases with respect to either judicial economy or the convenience of the parties, which, under *Atlantic Marine*, as well as the express language of the forum clause, can be given no weight anyway.

## BACKGROUND

This case is brought on behalf of named Plaintiffs Nora Fernandez, Augusto Schreiner, Georgina Velez Montes, Juan Viera, Esther Santana, Eddie Toro Velez, and Victor Vela Diez De Andino as well as a putative class of "[a]ll persons who were clients of UBS Puerto Rico and/or Popular Securities and who were invested in any of the Funds during the Class Period and were damaged as a result of the conduct alleged herein." Ex. B (Puerto Rico Compl.) ¶ 113; Ex. A (New York Compl.) ¶ 112. Both the New York and the Puerto Rico Complaints allege that the Client Agreements set forth both the contractual and fiduciary duties owed to the Class Members. Ex. B (Puerto Rico Compl.) ¶¶ 48, 65; Ex. A (New York Compl.) ¶¶ 47, 64.

Five of the seven named Plaintiffs, Nora Fernandez, Augusto Schreiner, Georgina Velez Montes, Juan Viera, Esther Santana, are alleged to be clients of UBS who entered into Client Agreements that contain the same or substantially similar terms as those between UBS and the rest of the members of the Class. Ex. B (Puerto Rico Compl.) ¶¶ 16-17, 20-21, 48; Ex. A (New York Compl.) ¶¶ 15-16, 19-20, 47. Upon the opening of their respective accounts, in the ordinary course, each of these Plaintiffs was provided with a welcome package or new account form that contained or attached the applicable Client Agreement. Millett Aff. ¶ 2. Plaintiffs were required to and did execute the signature page to the applicable Client Agreement that included substantially the same choice of law provision and mandatory forum selection clause, providing for, exclusively, the law and courts of New York. *See* Millett Aff. ¶¶ 5, 7-16; Millett Aff. Exs. 3, 5, 7, 9, 11.[4] The applicable clause also stated that each client waived any objection to the venue or claims that an action or proceeding has been brought in an inconvenient forum:

---

[4] A court may look to documentary evidence in determining a motion to transfer venue. *See, e.g.*, *Canatelo, LLC v. Bosch Sec. Sys., Inc.*, 959 F. Supp. 2d 220, 224 (D.P.R. 2013);

4

> [Y]ou submit to the *exclusive* jurisdiction of the courts of the State of New York and the Federal courts sitting in the Southern District of New York for the purpose of determining *all matters* with regard to the Agreement. You also consent to service of process by certified mail to your Account's address of record, and you waive any objection to the venue and any claims that an action or proceeding has been brought in an inconvenient forum.

*See, e.g.*, Millett Aff. Exs. 1 at 9, 6 at 10 (emphasis added). In addition, the Client Agreement, the most current version of which is available on UBS's website, applies to all client accounts at UBS, "including any Accounts you may already have with us and Accounts you may open in the future." Millett Aff. Ex. 1 at 1.

The two remaining Plaintiffs, Eddie Toro Velez and Victor Vela Diez De Andino are alleged to be clients of Banco Popular. Even though the Puerto Rico Complaint does not plead that these Plaintiffs are clients of UBS, all Plaintiffs bring claims against the UBS Defendants for breach of the Client Agreement, breach of the fiduciary duty purportedly arising under that Client Agreement or aiding and abetting. Ex. B (Puerto Rico Compl.) ¶¶ 121-36, 152-59; *see also* Ex. A (New York Compl.) ¶¶ 120-35, 151-58.[5]

**Plaintiffs' Claims**

Plaintiffs assert claims against the UBS Defendants and the Banco Popular Defendants seeking damages in connection with a purported scheme to steer clients into twenty-three closed-end mutual funds that provide tax-free income to Puerto Rican investors. *See* Ex. B (Puerto Rico Compl.) ¶¶ 1-11, 39-42, 74-80, 86-93; Ex. A (New York Compl.) ¶¶ 1-11, 38-41, 73-79, 85-92. Plaintiffs allege that, of the funds at issue, nine are jointly managed by UBS and Banco Popular,

---

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 737 n.1 (S.D.N.Y. 2013).

