# EXHIBIT P

CERTIFIED TRANSLATION

**PaineWebber, Inc. v. First Boston, Inc., 1994 JTS 98 (1994)**

136 D.P.R. 541

1994 JTS 98, 136 D.P.R. 541, 1994 WL 909748 (P.R.)

PAINEWEBBER INCORPORATED OF PUERTO RICO, plaintiff and appellant
v.
FIRST BOSTON (Puerto Rico) INC., defendant and appellee

In The Supreme Court of Puerto Rico.
*Number:* RE-91-297

JUDGMENT of Angel F. Rossy Garcia, J. (San Juan) which dismisses the breach of contract with the imposition of costs to the plaintiff. *Confirmed.*

*Peter J. Trias, Acevedo and Otero*, the Appellant's Attorneys; *Pedro J. Santa Sanchez and Luis Edwin Gonzalez Ortiz, from O'Neill & Borges,* the appellee's attorneys.

CHIEF JUDGE MR. ANDREU GARCIA issued the Court's opinion.

We must determine the statute of limitations applicable to claims for breach of a purchase/sale agreement under the Uniform Securities Act, 10 L.P.R.A. sec. 851 *et seq.* We determined that the *only* applicable term is the one specifically required by this law.

# I

PaineWebber Incorporated of Puerto Rico (hereinafter PaineWebber) entered an agreement with First Boston (Puerto Rico), Inc. (hereinafter First Boston), for the sale of securities commonly known as "Ginnie Mae". Said Ginnie Mae was delivered to PaineWebber and paid for by this entity on *May 26, 1987*, and was subsequently resold. In December 1989, PaineWebber discovered that the security acquired by First Boston was not tax exempt, therefore, they were forced to rescind the resale that was realized and compensate their clients for the damages caused.

On May 4, 1990, PaineWebber sued First Boston in the Superior Court of San Juan Court, alleging breach of contract and requesting that the sale be rescinded and that the reimbursement of the purchase price and compensation for the damages suffered be ordered. First Boston likewise requested the dismissal of the complaint dismissal invoking as a basis that PaineWebber's cause of action had expired since more than two (2) years had transpired since the date on which the contract was perfected, as per the provisions of Law Num. 60 of June 18, 1963, known as the Uniform Securities Act. In opposition, PaineWebber alleged that **\*543** by virtue of Art. 410(h) of the referenced Uniform Securities Act, 10 L.P.R.A. sec 890(h), this last one had not repealed rights and remedies existing on the effective date, such that they could choose among available remedies. As such, that they could base their claim on Art. 1864 of the Civil Code, 31 L.P.R.A. sec. 5294, which has a fifteen (15) year statute of limitations.

The court of first instance (Hon. Angel F. Rossy, J.) dismissed the complaint in its entirety because cause of action had expired. Discontent, PaineWebber appealed by way of a request for reconsideration.[1] We agreed to review the appealed judgment.

---

[1] PaineWebber submitted the following legal questions:
  1. Whether the Uniform Securities Act excludes the application of other provided by other laws.
  2. Whether the statute of limitations established by the Uniform Securities Act is applicable to the remedies provided by other laws.
  3. Whether the "trading brokers" (corredores-traficantes) can be considered stock exchange brokers under the Commercial Code of Puerto Rico.
  4. Whether the delivery of a taxable Ginnie Mae instead of tax exempt Ginnie Mae is voidable and whether the term of the examination has been contractually altered given the successive commercial



I, Juan Segarra Palmer, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish, which I have seen.

CERTIFIED TRANSLATION

**PaineWebber, Inc. v. First Boston, Inc., 1994 JTS 98 (1994)**

136 D.P.R. 541

## II

[1] Uniform Securities Act, Law Num. 60, supra, was created for the purpose of establishing a protective regulation in Puerto Rico for investors in the securities business. Until that time, there was no particular legislation with respect to this. With this objective, a Joint Report was provided to the Puerto Rico Senate,[2] which ***544** clearly presented the intent of the creators of this measure. From such report we quote in pertinent part:

The fundamental objective of this proposed measure is to *protect the investors and the general public by means of requiring compliance with certain requirements by those persons dedicated to the securities business* and the creation of a governmental body with supervisory and fiscal powers over the diverse stages of the business, for the purpose of preventing fraudulent practices during the course of the same.

