# EXHIBIT Q

Case 1:15-cv-02859-SHS   Document 88-20   Filed 06/18/15   Page 1 of 5

2010 WL 3200382 (TCA)

Jorge L. TOLLINCHE PUIG, Gloria M.
Tollinche Puig and Matilde R. Tollinche Puig,
Respondents
v.
TRIPLE S MANAGEMENT CORP., Successor
of Triple S, Inc., Petitioner.

COURT OF APPEALS
Case No. KAC2008–1749 (905)
KLCE200901871
In San Juan, Puerto Rico, on May 28, 2010.
May 28, 2010.

*CERTIORARI* Petition from the Court of First Instance, Superior Court of San Juan
Matter: Civil Action

Panel composed of Chief Judge Arbona Lago, Judge Colom García and Judge Vizcarrondo Irizarry.

## JUDGMENT

ARBONA LAGO, REPORTING JUDGE

### *Appellate Procedural Background*

**\*1** The above-captioned action was filed on December 14, 2009. The petitioner, Triple S Management Corp. (Triple S), is appealing a Ruling notified on November 13, 2009.

Following several procedures, on March 29, 2010, Triple S filed in this Court a "Motion for the Certiorari Petition filed by Triple–S Management Corporation to be Deemed **Unopposed**." (Emphasis added.) Due to a reading error, we thought that Triple–S had filed a "Motion for the Certiorari Petition filed by Triple–S Management Corporation to be Deemed **Not Filed**" (emphasis added), and proceeded to issue a Ruling on March 30, 2010 dismissing the above-captioned cause of action, since we believed that Triple S had dropped the same.

Through a "Motion to Reconsider ..." timely filed by Triple–S on April 13, 2010, we learned of the mistake and know proceed to consider the merits of the matter.

As revealed by the case files, by way of a Ruling issued on February 4, 2010, we gave to respondents a term of 30 days to state their position regarding the above-captioned cause of action. On April 21, 2010, the respondents filed an opposition to the *Certiorari* petition in this case. The matter has been submitted for adjudication and below is our decision.

### *Background*

The complaint allegations reveal that between 1965 and 1970 Dr. Jorge R. Tollinche Rodríguez (Dr. Tollinche) acquired 9 commons shares of Triple S, Inc., currently Triple S Management Corp. (Triple S), for a total of $286.00. Dr. Tollinche passed away on July 31, 1999, being the owner of said 9 shares.

The case facts reveal that, on or around October of 2000, Triple S began communicating, by letter, with the members of the Estate of Tollinche Rodríguez, informing them about the right to transfer the shares, available to any of the descendants (children or grandchildren) of Dr. Tollinche who was either a physician or a dentist, as instructed in the company bylaws. They were also notified that, in case of no descendant with the right to the transfer, the shares would be redeemed and the Estate would receive the amount that the deceased originally paid for said shares. (App., pp. 280–283.)

The complaint also states that, by way of a letter signed on June 4, 2003, Triple S notified to the members of the Estate that the redemption of the 9 shares of Dr. Tollinche had been carried out. Said letter included check no. 2076 for $286.00 payable to the Estate. (App., pp. 8–9.)

On May 8 and June 13, 2007, Mr. Jorge L. Tollinche Puig, son of Dr. Tollinche, sent several communications to Triple S informing that the Estate had check no. 2076 for $286.00 that had been sent by the corporation, which, for several reasons, had not been cashed. He also requested that Triple S inform him the process to be followed to turn the 9 common shares into the new class of shares, receive their



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

real value, or a combination of both options. (App., pp. 10–11.)

**\*2** On July 3, 2007, Triple S answered that the registry of shareholders did not reveal that Dr. Tollinche or his heirs were shareholders of the corporation. It reiterated that "[t]he common shares of the Company that were owned by Dr. Tollinche were redeemed on June 4, 2003 for $286.00, the value paid by Dr. Tollinche when he acquired said shares. Said redemption was carried out in accordance with the organizational documents of the company." (App., page 12.)

In light of the above, on December 16, 2008, Mr. Jorge L., Ms. Gloria M. and Ms. Matilde R., whose last names are Tollinche Puig (hereinafter the Estate) filed civil action KAC2008–1749 (905) in the Court of First Instance, Superior Court of San Juan (TPI, acronym in Spanish), alleging that as of the demise of Dr. Tollinche the shares had a value that was higher than their original acquisition price of $286.00. Therefore, they claimed that the real value of said shares is part of the estate and is still in the possession of Triple S, which has prevented the possibility of completing the process of dividing and distributing the inheritance. The defendant, Triple S, filed a motion to dismiss based on the expiration of the statute of limitations for the action.