[5] Although Count V of the Complaint states that UBS owes "contractual obligations to Plaintiffs and each member of the Class who entered into a UBS Client Agreement," this Count, like the other Counts against the UBS Defendants, is brought by all Plaintiffs, not just those alleged to be clients of UBS. *See, e.g.*, Ex. B (Puerto Rico Compl.) ¶ 159.

5

and fourteen are managed solely by UBS. Plaintiffs bring claims against the various UBS Defendants for either breach of fiduciary duty, aiding and abetting the breach of fiduciary duty, and/or breach of contract. Plaintiffs also bring similar claims against either one or both of the Popular Defendants. According to Plaintiffs, Defendants pushed their respective clients to buy the closed-end funds in order to earn commissions and fees, without regard to whether such investments were suitable for their clients. Ex. B (Puerto Rico Compl.) ¶¶ 5-7, 65-93; *see also* Ex. A (New York Compl.) ¶¶ 5-7, 64-92. Plaintiffs allege that Defendants misrepresented the nature of the closed-end funds—touting the funds as safe and secure investments when in reality they were risky and volatile. *See, e.g.*, Ex. B (Puerto Rico Compl.) ¶¶ 57, 74, 76, 96-97; Ex. A (New York Compl.) ¶¶ 56, 73, 75, 95-96. By engaging in this alleged scheme, the Defendants purportedly breached, or aided and abetted in the breach of, their contractual and fiduciary duties, as memorialized in the Client Agreements, to, *inter alia*, provide personalized investment advice in their clients' best interests. *See, e.g.*, Ex. B (Puerto Rico Compl.) ¶¶ 48-52, 56, 123-25, 154-57; Ex. A (New York Compl.) ¶¶ 47-51, 55, 122-24, 153-56.

**The Motion to Consolidate**

On June 12, 2014, Plaintiffs filed a motion, together with plaintiffs in the Securities Action, seeking, among other things, consolidation of this Action with the Securities Action (the "Consolidation Motion").[6] As set forth in Defendants' Opposition Brief, consolidation is not appropriate because this Action is subject to the forum selection clause and should be transferred to New York. In addition, there are several notable differences between this Action and the Securities Action that weigh against consolidation. Among other things, the two actions name different defendants (the Securities Action does not name either the Popular Defendants, UBS

---

[6] The Consolidation Motion now before this Court was filed after Plaintiffs filed and then withdrew, on the same day, an initial motion to consolidate.

6

AG, UBS Bank USA or Carlos Ubiñas as defendants); allege different class periods and different claims; concern different closed-end funds (the Securities Action does not involve five of the funds co-managed by UBS and Banco Popular and five of the funds managed solely by UBS that are alleged in the Fernandez Action); and seek damages for purported misconduct that occurred at different periods of time.  *See* Opposition Brief at 11-12.  By way of example, the Securities Action alleges damages primarily occurred on May 1, 2012, when the SEC instituted proceedings against defendants, thus purportedly revealing the truth and resulting in a dramatic reduction in the value of the funds.  *See* Ex. C (Securities Compl.) ¶¶ 104-06.  In contrast, the Puerto Rico Complaint alleges that Plaintiffs suffered damages primarily in mid-2013 through early 2014—after the end of the class period in the Securities Action—based on circumstances impacting the funds (*e.g*., the downgrading of Puerto Rico government debt), which are not alleged in the Securities Action and which occurred after that case was filed.  *See* Ex. B (Puerto Rico Compl.) ¶¶ 104-109; Ex. A (New York Compl.) ¶¶ 103-08.

## ARGUMENT

In *Atlantic Marine,* the Supreme Court determined both the proper method and standard for enforcement of a valid forum selection clause.  First, the Supreme Court held that the appropriate means to enforce a forum selection clause should be a motion to transfer pursuant to 28 U.S.C. § 1404.  *Atlantic Marine*, 134 S. Ct. at 575.  Then, the Supreme Court stated the proper application of § 1404: although § 1404 typically requires a court to balance "both the convenience of the parties and various public-interest considerations . . . [t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause . . . ." *Id.* at 581.  In these instances, the "plaintiff's choice of forum merits no weight" and the plaintiff bears the burden of opposing transfer.  *Id.*  Further, a court should "not consider arguments about the parties' private

7

interests." *Id.* at 582. Instead, courts look only to public interest factors, which "will rarely defeat a transfer motion." *Id.*; *Caribbean Rests., LLC v. Burger King Corp.*, Civ. No. 14-1200, 2014 WL 2465133, at *5 (D.P.R. June 3, 2014) ("the party acting in violation of the forum-selection clause . . . must bear the burden of showing that public interest factors overwhelmingly disfavor a transfer") (citing *Atlantic Marine*, 134 S. Ct. at 583). The practical result being that "forum-selection clauses should control except in unusual cases." *Atlantic Marine*, 134 S. Ct. at 582.