> At the present time in Puerto Rico, there is no legislation whatsoever that directly regulates the subject which will be purportedly be regulated by virtue of this legislative measurement. The Commerce Code contains various articles that make reference to the "stock exchange" and the "stockholder agents". Articles 4355 and 6272 of the Code of Commerce  -10 L.P.R.A., Sections 11111116; 11311137, and Sections 11811185 and 12011206 respectively).

The Commerce Code provisions which we have mentioned are obsolete inasmuch as a "stock exchange" and "change brokers" do not exist in Puerto Rico. *Since they are so old-fashioned and so general, they do not promote the sale of securities.* Furthermore, they do not provide effective means of administration and prevention to protect the investors.

Until the present time in Puerto Rico, we have not had any serious problem related to fraudulent practices in the securities market. Nevertheless, we should prevent this from happening in the future. The adoption of a Blue Sky type statute will result in greater protection to the public investors and to those persons and entities that commit themselves to the securities business in our community. *The proposed legislation has been carefully created to provide the best possible protection to investors without imposing undue burdens on the issuing of securities or on the negotiation of the same ...* (Emphasis suppled). 17 Legislative Assemblies Diary of Sessions (Senate) T. 4, pags. 16291630 (1963).

[2-3] Based on the measure's exposition of motives, as well as the applicable hermeneutic principles, it is clearly a fact that securities transactions in Puerto Rico are governed by the Uniform Securities Act. To the extent that the latter is a special law, it should prevail over ***545** other general dispositions of the law such as the Commerce Code and the Civil Code. This is the principle *lex specialis derogat legi generali.* Refer to R.E. Bernier and J.A. Cuevas Segarra, *Aprobación e Interpretación de las leyes en Puerto Rico*, 2nd Ed., San Juan, Pubs. J.T.S., 1987, Vol. I, pag. 422.

[4] The situation presented by the captioned case is perfectly within the framework of the purported content of the Uniform

---

> sales of things which are received in a symbolic manner. 'D' Request for Reconsideration, page 2.
> In light of our decision, we will only discuss the pertinent approaches to the discussion of the applicable statute of limitations.

[2] Refer to Legislative Assembly Sessions Diary. (Senate), T. 4, page 1629 (1963).



I, Juan Segarra Palmer, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish, which I have seen.

**PaineWebber, Inc. v. First Boston, Inc., 1994 JTS 98 (1994)**

136 D.P.R. 541

Securities Act. Specifically, in the dispositions of Art. 410(a)(2) of the said law, which establishes:

(a) Any person that

(2) Offers or sells a security by means of a false statement as to a material fact, or by omitting the provision of a necessary material fact to avoid that the statements formulated, in light of circumstances under which they were made, conducive to err (being the buyer unaware of the falsity or the omission), and does not withstand the weight of the evidence of not knowing, and that exercising reasonable prudence, could not have knowledge of the falsity or omission, will be responsibility of the person that buys the security, who can file a complaint to recover the price paid for the security, in addition to interest in the amount applicable to judicial judgments pursuant to that provided by the regulations approved by the Financial Board in regard to these matters, created by secs. 2001 et seq. of Title 7, starting from the date on which the security was sold. 10 L.P.R.A sec. 890(a)(2).