Following subsequent proceedings, whose discussion in detail is not necessary, on November 12, 2009, notified on November 13, 2009, TPI denied the motion to dismiss.

Triple S appealed the above and assigned the following error to TPI:

> *The Court of First Instance erred when it denied the Motion to Dismiss filed by TSM, since the allegations of the Complaint, which were taken as true, reveal the expiration of the 2-year term of the statue of limitations applicable to all claims challenging a transaction involving a security. The Respondents admitted in their Complaint that the challenged redemption of shares was notified to them in 2003 and, in spite of that, they waited until 2007 (4 years later) to contact TSM in relation to the shares, and until 2008 (more than 5 years later) to file their Complaint, in which they challenged the validity of said redemption for the first time.*

*Discussion and Analysis*

Triple S has alleged that the trial court erred when it denied the motion to dismiss, since the statute of limitations for the action had expired.

Triple S based its argument on Rule 10.2 of Civil Procedure, 32 LPRA App. III, R. 10.2, stating that when well pleaded complaint allegations are taken as true, it must be dismissed because:

> (a) Since the present action deals with the challenge of a securities transaction (in this case, the redemption of 9 shares), the statute of limitations for the action expired 2 years following performance of the transaction, in accordance with the provisions of Art. 410(e) of the Uniform Securities Act, Law No. 60 enacted on June 18, 1963, 10 LPRA sec. 890(e), as interpreted in *Paine Webber, Inc. v. First Boston, Inc.*, 136 DPR 541, 542–547 (1994).

> **\*3** (b) The complaint "specifically reveals that the Respondents had knowledge of the redemption of shares since June 4, 2003, and it is only now, 5 and a half years later, that they are challenging the same in the above-captioned case. ( ... ) Therefore, the Respondents had until June 4, 2005 to file their Complaint challenging the redemption. However, they did not do so and waited until December of 2008 (more than 5 and a half years later) to file their claim in the Complaint filed in the above-captioned action." (*Certiorari* Petition, page 13.)

> (c) "The same conclusion would be reached if one assumes that the letter sent by Respondents to TSM (Triple S) on May 8, 2007 (attached as Exhibit 3 of the Complaint and to which reference is made in paragraph 7 of the same, see App. page 4) was an out-of-court challenge of the redemption of shares that took place in 2003." *Ibid.*

The Estate, in turn, argues that:

> (a) "Article 410e (10 L.P.R.A. Sec. 893e) of the Uniform Securities Act is applicable to a securities 'purchase agreement.' Since, in this case, none of the parties has alleged the existence of a securities purchase agreement, the Securities



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Act does not apply to this case and, consequently, neither does its statute of limitations." (App., pp. 33–34.)

(b) This is a personal action that has no express statute of limitations contained in the Civil Code, therefore, the 15-year period provided by Art. 1864, 31 LPRA sec. 5294, applies.

As we will discuss below, it is incorrect.

Contrary to what the Estate claims, the remedy provided in Art. 410(e) of the Uniform Securities Act, supra, is not only available to the buyer harmed in a stock purchase.  It should be mentioned here that in *Paine Webber, Inc. v. First Boston, Inc.,* supra, our Highest Court interpreted the scope of Art. 410(e) of the Uniform Securities Act, supra, in light of the legislative intent[1] of the creators of the measure and provided as follows:

[1] In *Paine Webber, Inc. v. First Boston, Inc.,* supra, on p. 544 the following is listed as one of the purposes of the Uniform Securities Act, supra, citing the 17 Congressional Record of the Legislative Assembly (Senate), T. 4, pp. 1629–1630 (1963):

> *The fundamental purpose of the draft being considered is to protect investors and the general public by imposing certain requirements on stock brokers and the creation of a governmental entity with supervisory and enforcement powers over the different phases of the business, in order to prevent parties from incurring in fraudulent practices in the course thereof.*
> .......
> *The proposed legislation has been carefully prepared to grant the greatest possible protection to investors without imposing undue burdens on the security issuer or on the broker.*

*The statement of purpose of the measure, as well as the applicable principles of interpretation, clearly demonstrate* **the fact that securities transactions in Puerto Rico are governed by the Uniform Securities Act.  Since this is a special law, it should override other provisions of general laws, such as the Commercial Code and the Civil Code.** *This is the "lex specialis derogat legi generali" principle.*

( ... )

*[I]n paragraph (e) of the above section, the legislator clearly established the fact that"[n]o person may file a civil complaint in accordance with the provisions of this section after over two (2) years have elapsed from the moment the purchase agreement was entered into."* 10 L.P.R.A. sec. 890(e). **We are convinced that this is the statute of limitations that applies to this dispute; and it is also the statute of limitations that is fully compatible with the legislative intent described above.** *Otherwise, what purpose would the legislator have for limiting the statute of limitations for filing the action regulated therein to two (2) years? In this regard, we echo the words of the illustrious court of first instance which stated:*