To determine whether to grant this motion to transfer, as a threshold matter, this Court should analyze whether the forum selection clause is valid, mandatory, and encompasses the claims at issue. *See Burger King Corp.*, 2014 WL 2465133, at *5; *Rivera*, 575 F.3d at 17, 19. Once this determination is made, under the binding authority of *Atlantic Marine*, the clause must be enforced (and the motion granted) unless Plaintiffs can show "extraordinary circumstances unrelated to the convenience of the parties" that overwhelmingly disfavor transfer. 134 S. Ct. at 575, 581; *see also Taxes of Puerto Rico v. Taxworks*, No. 12-2059, 2014 WL 1089259, at *5 (D.P.R. Mar. 20, 2014) (transferring the action to Missouri pursuant to a forum selection clause and, in light of *Atlantic Marine*, rejecting plaintiff's arguments that convenience and the need to keep litigation consolidated required that the case remain in the District of Puerto Rico).[7]

---

[7] Federal law applies to the enforcement of a forum selection clause where, as here, Defendants move to transfer under §1404. *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988) ("We hold that federal law, specifically 28 U.S.C. §1404(a), governs the District Court's decision whether to give effect to the parties' forum selection clause and transfer this case . . . ."); *see also Rivera v. Centro Medico de Turabo*, 575 F.3d 10, 17-18 (1st Cir. 2009) (applying federal common law to enforce a forum selection clause where it did not conflict with Puerto Rico law, which was the law that governed the contract at issue); *Licensed Practical Nurses, Technicians & Healthcare Workers of N.Y., Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393, 400 (S.D.N.Y. 2000) (New York "has adopted the same rule" as federal courts regarding the enforceability of forum-selection clauses). In addition, regardless of whether New York or Puerto Rico law applies, the plain language of the forum

**I.    THE FORUM SELECTION CLAUSE IS MANDATORY, VALID AND REQUIRES THIS ACTION TO BE LITIGATED IN NEW YORK**

As Plaintiffs conceded in the New York Complaint, the Client Agreements require Plaintiffs to "submit to the *exclusive* jurisdiction of [New York courts] . . . for the purpose of determining *all matters* with regard to the Agreement." See Millett Aff. ¶ 4; *see, e.g.*, Millett Aff. Exs. 1 at 9, 6 at 10.[8] Given this unambiguous language, the forum clause at issue here is, unquestionably, mandatory.[9] *See Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 17 (1st Cir. 2009) (stating that mandatory forum selection clauses contain clear language indicating that jurisdiction is appropriate exclusively in the designated forum); *Langsam v. Vallarta Gardens*, No. 08 Civ. 2222, 2009 WL 8631353, at *5 (S.D.N.Y. June 15, 2009) (stating that, under New York law, a forum selection clause is mandatory if it indicates that the parties intend to make jurisdiction exclusive). Where, as here, a forum selection clause is mandatory, it is well-established that it is *prima facie* enforceable and the party opposing its enforcement bears a heavy burden to defeat it. *See Rivera*, 575 F.3d at 17-18 (stating that mandatory forum selection clauses, which contain clear language that jurisdiction and venue are appropriate exclusively in the designated forum, carry a strong presumption of enforceability); *see also M/S Bremen v. Zapata Off-Shore, Co.*, 407 U.S. 1, 10, 15-19 (1972) (the party resisting a valid forum selection

---

clause, which is clear and unambiguous, will be interpreted to have the same meaning. *See Huffington*, 637 F.3d at 21.

[8] Certain UBS Bank relationships, which are not central to Plaintiffs' allegations, are governed by a separate forum selection clause that invokes Utah jurisdiction.