[5] At the same time, the legislator clearly established in subsection (e) of the referenced section the fact that "[n]o person can file a civil complaint pursuant to the dispositions of this section, after **\*546** more than two (2) years of having executed the sales contract." 10 L.P.R.A. sec. 890(e). We are convinced that this term, is applicable to the present controversy; and is also the statute of limitations that completely corresponds with the legislative intent previously described herein. If not, what object would the legislator have in limiting the exercise of the action to a period of two (2) years as mandated therein ? In this regard we echo the words of the illustrious forum of first instance, which stated:

Adopting the theory promulgated by the plaintiff in his opposition would place the legislator in the position of having created an necessary and useless special law, and we cannot assign such intention to our Legislative Assembly. *García v. Tribunal, 91 DPR Garden v. Junta de Planificación,* 103 DPR 884 (1975). Since the clear legislative intent, as previously mentioned, is to not impose undue burdens to the issuer or negotiator of securities, we cannot validate the plaintiff's position to the effect that a cause of action such as the present case, can be initiated against a securities trader up to fifteen years after having completed a purchase/sale. Additionally, the proposed term of fifteen years is not consistent with the term of two years provided by the Uniform Securities Act, the special law governs contracts for the purchase/sale of securities in our jurisdiction. Appendix. Pag 082.

### III

[6] Art. 12 of our Civil Code, 31 L.P.R.A. sec. 12, establishes that when a subject is covered by a special law, any failure or insufficiency of the same is supplied by the dispositions of the Civil Code or with other laws *in pari materia.* Bernier and Cuevas Segarra, *op. cit*. pag. 441. See also, A. Fornies Baigorri, *Fuentes del Derecho Mercantil*, Madrid, Imp. Tipo-Linea, 1971, pag. 96.

However, this case does not present any gap whatsoever, in the law. On the contrary, the situation presented by this case is special and clearly covered by the legislator. Therefore, the quoted provision from sec. 809(a)(2) of the Uniform Securities Act is solely applicable to the present **\*547** case. There is no controversy as to the fact that



I, Juan Segarra Palmer, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish, which I have seen.

**PaineWebber, Inc. v. First Boston, Inc., 1994 JTS 98 (1994)**

136 D.P.R. 541

the parties executed sale which was commercial in nature. Notwithstanding, the type of action involved was expressly mandated by the legislator in the Uniform Securities Act, the law which regulates a specific type of commercial relationship. Furthermore, the legislator stated that this measure corresponds to the *lack of regulations* in this area, and the fact that the pertinent dispositions of the Commerce Code were *obsolete, old-fashioned and general*.[3]

Furthermore, when the legislator established in Art. 401(h), supra, of this law, [4] that the "rights and remedies provided by this Chapter are in addition to any right or remedy that may exist" (10 L.P.R.A. sec. 890(h)), clearly referred to *remedies not provided by this law*. If it were not this way, the provision under review would result completely *ineffective*, since a gamma of general remedies would be applicable to controversies similar to the present case. *The legislator then, would have acted in vain and without any purpose whatsoever.*

To apply any other statute of limitations would defeat the proposed objective of not imposing undue burdens on the issuer or trader of the securities in question. By the same token, it would indefinitely open doors for the people affected in a purchase/sale of such securities, *without taking into account* the course of commerce and the public policy that promotes it. On the other hand, it would weaken the philosophy that inspired the Commerce Code which provides short statutes of limitation which further the goal of not hindering commercial relationships.

> Nowadays, we tend to reduce prescriptive terms in general, since there are numerous and fast methods of communication, easier representation and the most elevated culture, helping us all look out for our *548 interests. But in the commercial order, even more reasons coincide: a business rapidly becomes the basis for another, the actions done with delay disrupt the economic positions that have been already constituted, the law, motionless and ambiguous, must submit to that which is secure and productive (Vivante); the alliance of individual interests with those of the collective group feels better in commerce and is affirmed with courage and if the debtor must be punctual with regard to payments, the creditor must be punctual as well at the time of requiring. (Bolaffio). E. Langle and Rubio, *Manual de Derecho Mercantil* Español, Barcelona, Ed. Bosch, 1959, T. III, Sec. 104, pag. 114. [5]

**IV**

In the present case PaineWebber paid and received the security in controversy on May 26, 1987. It was not until May 4, 1990, three (3) years later, that they filed a lawsuit against First Boston for breach of contract. Clearly, PaineWebber's cause of action was extinguished since it was not asserted within the two (2) year statute of limitations established by the Uniform Securities Act, which is the only term applicable to this factual situation. 10 L.P.R.A. sec. 890(e).