***4** Adopting the theory set forth by plaintiff in its opposition would place the legislator in the position of having created an unnecessary and useless special law and we cannot attribute said intention to our Legislative Assembly. García v.* Tribunal, 91 D.P.R. 153, 156 (1964); *Flamboyán Gardens v. Junta de Planificación, 103 D.P.R. 884 (1975).*

( ... )

**Applying any other statute of limitations would defeat the proposed purpose of not imposing unnecessary burdens on the security issuer or trader involved.** (Emphasis added.) *Paine Webber, Inc. v. First Boston, Inc.,* supra, pp. 544–547.

Upon reviewing the Estate's arguments in favor of considering the complaint a personal action filed under inheritance law and the unjust enrichment doctrine, we find that it seems to rely on the fact that what is claimed in the complaint is exclusively the real value that the stock had at the moment of Dr. Tollinche's death, which, as alleged in the complaint, affects the distribution of the inheritance, therefore the cause of action is not based on the Uniform Securities Act, supra.

Nevertheless, the allegations in the complaint clearly show that after the members of the estate



WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.        3

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

were made aware since October 5, 2000 of the potential redemption of the shares if they were not previously transferred to a descendant (son, daughter, grandson or granddaughter) of Dr. Tollinche entitled to do so, that is, a descendant who was a doctor or dentist, through a letter written on June 4, 2003, Triple S informed the Estate that the 9 shares that Dr. Tollinche owned in said corporation had been redeemed and included with the letter a check in the amount of $286.00, the total amount that Dr. Tollinche paid the moment he obtained the aforementioned 9 shares.

It is precisely the receipt of the check in the amount of $286.00 sent by Triple S upon redeeming the 9 shares which generated the Estate's argument, which among other matters, it questions in this complaint: Whether the aforementioned check represents the real market value of the 9 common shares belonging to Dr. Tollinche?  And whether the corporate provision that upon a shareholder's death, the Estate shall only be entitled to reimbursement of the price originally paid by the shareholder doctor or dentist, in this case Dr. Tollinche, for the shares, as absolute value cannot be challenged?

Additionally, the estate alleges in the complaint that "it has never accepted the unilateral redemption of the shares notified by defendant corporation. As a sign of their refusal to accept the redemption, plaintiffs have never delivered the shares to the corporation, nor have they accepted or cashed the check that it sent." (Ap., p. 3).

Contrary to the incorrect premise argued by the Estate, it must be concluded that their allegations and claims are formulated under the provisions of the Uniform Securities Act, supra, which has a statute of limitations of 2 years. Art. 410 of the Uniform Securities Act, supra.

**\*5** Based on the allegations contained in the complaint, the *punctus temporis* of the **2-year** statute of limitations that applies herein began to run on **June 4, 2003,** the date on which the Estate was notified of the redemption of the shares.

As such, the statute of limitations for the claim had expired when the above-captioned complaint was filed on **December 16, 2008**, since a period of inactivity of over 5 years had elapsed. It is also clear that the letters sent to Triple S on May 8 and June 13, 2007 were not a valid or efficient out-of-court claim to timely toll the statute of limitations.

In accordance with the facts that underlie this cause of action and the applicable law, it must be concluded that the statute of limitations of the complaint had expired. Therefore, the alleged mistake was committed and judgment should be vacated.

Liberative prescription is a matter of substantive, not procedural law, and is governed by principles of Civil law. *Ortiz v. P.R. Telephone,* 162 DPR 715, 733 (2004); *Olmo v. Young & Rubicam of P.R., Inc.,* 110 DPR 740, 742–743 (1981). Said legal concept entails the dismissal of any complaint filed outside of the statute of limitations provided by law. *Rimco, Inc. v. Pérez y Cía. de P.R., Inc.,* 148 DPR 60, 65 (1999). This occurs in order to punish inertia in the exercise of rights and avoid litigation that is difficult to decide due to how old the claims are. *García Pérez v. Corp. Serv. Mujer,* 174 DPR ____ (2008), 2008 TSPR 114; *Ortiz v. P.R. Telephone,* supra.

### Decision

In light of the above, we issue the requested writ of *Certiorari* and vacate the appealed Decision. In its place, we issue Judgment under Rule 10.2 of Civil Procedure, 32 LPRA Ap. III, R. 10. 2 (1979) to dismiss complaint KAC2008–1749 (905) as the statute of limitations had expired.

Decided and ordered by the Court and certified by the Clerk.

Dimarie Alicea Lozada

Clerk of the Court of Appeals

**End of Document**          © 2015 Thomson Reuters. No claim to original U.S. Government Works.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.