[9] In fact, Plaintiffs' statement in the New York Complaint that the exclusive forum for this Action is New York constitutes a party admission, which is admissible into evidence for the truth of the matter asserted. *See* Fed. R. Evid. 801(d)(2); *United States v. Raphelson*, 802 F.2d 588, 592 (1st Cir. 1986).

9

clause bears the "heavy burden" of demonstrating that it should not be enforced). Plaintiffs do not and cannot meet this heavy burden, and the forum selection clause should be enforced

### A. The Forum Selection Clause Applies to All of the Claims Alleged

The forum selection clause applies to all of Plaintiffs' claims. Breach of contract claims always fall within the scope of a forum selection clause contained within the contract at issue. *See, e.g.*, *Ciro Energy Partners, LLC v. Torres-Torres*, No. 12-1917, 2013 WL 6628139, at *3 (D.P.R. Dec. 12, 2013) (stating that plaintiff's breach of contract claim was "[c]learly . . . one "under" the asset purchase agreement" so was covered by the forum selection clause in that agreement). In addition, by its plain language, the forum selection clause is broad: applying to "***all matters*** with regard to [the] Agreement." *See, e.g.*, Millett Aff. Exs. 2 at 12. Myriad courts, including this Court, have held that tort and other non-contract claims are subject to mandatory forum selection clauses, especially where, as here, the language of the clause is broad. *See Huffington v. T.C. Grp.*, 637 F.3d 18, 21-22 (1st Cir. 2011) (finding forum selection clause to apply to lawsuit for state statutory claims where clause reaches "any claim 'with respect to' the agreement); *Rivera*, 575 F.3d at 18-19 (the applicability of a forum selection clause does not depend on the nature of the underlying action); *Banco Popular de Puerto Rico v. Airborne Grp. PLC*, 882 F. Supp. 1212, 1217 (D.P.R. 1995) ("Contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.") (citation omitted); *Couvertier v. Concourse Rehab. And Nursing, Inc.*, 984 N.Y.S.2d 683, 684 (N.Y. App. Div. 2014) (finding that a forum selection clause applied to a tort action because the "applicability of a forum selection clause does not depend on the nature of the underlying action."). According to Plaintiffs, the fiduciary obligations that purportedly were breached arise under and are memorialized in the Client Agreements. *See* Ex. B (Puerto Rico

10

Compl.) ¶¶ 48, 51, 65; Ex. A (New York Compl.) ¶¶ 47, 50, 64.  As such, the breach of fiduciary duty and aiding and abetting claims easily fall well within the reach of the forum selection clause and transfer of all of Plaintiffs' claims is warranted.

### B. The Forum Selection Clause Applies to All of the Plaintiffs

In addition to the claims brought by Plaintiffs who are clients of UBS Puerto Rico (the "UBS Plaintiffs"), the forum selection clause also applies to the claims brought by the two Plaintiffs who are alleged to be clients of Popular Securities (the "Popular Plaintiffs") as well as the claims brought against the Popular Defendants.  Courts consistently hold that non-signatories to a contract are bound by a forum selection clause where their alleged conduct is "closely related to the contractual relationship."  *See D.I.P.R. Mfg., Inc. v. Perry Ellis Intern, Inc.*, 472 F. Supp. 2d 151, 153 (D.P.R. 2007); *Airborne Grp.*, 882 F. Supp. at 1216.  Here, the Popular Plaintiffs have chosen to sue the UBS Defendants as well as the Popular Defendants.  *See, e.g.*, Ex. B (Puerto Rico Compl.) ¶¶ 56-57, 74, 76, 96-97, 121-137, 152-159.  Moreover, the Popular Defendants' alleged misconduct is closely related to UBS's alleged misconduct, as the allegations against the Popular Defendants stem from their alleged co-management with UBS of nine of the twenty-three closed-end funds complained of in the Complaint.  In addition, the Popular Plaintiffs chose to join with the UBS Plaintiffs in bringing this lawsuit, and allege claims that, as pled, arise under or are closely related to the Client Agreement.  Ex. B (Puerto Rico Compl.) ¶¶ 48, 51, 65, 121-28, 152-159.[10]

Notably, in the New York Complaint, the Popular Plaintiffs, together with the UBS Plaintiffs, asserted that venue was proper in New York because of the forum selection clause contained in the Client Agreements.  *See* Ex. A (New York Compl.) ¶ 14.  In doing so, and in

---

[10] Of course, for the same reasons, any claims brought against the individual UBS Defendants, Messrs. Ferrer and Ubiñas, are also subject to the forum selection clause.