For said reasons, *the judgment appealed in this case will be confirmed.*

Associate Judge Mr. Rebollo Lopez agreed with the result, Associate Judge Mr. Negron Garcia dissented from the written opinion.

- O -

---

[3] Joint Report of the Commissions of the Judicial Civil and Industrial and Commerce as to P. Of the C. 624. Refer to Diary of Sessions (Senate), *supra*.
[4] 101 L.P.R.A. sec. 890(h).

[5] Also refer to R. Gay de Montilla, *Codigo de Comercio Español Comentado,* Barcelona, Ed. Bosch, 1948, with regard to this.

 I, Juan Segarra Palmer, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish, which I have seen.

**PaineWebber, Inc. v. First Boston, Inc., 1994 JTS 98 (1994)**

136 D.P.R. 541
Dissenting opinion, issued by Associate Judge Mr. Negron Garcia.

Paradoxically, the Court's majority opinion, instead of enforcing the spirit of the Uniform Security Act, accomplishes the contrary *549

I

PaineWebber Incorporated of Puerto Rico (hereinafter PaineWebber), an entity dedicated to brokerage business, agreed on May 6, 1987 with FirstBoston, Inc. (hereinafter FirstBoston), for the purchase/sale of a tax exempt security commonly known as "Ginnie Mae". It was delivered and paid on May 26, 1987, and was successively resold. Contrary to the agreement, on December 1989, PaineWebber discovered that it was taxable, and they were forced to reimburse his clients.

For this reason, PaineWebber sued FirstBoston on May 4, 1990, in the Superior Court, San Juan Courtroom. They alleged breach of contract because they were sold a taxable security, contrary to what was agreed to. After a temporary stay of the proceedings, defendant FirstBoston requested dismissal based on the time barred defense. For such purpose, they accepted the alleged facts. In support they asserted the two (2) year term established in the Uniform Securities Act, Law Num. 60 of June 18, 1963 (10 L.P.R.A. sec. 851 *et seq*.). First Boston claimed that since the sale was on May 6, 1987, and the lawsuit was filed on May 4, 1990, the claim was late.

In opposition, PaineWebber claimed that the Uniform Securities Act did not repeal the rights and remedies that existed when the law became effective and that they could select from the available remedies and base their con the general precepts regarding breach of contract. With regard to this predicate they argued that that this claim was governed by Art. 942 of the Commerce Code, 10 L.P.R.A. sec. 5294. After the submission of a reply and a surreply, the court (Hon. Angel F. Rossy, Judge) dismissed the case *550. As requested by PaineWebber, we reviewed the same. [1]

II

The premise of the of defendant appellee First Boston, which was accepted by the majority of this Court, establishes that Art. 410 of the Uniform Securities Act, 10 L.P.R.A, sec. 890, constitutes the *only* remedy available for the buyer that has suffered damages in the purchase/sale of a security.[2] They reason that to permit other remedies with their respective statute of

---

[1] In the brief, the following assignments of error were discussed:
 1. Whether the Uniform Securities Act excludes the application of other provided by other laws.
 2. Whether the statute of limitations established by the Uniform Securities Act is applicable to the remedies provided by other laws.
 3. Whether the "trading brokers" (corredores-traficantes) can be considered stock exchange brokers under the Commercial Code of Puerto Rico.
 4. Whether the delivery of a taxable Ginnie Mae instead of tax exempt Ginnie Mae is voidable and whether the term of the examination has been contractually altered given the successive commercial sales of things which are received in a symbolic manner. 'D' Request for Reconsideration, page 2.