11

joining with the UBS Plaintiffs to bring suit, the Popular Plaintiffs acquiesced to the terms of Client Agreement and, in particular, the forum selection clause.  Consequently, they cannot now "object to [it]."  *See Marano Enters. v. Z-Teca*, 254 F.3d 753, 758 (8th Cir. 2001) (finding that, a voluntary plaintiff who brings suit under an agreement, "will not now be heard to object to jurisdiction limited to the venue(s) to which his co-plaintiffs agreed.");  *see also St. Jude Medical, S.C., Inc. v. Biosense Webster, Inc.*, No. 12-621, 2012 U.S. Dist. LEXIS 62534, at *12 (D. Minn. May 4, 2012) (holding non-signatory defendant bound by forum selection clause under 'closely related' theory because the non-signatory willingly joined signatory defendant's suit for declaratory relief and so assumed terms of defendant's contract).

A plaintiff who has contractually agreed to litigate in a particular chosen forum, should not be able to avoid its binding contractual obligation, by joining with non-signatories (regardless of the merits of any claims the non-signatories may or may not have) in bringing suit. Even if the non-signatories' claims were eventually dismissed (as any claims by Popular Plaintiffs against the UBS Defendants should be here) the impact would still be potentially years of litigation in a forum that was not agreed upon; violating the terms of the agreement between the parties and depriving the UBS Defendants of a valid and binding contractual right.

## II.     THE FORUM SELECTION CLAUSE MUST BE ENFORCED UNDER *ATLANTIC MARINE*

Once a court determines that a forum selection clause is mandatory and valid, and covers the claims at issue, as it is and does here, the court may only disregard the clause in extraordinary or exceptional circumstances.  *Atlantic Marine*, 134 S. Ct. at 581 ("[A] valid forum selection [should be] given controlling weight in all but the most exceptional cases.") (quoting *Stewart*, 487 U.S. at 33).  "Enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."  *Id*. at 581

(citing *Stewart*, 487 U.S. at 33); *see also Airborne Grp.*, 882, F. Supp. at 1215 ("[E]xtremely strong public policy concerns urge the enforcement of [forum selection] clauses. 'The expansion of America businesses and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts . . . .'") (citing *M/S Bremen,* 407 U.S. at 9); *D.I.P.R Mfg.*, 472 F. Supp. 2d at 153 (recognizing that "forum selection clauses are an increasingly important phenomenon in business contracting" and that parties include such clauses for various reasons including convenience and a forum's expertise in a specific area of law, or to minimize the risk of litigation over jurisdiction).

### A.  There Are No Exceptional or Extraordinary Public Interest Factors Present That Warrant Denying the Motion to Transfer

In *Atlantic Marine*, the Supreme Court identified several public interest factors that courts may analyze to determine whether exceptional circumstances exist to defeat a transfer motion including, "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine,* 134 S. Ct. at 581 n.6. An analysis of those three factors here easily favors transfer. First, as recognized in the recent *Burger King* decision applying *Atlantic Marine*, "the District of Puerto Rico has one of the most congested criminal and civil dockets in the nation." *Burger King*, 2014 WL 2465133, at *10 (internal citations omitted); *see also Margquez v. Drugs Unlimited, Inc.*, 737 F. Supp. 2d 66, 68 (D.P.R. 2010) ("In this extremely congested district, both on the civil and criminal dockets, it is thus extremely important for the court to effectively manage its caseload."). Accordingly, as the *Burger King* Court held, this factor "weighs heavily in favor of transfer" here. *See Burger King*, 2014 WL 2465133, at *7. Second, there is no extraordinary or exceptional local interest

implicated by this Action. This is a case for monetary damages that solely involves private parties (there are no government entities involved). Although the Plaintiffs are residents of Puerto Rico and certain of the conduct alleged took place in Puerto Rico, there is no reason why Plaintiffs cannot, as they agreed when they signed the Client Agreements, seek relief in the courts of New York, which are perfectly competent and well-suited to hear this case. *See Huffington*, 637 F.3d at 25; *Burger King*, 2014 WL 2465133, at *7. Of course, the fact that these very same Plaintiffs have already availed themselves of the New York courts by first filing this exact case in the Southern District significantly undermines any argument Plaintiffs may make to the contrary. Moreover, Plaintiffs specifically chose to retain attorneys who are based in New York. Third, because, the Client Agreements contain a New York choice of law clause, Puerto Rico is not necessarily the "forum that is at home with the law," likewise weighing in favor of transfer. *See Burger King*, 2014 WL 2465133, at *8.