For our part, we analyzed the pertinent matters to decide without embarking on unnecessary elaborations.

[2] Our Uniform Securities Act is based the Uniform Securities Act adopted in August, 1956, by the *Nacional Conference of Commissioners on Uniform State Laws.*
Refer to: L. Loss and J. Seligman, Securities Regulation, 3rd ed., Boston, Ed. Little Brown and Co., 1989, T. I, pag. 47; 17 Legislative Assembly Diary of Sessions (Senate), T. 4, pag. 1629 (1963).
The law consists of four (4) parts that discuss: (i) fraud and other prohibited practices; (ii) the securities inscription; (iv) general dispositions for the administration of the law as an example, definitions, exemptions, civil and criminal responsibilities. Loss, op. City, pag. 50; Diary of Sessions (Senate), *supra*.

---



I, Juan Segarra Palmer, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish, which I have seen.

**PaineWebber, Inc. v. First Boston, Inc., 1994 JTS 98 (1994)**

136 D.P.R. 541

limitations would defeat public policy as stated in the following excerpt of the Senate's Joint Commission Report of the Judicial Civil and Industrial and Commerce P of the C. 624:

The fundamental objective of the measure under consideration is the protection of investors and the general public through compliance with certain requirements by the persons that dedicate themselves to the security business and the creation of a governmental body with supervisory powers and fiscalization of the diverse *551 stages of the business, for the purpose avoiding the occurrence of fraudulent practices in the same course.

> … The legislation that is proposed has been carefully created to provide the best possible protection to the investor without imposing undue burdens on the issuer of securities, nor on the businessman in regard to the same. (Emphasis supplied) 17 Diary of Legislative Assembly Sessions (Senate), T. 4, pag. 16291630 (1963).

That thesis is erroneous and contradictory. The Uniform Securities Act does not exclude the applicability of other remedies. Subsection (h) as referenced in Art. 410 provides:

> The rights and remedies provided by this Chapter are *in addition to any rights or remedies that may exist*, but this Chapter will not create cause of action not specified in this section or in sec. 862(e) of this title. (Supplied Emphasis.) 10 L.P.R.A. sec. 890(h).

The elementary principle of hermeneutics provides that if the "law is clear and free of all ambiguity, the letter of the same must not be disregarded under the pretext of fulfilling the spirit 'D', which binds us. Art. 14 of the Civil Code, 31 L.P.R.A. sec. 14. Consistent with this, we understand that, with regard to the controversy of the captioned case, the purpose of this savings clause ("savings clause") is to preserve as intact those remedies or rights provided by other sources.[3] After all, "[t]he clear text of the law is the excellent expression of the legislative intention'". *Ferretería Matos, Inc. v. P.R. Tel. Co., 110 D.P.R. 153, 157 (1980)*, quoting *552 to *Rodríguez Rodríguez v. Gobernador*, 91 D.P.R. 101, 107 (1964).

It should be noted that the legislator did not refer to remedies which are not provided by this law, just as he did not mention that it concerned an exclusive remedy; he expressly provided that the rights and remedies under the referenced law will be additional to any others that may exist.

Our literal interpretation of subsection (h) also finds support in the fact that the practice under the federal securities laws, by virtue of the clauses similar to those transcribed herein, is that the persons injured in transactions of this type have a spectrum of remedies provided by federal and state common law. L. Loss and J. Seligman, *Securities Regulation*, 3rd Ed. Little Brown

---

[3] The official comments regarding subsection(h) of Art. 410 of the Uniform Securities Act, 10 L.P.R.A. sec. 890(h), indicate that the meaning of that part which begins with "but" is to avoid the development of implicit actions to the protection of the law:
"Notwithstanding he existence of several specific provisions in each one of the statutes of the SEC [Securities and Exchange Commission], the federal courts have recognized implicit causes of action in favor of a defrauded seller against a buyer under Rule X10B5 (now 240.10b5) of the SEC. Refer to, Loss, *Securities Regulations* (1951 supplemented in 1955), pag. 105266. The "but" clause in sec. 410(h) is designed to ensure that no comparable development arises based on the violation of sec. 101 of this law". (Our translation) L. Loss and E.M. Cowett, *Blue Sky Law*, Boston, Ed. Little, Brown and Co., 1958, pag. 395.