### B. The Pending Securities Action And Consolidation Motion Do Not Justify Setting Aside the Forum Selection Clause

As set forth in Defendants' Opposition Brief, the Securities Action, which has been pending before this Court for nearly two years, should have no impact on this Court's enforcement of the valid mandatory forum selection clause that plainly applies to the claims in this Action. The *Atlantic Marine* decision has made it absolutely clear that forum selection clauses must be enforced. *See Ciro Energy Partners*, 2013 WL 6628139, at *3 (describing the *Atlantic Marine* holding as the Supreme Court's "reiteration of the sanctity of forum selection clauses"). The pendency of the Securities Action, which involves different parties, alleges different claims and putative class periods, and asserts damages based on different events, does not constitute an extraordinary circumstance that could possibly justify setting aside the forum clause. Courts enforce forum selection clauses even when a related action may be pending,

14

regardless of the potential for duplicative litigation. *See, e.g.*, *Gateway Cos. v. Vitech Am., Inc.*, 33 Fed. Appx. 578, 579 (2d Cir. 2002) (affirming district court's refusal to transfer venue to the Southern District of Florida, where related matters were pending, on the basis of a forum selection clause, which provided that actions be brought in New York state or federal courts); *K&S Assocs. v. Edwardsville Cmty.*, No. 22-cv-598, 2012 WL 76143, at *2-8 (N.D Ill. Jan. 10, 2012) (granting a motion to dismiss based on improper venue due to the existence of a valid, mandatory forum selection clause and finding that this rendered the opposing party's motion to consolidate moot); *Alliance Comm'ns. Coop. v. Global Crossing Telecomms.*, Nos. Civ. 06-4221, 06-3023, 2007 WL 1964271, at *12-13 (D.S.D. July 2, 2007) (dismissing a third party complaint on the basis of a forum selection clause, because the potential for duplicative litigation did "not outweigh the strong policy favoring forum selection clauses," and it was not a sufficient reason to disregard the bargain struck by the parties); *see also Seguro de Servicio de Salud de Puerto Rico v. McAuto Sys. Grp., Inc.*, 878 F.2d 5, 8-10 (1st Cir. 1989) (reversing lower court's order to consolidate two cases because the party seeking consolidation had not justified forfeiture of the opposing party's contractual right to arbitration).

## CONCLUSION

For the foregoing reasons, the UBS Defendants respectfully request that the Court grant their motion to transfer venue pursuant 28 U.S.C. § 1404 and transfer this Action to the Southern District of New York, where it was originally filed by Plaintiffs.

Dated: July 11, 2014  Respectfully submitted,
San Juan, Puerto Rico


BOBONIS, BOBONIS & RODRIGUEZ POVENTUD

By: /s/ Guillermo J. Bobonis
    USDCPR Bar No. 126214

Guillermo J. Bobonis
129 De Diego Ave.
San Juan, P.R. 00911
Telephone: (787) 725-7941
Facsimile: (787) 725-4245

*Attorneys for Defendant Miguel A. Ferrer*


O'NEILL & BORGES LLC

By: /s/ Salvador J. Antonetti-Stutts
    USDCPR Bar No. 215002

Salvador J. Antonetti-Stutts
American International Plaza
250 Muñoz Rivera Ave., Ste. 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944

*Attorneys for Defendants UBS and Carlos V. Ubiñas*


STROOCK & STROOCK & LAVAN LLP
Melvin A. Brosterman
Francis C. Healy
180 Maiden Lane
New York, NY 10038
Telephone: (212) 806-5632
Facsimile: (212) 806-6006

*Attorneys for Defendant Miguel A. Ferrer*


SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood
Janet A. Gochman
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
*Pro Hac Vice* Admission Pending

*Attorneys for Defendants UBS and Carlos V. Ubiñas*