I, Juan Segarra Palmer, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish, which I have seen.

**PaineWebber, Inc. v. First Boston, Inc., 1994 JTS 98 (1994)**

136 D.P.R. 541

and Co., 1992, T. IX, pag. 4121. This is so, even when the state law provides a longer statute of limitations than the federal law, and the claim under the latter is time barred. *Rousseff v. Dean Witter &Co., Inc., 543 F. Supp. 774, 780782 (1978).*

In summary, according to the interpretation by the Court's majority, does the Uniform Securities Act offer better protection to investors and to the general public by reducing the statute of limitations to two (2) years? Does it encourage the purchase and sale of securities? Does the savings clause supply this protection? (Art. 410(h), *supra*) To establish that the Uniform Securities Act in the only remedy available in the captioned case, defeats the purpose which the legislator intended to give the law.

### III

Having clarified our position that the Uniform Securities Act does not exclude and, on the contrary, maintains unaltered the applicability of other remedies with their respective statutes of limitation, we will verify whether PaineWebber in effect has another remedy available. The review of the allegations *553 - for purposes of this incident, and regarded as true—causes us to conclude that the norm for a commercial sale, is applicable.

In this regard, Art. 243 of the Commerce Code provides:

> The purchase/sale of movable assets to be resold will is commercial, if sold in the same manner in which they were purchased or in a different manner with the intent of profiting from its resale. 10 L.P.R.A. sec. 1701.

Therefore, we have determined that the element that principally distinguishes the commercial purchase/sale is the presence of a "double purpose [from the buyer] of subsequently reselling the things which were purchased and obtain profit from the same". *Reece Corp. v. Ariela, Inc. 122 D.P.R. 270, 276277 (1988).* Refer to *Ramallo Brothers Printing, Inc. v. Ramis, 133 D.P.R. 436 (1993).*

From the lawsuit it appears that Paine Webber agreed with First Boston as to the purchase of a security the resale of which had to be rescinded; the former claims, among other items, lost profits. The "double purpose'D' characteristic of the commercial purchase/sale is present, as known by PaineWebber's intention to resell the acquired security and earn a profit. In fact, the appellant, First Boson, accepted in their brief that the purchase/sale executed by the parties was commercial in nature.

### IV

What are the seller's obligations in the commercial purchase/sale? In synthesis, they are: (1) to conserve the sold item prior to delivery (2) to deliver it on time at the agreed location, and (3) to respond with compensation. R. Uria, *Derecho Mercantil*, 10th ed., Madrid, Imp. Aguirre, 1975, pag. 478479; M. Broseta Pont *Manual de Derecho Mercantil* 7th ed., Madrid, Ed. Tecnos, 1987, pag. 402403. Clearly, this last obligation comprises compensation by eviction and by defects. *554

In *Julsrud v. Peche de P.R. Inc., 115 D.P.R. 19 (1983),* we determined that Arts. 254 and 260 of the Commerce Code, 10 L.P.R.A. secs. 1712 and 1718, have an area of tangency among them for which both refer to indemnification for defects. There we resolved that the term for a complaint provided by Art. 260, *supra*, was about to expire and we clarified, invoking Civil Code provisions, that there are differences between quality and quantity defects that are referred to in Art. 254, *supra*, and the occult defects of Art. 260, supra. We stated:

> Quality differences are inherent to the nature of the merchandise,



I, Juan Segarra Palmer, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish, which I have seen.

**PaineWebber, Inc. v. First Boston, Inc., 1994 JTS 98 (1994)**

136 D.P.R. 541

these are basic differences about its composition, about the nature of any characteristic of the item, such as differences in tissue, fiber, color, design, origin or character of raw material. An occult defect is that which escapes the observation of an average diligent person, inherent to the imperfect mode in which the merchandise was manufactured, packed, managed or stored, which renders the item inappropriate for its intended use. Julsrud v. Peche of P.R., Inc., supra. Pag. 23.

The just resolution of this appeal requires us to determine the boundaries of applicability of both articles. Art. 254, supra, covers the "triple defect hypothesis, quality defect and quantity defect".
[4] J. Garrigues, Curso de Derecho Mercantil, Bogots, Ed. Ternis, 1987, T. IV, pag. 80. Art. 254, supra, applies when any of these hypotheses is apparent. For its part. Art. 260, *supra*, *only refers* to *555 *hidden occult defects*; [5] and as such does not govern when it concerns internal quality or quantity defects that we cannot see in plain sight. These cases are equivalent to the failure of a delivery, that is a supposed breach. F. Vincent Chulia, *Compendio Critico de Derecho Mercantil*, 2nd ed., Barcelona, Ed. Bosch, 1986, T. II, pag. 98.

The failure of delivery empowers the buyer with the option of requesting obligatory compliance or rescission of the contract. In both cases it is proper to request indemnization in tort. Art. 1077 of the Civil Code, 31 L.P.R.A.sec. 3052; Art. 254 of the Code of Commerce, supra, Vicent Chulia, op. cit. Pag. 97. The term of fifteen (15) years to request compliance exists "by interaction of Art. 940 of the Commerce Code [10 L.P.R.A. sec. 1902] and Art. 1864 of the Civil Code, 31 L.P.R.A. sec. 5294". *Ramallo Brothers Printing, Inc v. Ramis, supra, pag. 440.*

**V.**

In virtue of applicable law, as stated herein, it is mandatory to conclude that the delivery of a taxable security instead of the delivery of an exempt security as agreed to, constitutes the delivery of a defectuous thing in terms of its *quality*. See Broseta Pont, *op. cit*. Pag. 405. Using the criteria outlined in *Julsrud v. Peche de P.R., Inc.*, supra, the different condition as to the taxability of the security represents a fundamental difference as to the characteristic of the item in question. Since it is a quality defect, not an occult defect, the claim, contrary that contended by First Boston, is not subject to the term for filing a complaint provided in Art. 260, *supra*. Since it is not clear from the allegations of the complaint *556 that the quality defect was apparent, on its face the claim is not extinguished or time barred; it cannot be categorically established that the defect was subject to the dispositions in Art. 254, supra. The dismissal was improper. Cf. *Rossy v. Tribunal Superior, 80 D.P.R. 729, 745 (1958).*

---

[4] This article which is equivalent to Spanish Code 336, provides:
"The buyer that, at the time of receiving merchandise, examines its content, will have no action to repeat against the seller, for alleged vices or quality defects or the quality of the merchandise.
"The buyer will have the right to repeat against the seller for defects in the quantity or quality of the merchandise received, baled or packed, when they assert their claim during the four days after receiving them, and does not apply in the case of fortuity, inherent defect of the thing, or fraud.
"In these cases, the buyer may opt for rescission of the contract or for its fulfilment, consistent with what was agreed, but always with indemnization of any injuries that would have been caused due to the defects or faults.
The seller can avoid this claim by requiring, during the delivery, that the buyer is satisfied with regard to quantity and quality." 10 L.P.R.A. sec. 1712.

[5] This text, which is equivalent to Art. 342 of the Spanish Commerce Code, provides:
"The buyer that had not made any claim based on the inherent defects of the thing sold, during the thirty following days after delivery, will lose all causes of action and rights to repeat for this reason against the seller." 10 L.P.R.A. sec. 1718.

---



I, Juan Segarra Palmer, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish, which I have seen.