# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NORA FERNÁNDEZ; AUGUSTO SCHREINER;
EDDIE TORO VELEZ; VICTOR R. VELA DIEZ
DE ANDINO; JUAN VIERA; GEORGINA
VELEZ MONTES; and ESTHER SANTANA, on
behalf of themselves and all others similarly
situated,

                *Plaintiffs*,

       v.

UBS AG; UBS FINANCIAL SERVICES, INC.;
UBS FINANCIAL SERVICES INCORPORATED
OF PUERTO RICO; UBS TRUST COMPANY OF
PUERTO RICO; UBS BANK USA; CARLOS V.
UBIÑAS; MIGUEL A. FERRER; BANCO
POPULAR de PUERTO RICO; and POPULAR
SECURITIES, LLC,

                *Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

No. 15 Civ. 2859 (SHS)

**ORAL ARGUMENT
REQUESTED**

## POPULAR'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

Joseph E. Neuhaus
Matthew A. Schwartz
James F. Ianelli
Myla G. Arumugam
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000 (telephone)
(212) 558-3588 (facsimile)

*Attorneys for Banco Popular de Puerto Rico
& Popular Securities, LLC*

June 18, 2015

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ..................................................................1

ALLEGATIONS OF THE COMPLAINT ......................................................4

    A.    The Parties .................................................................4

    B.    Puerto Rico's Debt Market ...................................................6

    C.    Puerto Rico Tax Rewards Carry Puerto Rico Risk..................................6

    D.    Plaintiffs' Allegations ..........................................................9

LEGAL STANDARD .........................................................................10

I.    SLUSA REQUIRES DISMISSAL OF THIS ACTION...............................10

II.    ALL BUT ONE CLAIM AGAINST POPULAR IS TIME-BARRED .....................15

    A.    With One Exception, PRUSA's Two-Year Statute of Repose Bars All of Plaintiffs' Claims ..........................................................16

    B.    Puerto Rico's One-Year Statute of Limitations for Torts Independently Bars Vela's Fiduciary Duty Claims .........................................17

III.    THE BREACH OF CONTRACT ALLEGATIONS FAIL TO STATE A CLAIM..................................................................................20

IV.    THE FIDUCIARY DUTY ALLEGATIONS FAIL TO STATE A CLAIM .............23

    A.    Plaintiffs' Breach of Fiduciary Duty Claim Is Duplicative ...................23

    B.    As a Matter of Law, Popular Never Owed Plaintiffs a Fiduciary Duty................24

    C.    The Allegations of Breach of Fiduciary Duty Fail Under Rule 9(b) ....................27

V.    THE AMENDED COMPLAINT'S AIDING AND ABETTING ALLEGATIONS FAIL TO STATE A CLAIM .........................................29

IV.    PLAINTIFFS FAIL TO PLEAD DAMAGES FOR ANY OF THEIR CLAIMS.....................................................................................30

V.    PLAINTIFFS LACK STANDING TO BRING CLAIMS WITH RESPECT TO FUNDS IN WHICH THEY DID NOT INVEST .....................................30

CONCLUSION ...............................................................................31

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Adrian* v. *Mesirow Fin. Structured Settlements, LLC*,
736 F. Supp. 2d 404 (D.P.R. 2010)......................................................................28

*Anegada Master Fund, Ltd.* v. *PXRE Grp. Ltd.*,
680 F. Supp. 2d 616 (S.D.N.Y. 2010)....................................................................7

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)................................................................................10, 29

*Asociacion de Enfermeria Visitante Auffant, Inc.* v. *Great-West Life & Annuity Ins. Co.*,
775 F. Supp. 2d 333 (D.P.R. 2011).....................................................................16

*Ayash* v. *Dana-Farber Cancer Inst.*,
443 Mass. 367 (2005) .................................................................................23

*Balta* v. *Ayco Co., LP*,
626 F. Supp. 2d 347 (W.D.N.Y. 2009) ..................................................................17

*Barberan* v. *Nationpoint*,
706 F. Supp. 2d 408 (S.D.N.Y. 2010)....................................................................7

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007)....................................................................................10

*Bissell* v. *Merrill Lynch & Co.*,
937 F. Supp. 237 (S.D.N.Y. 1996)....................................................................5, 26

*BNP Paribas Mortg. Corp.* v. *Bank of Am., N.A.*,
866 F. Supp. 2d 257 (S.D.N.Y. 2012)...................................................................27

*Canal+ Image UK Ltd.* v. *Lutvak*,
773 F. Supp. 2d 419 (S.D.N.Y. 2011).....................................................................4

*Chadbourne & Parke LLP* v. *Troice*,
134 S. Ct. 1058 (2014)...............................................................................12, 14

*Cohen* v. *State St. Bank & Trust Co.*,
893 N.E.2d 425 (Mass. App. Ct. 2008) ..................................................................20

*Colon Prieto* v. *Geigel*,
155 D.P.R. 232 (1984) .................................................................................18

*Page(s)*

*Cooperativa de Ahorro y Credito Aguada* v. *Kidder, Peabody & Co.*,
    799 F. Supp. 261 (D.P.R. 1992)...................................................................16

*de Kwiatkowski* v. *Bear, Stearns & Co.*,
    306 F.3d 1293 (2d Cir. 2002)..................................................................25, 26, 27

*DeBlasio* v. *Merrill Lynch & Co.*,
    2009 WL 2242605 (S.D.N.Y. July 27, 2009) ..................................................26, 27

*Fernandez* v. *UBS AG*,
    No. 3:14-cv-01441 (D.P.R.)......................................................................18

*Filler* v. *Hanvit Bank*,
    339 F. Supp. 2d 553 (S.D.N.Y. 2004)..........................................................29

*Finkel* v. *Putnam Convertible Opportunities & Income Trust*,
    1997 WL 371177 (S.D.N.Y. July 3, 1997) .....................................................22

*Fortis Corp. Ins., S.A.* v. *M/V Cielo del Canada*,
    320 F. Supp. 2d 95 (S.D.N.Y. 2004)...........................................................21

*Frota* v. *Prudential-Bache Sec., Inc.*,
    639 F. Supp. 1186 (S.D.N.Y. 1986)...........................................................27

*Galvin* v. *U.S. Bank Nat'l Ass'n*,
    2015 WL 1014549 (D. Mass. Mar. 9, 2015)...................................................23

*Generadora de Electricidad del Caribe, Inc.* v. *Foster Wheeler Corp.*,
    92 F. Supp. 2d 8 (D.P.R. 2000)................................................................16

*Heliotrope Gen., Inc.* v. *Ford Motor Co.*,
    189 F.3d 971 (9th Cir. 1999) ...................................................................19

*Henneberry* v. *Sumitomo Corp. of Am.*,
    2007 WL 2068346 (S.D.N.Y. July 12, 2007) ..................................................10

*Hidalgo-Velez* v. *San Juan Asset Mgmt.*,
    758 F.3d 98 (1st Cir. 2014)......................................................................14

*Howell* v. *Freifeld*,
    631 F. Supp. 1222 (S.D.N.Y. 1986)...........................................................25

*In re AIG Advisor Grp. Sec. Litig.*,
    309 Fed. App'x 495 (2d Cir. 2009)............................................................28

*Page(s)*

*In re Alicano Ayala* v. *Philip Morris, Inc.*,
    263 F. Supp. 2d 311 (D.P.R. 2003)..................................................17

*In re Briscoe*,
    448 F.3d 201 (3d Cir. 2006)..........................................................5

*In re Herald*,
    730 F.3d 112 (2d Cir. 2013)..........................................................15

*In re IndyMac Mortg.-Backed Sec. Litig.*,
    718 F. Supp. 2d 495 (S.D.N.Y. 2010)............................................30

*In re Kingate Mgmt. Ltd. Litig.*,
    784 F.3d 128 (2d Cir. 2015)..........................................................11

*In re Merrill Lynch & Co. Res. Reps. Sec. Litig.*,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003)............................................20

*In re MF Global Holdings Ltd. Inv. Litig.*,
    998 F. Supp. 2d 157 (S.D.N.Y. 2014)............................................29

*In re Proshares Trust Sec. Litig.*,
    889 F. Supp. 2d 644 (S.D.N.Y. 2012)............................................22

*In re Refco Sec. Litig.*,
    759 F. Supp. 2d 301 (S.D.N.Y. 2010)........................................25, 29

*In re UBS Fin. Servs., Inc. of P.R.*,
    Securities Act Release No. 9318, 2012 WL 1514678 (May 1, 2012) ....................19

*Instituto de Prevision Militar* v. *Merrill Lynch*,
    546 F.3d 1340 (11th Cir. 2008) ....................................................15

*Lazard Freres & Co.* v. *Protective Life Ins. Co.*,
    108 F.3d 1531 (2d Cir. 1997)........................................................15

*Lerner* v. *Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003)..........................................................10

*Linares-Acevedo* v. *Acevedo*,
    38 F. Supp. 3d 222 (D.P.R. 2014)..................................................24

*Lincoln Rd. Prods, Inc.* v. *Reign Entm't Grp.*,
    2014 WL 6893663 (D.P.R. Dec. 5, 2014) ........................................23

*Page(s)*

*Malave-Felix* v. *Volvo Car Corp.*,
    946 F.2d 967 (1st Cir. 1991)....................................................................24

*Marchak* v. *JPMorgan Chase & Co.*,
    2015 WL 500486 (E.D.N.Y. Feb. 6, 2015)...................................10, 11

*Marshall* v. *Milberg LLP*,
    2009 WL 5177975 (S.D.N.Y. Dec. 23, 2009) .........................................20

*Martinez* v. *Vakko Holding A.S.*,
    2008 WL 2876529 (S.D.N.Y. July 23, 2008) .........................................20

*Matana* v. *Merkin*,
    989 F. Supp. 2d 313 (S.D.N.Y. 2013)....................................................22

*Medina & Medina* v. *Country Pride Foods Ltd.*,
    631 F. Supp. 293 (D.P.R. 1986)..............................................................17

*Mendoza* v. *Cerveceria Corona, Inc.*,
    97 P.R.R. 487 (1969) ..............................................................................24

*Merck & Co., Inc.* v. *Reynolds*,
    559 U.S. 633 (2010)................................................................................16

*Meridian Horizon Fund, LP* v. *KPMG (Cayman)*,
    487 Fed. App'x 636 (2d Cir. 2012).........................................................30

*Montoya* v. *N.Y. United Teachers*,
    754 F. Supp. 2d 466 (E.D.N.Y. 2010) ....................................................11

*Morrison* v. *Nat'l Australia Bank Ltd.*,
    547 F.3d 167 (2d Cir. 2008)....................................................................11

*NECA-IBEW Pension Trust Fund* v. *Bank of Am. Corp.*,
    2013 WL 620257 (S.D.N.Y. Feb. 15, 2013)...........................................19

*Olkey* v. *Hypoerion 1999 Term Trust, Inc.*,
    98 F.3d 2 (2d Cir. 1996)..........................................................................21

*Paine Webber, Inc.* v. *First Boston Inc.*,
    136 D.P.R. 541, 542-47 (1994)...............................................................16

*Press* v. *Chem. Inv. Servs. Corp.*,
    988 F. Supp. 375 (S.D.N.Y. 1997)..........................................................25

*Page(s)*

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago* v.
   *Bank of N.Y. Mellon*,
   775 F.3d 154 (2d Cir. 2014)................................................................30

*Robinson* v. *Gov't of Malaysia*,
   269 F.3d 133 (2d Cir. 2001)................................................................13

*Rodriguez* v. *Banco Cent.*,
   727 F. Supp. 759 (D.P.R. 1989)..........................................................29

*Rodriguez* v. *SLM Corp.*,
   2009 WL 598252 (D. Conn. Mar. 6, 2009) ...........................................5

*Roman* v. *UBS Fin. Servs., Inc. of P.R.*,
   No. 3:12-cv-01663 (D.P.R.).................................................................18

*Romano* v. *Kazacos*,
   609 F.3d 512 (2d Cir. 2010)................................................................13

*Rombach* v. *Chang*,
   355 F.3d 164 (2d Cir. 2004)................................................................16

*Rowinski* v. *Salomon Smith Barney Inc.*,
   398 F.3d 294 (3d Cir. 2005)................................................................12

*S.E.C.* v. *Chenery Corp.*,
   318 U.S. 80 (1943)..............................................................................26

*S.E.C.* v. *Zandford*,
   535 U.S. 813 (2002)............................................................................12

*Salgado* v. *Piedmont Capital Corp.*,
   534 F. Supp. 938 (D.P.R. 1981)..........................................................16

*Scala* v. *Citicorp Inc.*,
   2011 U.S. Dist. LEXIS 30871 (C.D. Cal. Mar. 15, 2011) ....................14

*Serrano* v. *Figueroa-Sancha*,
   878 F. Supp. 2d 301 (D.P.R. 2012)......................................................18

*Shelley* v. *Trafalgar House Pub. Ltd. Co.*,
   918 F. Supp. 515 (D.P.R. 1996)..........................................................15

*Soley* v. *Wasserman*,
   2010 WL 931888 (S.D.N.Y. Mar. 12, 2010) ........................................16

*Page(s)*

*Spinelli* v. *Nat'l Football League*,
2015 WL 1433370 (S.D.N.Y. Mar. 27, 2015) .......................................25

*Staehr* v. *Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008)................................................................19

*Steinberg* v. *PRT Grp.*,
88 F. Supp. 2d 294 (S.D.N.Y. 2000).....................................................22

*Superintendent of Ins. of State of N.Y.* v. *Bankers Life & Cas. Co.*,
404 U.S. 6 (1971)...............................................................................12

*Szulik* v. *State St. Bank & Trust Co.*,
935 F. Supp. 2d 240 (D. Mass. 2013)..................................................22

*Thrivent Fin. for Lutherans* v. *Strojny*,
882 F. Supp. 2d 260 (D. Mass. 2012)..................................................28

*Tollinche Puig* v. *Triple-S Mgmt. Corp.*,
2010 WL 3200382 (P.R. Ct. App. May 28, 2010).................................16

*Turkmen* v. *Ashcroft*,
2006 WL 1662663 (E.D.N.Y. June 14, 2006) ......................................27

*UniCredito Italiano SPA* v. *JPMorgan Chase Bank*,
288 F. Supp. 2d 485 (S.D.N.Y. 2003)..................................................30

*Unum Grp.* v. *Benefit P'ship, Inc.*,
938 F. Supp. 2d 177 (D. Mass 2013) ...................................................24

*Verzani* v. *Costco Wholesale Corp.*,
641 F. Supp. 2d 291 (S.D.N.Y. 2009)....................................................4

*WaMu Mortg. Pass-Through Certificates, Series AR1*,
748 F. Supp. 2d 1246 (W.D. Wash. 2010)............................................18

*Welch* v. *Ameritrade Holding Corp.*,
2009 WL 2356131 (S.D.N.Y. July 27, 2009) .......................................26

*Woori Bank* v. *Merrill Lynch*,
923 F. Supp. 2d 491 (S.D.N.Y. 2013)..................................................20

# TABLE OF AUTHORITIES
## (cont'd)

*Page(s)*

### STATUTES

Laws of Puerto Rico Annotated
    10 L.P.R.A. § 666(e) ................................................................6
    10 L.P.R.A. § 890(e) ..............................................................16
    31 L.P.R.A. § 5298(2) ............................................................17

15 U.S.C. § 78bb(f)(1)(A) ...........................................................2, 11

15 U.S.C. § 78c(a)(16) ...................................................................11

15 U.S.C. § 80b-2(a)(11) ................................................................25

48 U.S.C. § 745 ..............................................................................6

Mass. Gen. Law ch. 260, § 9 ........................................................15

Securities Litigation Uniform Standards Act of 1998 .................2, 10

### OTHER AUTHORITIES

Federal Rules of Civil Procedure
    Rule 9(b) ..........................................................................10, 27
    Rule 12(b)(1) ...........................................................10, 11, 13
    Rule 12(b)(6) ...........................................................................10

*Popular Balanced IRA*, Popular, http://www.popular.com/en/ira-balanced ................................14

Restatement (Second) of Torts § 874 ............................................24

## PRELIMINARY STATEMENT

This is a putative class action suit ("Action") brought by seven plaintiffs against Banco Popular de Puerto Rico ("Banco Popular") and Popular Securities, LLC ("Popular Securities," and, together, "Popular") and UBS AG and certain UBS-affiliated entities and individuals ("UBS," and, together, "Defendants"). The Amended Class Action Complaint ("Amended Complaint" or "AC") alleges that, between 2008 and 2014, plaintiffs—only two of whom, Eddie Toro Velez ("Toro") and Victor R. Vela Diez de Andino ("Vela," and, together, "Plaintiffs"), were customers of Popular Securities—collectively invested in 23 Puerto Rico closed-end mutual funds ("Funds"), fourteen of which were managed solely by UBS and nine co-managed by UBS and Banco Popular.

The Funds took advantage of applicable federal and Puerto Rico tax laws and regulations to create tax benefits for investors, like Plaintiffs. These benefits included: (1) tax-free earnings from the Funds, including earnings from the non-Puerto Rican assets held by the Funds that would otherwise be taxable, and (2) those earnings were further exempt from estate taxes. But for investors to obtain these benefits, the Funds were required to invest at least 67% of their assets in debt issued by Puerto Rico's government, its "political subdivisions, organizations, agencies and instrumentalities" or "Puerto Rico mortgage-backed securities" ("Puerto Rico Debt"). Defendants fully disclosed both the benefits and risks of the Funds' investment of 67% of their assets in Puerto Rico Debt.

These risks materialized when Puerto Rico's economy faltered in the wake of the financial crisis and the Funds declined in value. Inevitably, lawsuits followed. A putative securities class action was filed in the District of Puerto Rico on August 13, 2012 ("Securities Action"). And the instant tag-along lawsuit, seeking Puerto Rico remedies, was filed in May

2014 concerning the same conduct and many of the same Funds as in the Securities Action.[1]

Unsurprisingly, having attempted improperly to convert securities law claims into state claims and having filed late, Plaintiffs' claims against Popular asserting breach of fiduciary duty, aiding and abetting that breach and breach of contract are defective for many reasons.

*First*, the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") precludes all of Plaintiffs' claims. SLUSA bars actions brought on behalf of more than 50 plaintiffs that assert state law claims alleging a misrepresentation or omission of a material fact in connection with the purchase or sale of "covered" securities, a term that includes, among other things, securities traded on a national exchange. 15 U.S.C. § 78bb(f)(1)(A) *et seq*. Plaintiffs' claims are plainly covered by SLUSA. The Amended Complaint is a putative class action, and seeks remedies under Puerto Rico law based on the same allegations of misrepresentations as those underlying the Securities Action. And although the Funds themselves are not "covered securities," (1) the Amended Complaint pleads that Defendants misled Plaintiffs into selling covered securities and using the proceeds to invest in the Funds and (2) the Funds themselves were marketed as investing in covered securities, both of which satisfy the statutory SLUSA test.

*Second*, SLUSA preclusion aside, all but one of Plaintiffs' claims directed at Popular are time-barred. Plaintiffs filed the original complaint in 2014, yet the two Popular Plaintiffs invested in the Funds in four separate purchases between 2005 and 2012. The Puerto Rico Uniform Securities Act's ("PRUSA") two-year statute of repose, which is not subject to any form of tolling, extinguishes Plaintiffs' claims based on three of those purchases, and leaves

---

[1] The first iteration of this case was filed in May 2014 in this Court. Within three weeks, Plaintiffs voluntarily withdrew that complaint and refiled it in Puerto Rico. Over Plaintiffs' objection, the District of Puerto Rico granted Defendants' motion to transfer the Action back to this Court, after which Plaintiffs filed the instant amended complaint.

only the claims arising from one Plaintiff's 2012 investment. Additionally, Puerto Rico's one-year statute of limitations for torts independently bars Plaintiffs' breach of fiduciary duty and aiding and abetting claims. This leaves only one timely claim: one Plaintiff's breach of contract claim against Popular Securities based on his 2012 investment.

*Third*, the express terms of Plaintiffs' contracts with Popular Securities defeat Plaintiff's remaining breach of contract claim as a matter of law. Plaintiffs do not identify any provision in the contract that Popular Securities supposedly breached. Indeed, in those contracts, Plaintiffs explicitly agreed to bear full responsibility for their investment decisions. The contracts also disclosed that the Funds carried the same risks Plaintiffs now claim Popular Securities concealed. Contract claims predicated on nondisclosure cannot survive a motion to dismiss if the disclosure in fact was made in the very contract on which the claims are brought.

*Fourth*, Plaintiffs' fiduciary duty claims (all of which are time-barred) are likewise fatally defective. These claims are based on the same alleged behavior as the contract claim and are, therefore, duplicative and require dismissal. Moreover, the law is clear that Popular neither owed nor breached any fiduciary duty, first, because Plaintiffs' contracts limited Popular's obligations to those of a non-discretionary broker, and, second, because those contracts unambiguously disclosed the information Plaintiffs allege Popular kept secret. Furthermore, the Amended Complaint never alleges anything that Popular did to breach any purported duty, such as pushing Plaintiffs to invest in the Funds or misrepresenting the Funds to them.

*Fifth*, Plaintiffs fail to plead the required element of damages for any claims.

*Finally*, Plaintiffs lack constitutional standing to bring claims against Popular for six of the nine Funds at issue here because the Amended Complaint does not allege that any of the Plaintiffs who invested in these Funds were Popular clients.

## ALLEGATIONS OF THE COMPLAINT

### A.     The Parties

Banco Popular is a corporation registered and headquartered in Puerto Rico. Popular Securities is a securities brokerage firm registered with the Financial Industry Regulatory Authority and incorporated in Puerto Rico.  (AC ¶¶ 37-38.)  Both entities are subsidiaries of Popular, Inc.  (*Id.*)

As relevant to Popular, Plaintiffs Toro and Vela were customers of Popular Securities who purchased securities issued by the Funds.  (*Id.* ¶¶ 21-22.)  Toro and Vela executed account agreements with Popular Securities in 2005 and 2008, respectively ("Account Agreements").  (*See* Exs.[2] E-F (Account Agreements).)[3]  The two Account Agreements included brokerage customer agreements with respective securities clearinghouses—FISERV, Inc. ("FISERV") for Toro and National Financial Services, LLC ("NFS") for Vela (together, the "Customer Agreements").  (*Id.*; Ex. G (Vela Customer Agreement).)  The Customer Agreements each specified that Popular Securities acted as a nondiscretionary broker-dealer and not as an investment adviser with duties beyond executing trades at the customer's request.  In Vela's Customer Agreement, Popular Securities "agree[d] to purchase, sell, or in any other way dispose of securities for [Vela] in accordance with [Vela's] instructions."  (Ex. G (Vela Customer

---

[2]     Unless otherwise specified, all exhibits are appended to the Declaration of James F. Ianelli, dated June 18, 2015.

[3]     The Court may take judicial notice of the contracts Plaintiffs executed with Popular, because the Amended Complaint "is deemed to incorporate the contract by reference because the contract is integral to . . . [P]laintiffs' claim," *Verzani* v. *Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 297-98 (S.D.N.Y. 2009), and is repeatedly referred to therein (AC ¶¶ 8, 57, 147), *see Canal+ Image UK Ltd.* v. *Lutvak*, 773 F. Supp. 2d 419, 427 (S.D.N.Y. 2011) (taking judicial notice of contract and materials "repeatedly characterize[d] or invoke[d]" by the complaint, even though they were not annexed to it).

Agreement at 1).)  Toro's Customer Agreement stated that Popular Securities would not "provide any investment advice in relation to this account, or counsel or opinions with respect to the suitability of any security or order."  (Ex. E (Toro Account Agreement at 3).)

Toro and Vela assert claims based on four purchases of securities issued by the Funds, three of which Banco Popular and UBS co-managed and the other of which UBS managed alone.  (AC ¶¶ 21-22, 42.)  These purchases are detailed in the table below:[4]

| Purchaser | Fund | Date of Purchase | Fund Manager(s) |
|-----------|------|------------------|-----------------|
| Toro | Puerto Rico Investors Tax-Free Fund V, Inc. ("PRITFF V") | January 11, 2005 | Banco Popular & UBS |
| Toro | Puerto Rico Investors Tax-Free Fund III, Inc. ("PRITFF III") | January 22, 2007 | Banco Popular & UBS |
| Vela | Puerto Rico Fixed Income Fund, Inc. ("PRFIF") | December 12, 2011 | UBS |
| Vela | Puerto Rico Investors Tax-Free Fund VI, Inc. ("PRITFF VI") | June 15, 2012 | Banco Popular & UBS |

---

[4]  The Amended Complaint sets forth the Funds in which Vela and Toro invested, and which Defendants managed those Funds.  (*See* AC ¶¶ 21-22, 42.)  Although the Amended Complaint never pleads *when* Toro or Vela purchased their shares, this information is reflected in their monthly account statements.  (Exs. K (Vela Account Statement at 8 (June 2012)), J (Vela Account Statement at 8 (Dec. 2011)), I (Toro Account Statement at 6 (Jan. 2007)), H (Toro Account Statement at 5 (Jan. 2005)).)  The Amended Complaint expressly refers to UBS account statements (AC ¶¶ 85, 127).  *Bissell* v. *Merrill Lynch & Co.*, 937 F. Supp. 237, 239 n.1 (S.D.N.Y. 1996) ("plaintiff's monthly account statements," to which "the Complaint specifically refers," are "permitted on a motion to dismiss").  In addition, the account statements can be considered on a motion to dismiss on grounds of untimeliness (in order to identify the dates of purchases on a motion to dismiss), *see In re Briscoe*, 448 F.3d 201, 220 (3d Cir. 2006) (taking judicial notice of documents relating to the "accrual date for the plaintiff's claim" because "[s]uch a limited look outside the pleadings does not risk crossing the line between a proper threshold jurisdictional inquiry and an improper decision on the merits"); *Rodriguez* v. *SLM Corp.*, 2009 WL 598252, at *4 (D. Conn. Mar. 6, 2009) (taking judicial notice of transaction dates for statute of limitations purposes where the "dates are integral to the complaint"), or for lack of jurisdiction, *see infra* at 13 n.10.

### B. Puerto Rico's Debt Market

All Puerto Rico government bonds are exempt from state and federal taxation. *See* 48 U.S.C. § 745 ("All bonds issued by the Government of Puerto Rico . . . shall be exempt from taxation . . . ."). Under the 1995 amendments to the Puerto Rican Investment Companies Act ("1995 Amendments"), these exemptions extend to "registered investment companies" that "invest at least [67%] of [their] total assets . . . in . . . Puerto Rico securities determined by the Commissioner of Financial Institutions." 10 L.P.R.A. § 666(e). The 1995 Amendments also allow such companies to be leveraged by "not less than [50%] of [their] total assets value." *Id.* Following these amendments, Puerto Rico's financial regulator determined that closed-end mutual funds such as the Funds qualified as "registered investment companies" under the statute so long as, among other things, at least 67% of their assets constituted Puerto Rico Debt. (*See*, *e.g.*, Ex. A (PRITFF III prospectus supplement at 1, 39-40).) Individual investors in such mutual funds only qualified for these tax benefits if they were "*bona fide* residents of Puerto Rico." (*Id.* at 34-35.)

### C. Puerto Rico Tax Rewards Carry Puerto Rico Risk

The Funds were issued in accordance with the 1995 Amendments and marketed as containing 67% Puerto Rico Debt and up to 33% of non-Puerto Rico assets. (AC ¶ 2.) Ten percent of the Funds' assets generally could be invested in the preferred stock of publicly traded, non-Puerto Rican companies.[5] That structuring created two primary tax benefits. *First*, the

---

[5] Three of the four of the Funds in which Toro and Vela invested earmarked up to 10% of their assets for preferred stock. (*See* Exs. C (PRITFF VI prospectus at 2), A (PRITFF III prospectus supplement at 14) & B (PRITFF V prospectus at 14).) The fourth Fund, PRFIF, could "invest up to 33% of its total assets in . . . non-Puerto Rico securities." (Ex. D (PRFIF offering circular at i).) The Court may take judicial notice of the offering materials for the Funds

Funds' earnings were "triple tax exempt"—that is, "exempt from municipal, state and federal taxes." (AC ¶ 44.) Thus, by holding a large portion of Puerto Rico Debt, the Funds allowed investors to enjoy tax-free treatment over the 33% *non*-Puerto Rico assets that would otherwise be taxable. *Second*, the investments in the Funds were exempt from U.S. federal and Puerto Rico estate and gift taxes. (*Id.* ¶ 45.)

The tax benefits of the Funds came with inherent risks of two kinds: First, the necessary 67% investment in Puerto Rico Debt meant that the investment risks could not be as diversified as other funds might be. Second, the fact that only certain Puerto Rican residents could purchase and sell the Funds meant that the Funds ran the risk of becoming illiquid at certain periods of time. The Funds' prospectuses specifically explained these risks. PRITFF VI's prospectus is typical:

> [T]he Fund intends to invest at least 67% of its total assets in Puerto Rico Obligations. Therefore, *the Fund will be more susceptible to factors adversely affecting issuers of Puerto Rico Obligations* than an investment company that is not concentrated in Puerto Rico Obligations to this degree. This makes the Fund *more susceptible to economic, political, or regulatory occurrences in Puerto Rico than a diversified fund*. There presently is a limited number of participants in the market for certain Puerto Rico Obligations. In addition, certain Puerto Rico Obligations may have periods of illiquidity. These factors may *affect the Fund's ability to acquire or dispose of the Puerto Rico Obligations, as well as the price paid or received upon acquisition or disposition*. In addition, investment by the

---

for three independent reasons: the offering materials (1) are publicly available at the Puerto Rico Office of the Commissioner of Financial Institutions, Ianelli Decl. ¶ 3, *Barberan* v. *Nationpoint*, 706 F. Supp. 2d 408, 416 (S.D.N.Y. 2010) (taking judicial notice of "public documents" "for what the documents state"); (2) are "quoted in Plaintiffs' [A]mended [C]omplaint, and [are] therefore 'integral' to Plaintiffs' claims," *Anegada Master Fund, Ltd.* v. *PXRE Grp. Ltd.*, 680 F. Supp. 2d 616, 618 n.4 (S.D.N.Y. 2010) (taking judicial notice of private placement memorandum that was not publicly filed), (AC ¶ 126); and (3) are part of Plaintiffs' brokerage contracts with Popular Securities, (*see e.g.*, Ex. G (Vela Customer Agreement at 5 ("I understand that it is my responsibility to read the prospectus of any mutual fund in which I purchase or trade."))); *see supra* at 4 n.3.

Fund in Puerto Rico Obligations is subject to their availability in the open market.[6]

(Ex. C (PRITFF VI prospectus at S-3) (emphasis added).)

The Funds also offered increased tax-advantaged returns to investors by borrowing money, within specified limits, that the Funds would use to increase the amounts invested. (AC ¶¶ 4, 67-68.) The prospectuses disclosed both the Funds' use of leverage and the inherent risks of that strategy:

> The Fund may increase amounts available for investment through the issuance of preferred stock, debt securities (*i.e.*, debt instruments of varying maturities, including commercial paper and short-term and medium-term notes; such securities collectively referred to herein as the "debt securities"), and other forms of leverage, representing not more than 50% of the Fund's total assets immediately after the issuance of such securities.
>
> …
>
> ***Use of leverage . . . is a speculative investment technique and involves increased risk for Shareholders, including the possibility of higher volatility of both the net asset value and the market value of the Shares. The effects of leverage might cause a Shareholder to lose any or all of the amount invested.***

(Ex. C (PRITFF VI prospectus at S-5) (emphasis added).) The prospectuses proceeded to elaborate the implications of these risks for investors, including, among other things, that: (1) because of the liquidity constraints, the Funds were "designed primarily for long-term investors," (*id.* at S-4); (2) the Funds were "newly organized, non-diversified" instruments for which "[n]o assurance can be given" about meeting their investment objectives, (*id.* at i); and, importantly, given the risks that eventuated, (3) the Funds could not "predict whether the Shares will trade at, below or above net asset value or at, below or above the offering price," as their trading prices would reflect "such factors as relative demand for and supply of such Shares in the

---

[6]    Similar disclosures by other Funds are collected in Appendix 2, attached hereto.

market, ***general market and economic conditions*** and other factors beyond the control of the Fund," (*id.* at S-4 (emphasis added).)

### D. Plaintiffs' Allegations

Despite the disclosures, Plaintiffs allege that Popular somehow misled them into believing that their investment in the Funds was virtually risk free. (AC ¶ 60.) Although the Amended Complaint quotes certain parts of the prospectuses (*see id.* ¶ 126 (quoting unidentified prospectuses)), it ignores the risk disclosures listed above. The Amended Complaint never pleads what information (if any) Plaintiffs relied upon in deciding to invest in the Funds, what their investment objectives were, or whether they received any investment advice inconsistent with those objectives. And the Amended Complaint is utterly devoid of any allegations concerning what *Popular* represented when Plaintiffs invested in the Funds. Indeed, there are no allegations specific to Popular on this point at all: no Popular documents, Popular witnesses, contemporaneous Popular statements to Plaintiffs, or regulatory investigations.[7]

Instead, the Amended Complaint rests on the assertion that the Funds were not safe, long-term investments because they lost value when Puerto Rico's government suffered budgetary woes in 2013. (*Id.* ¶ 131.) Based on these allegations, Plaintiffs seek to hold Popular responsible for Plaintiffs' investment decisions on three counts. Count III is against Popular Securities for alleged breach of its fiduciary duties. Count IV is against Banco Popular for alleged aiding and abetting of Popular Securities' purported breach of fiduciary duties. Count VI is against Popular Securities for alleged breach of contract.

---

[7] The closest Plaintiffs come to specific allegations about Popular's conduct is to cite language on Popular's *current* website that simply refers to Popular's *general* approach to serving its clients. (AC ¶ 58.) Nothing in that material gives any basis for inferring a representation, as Plaintiff's conclusory assert, that the Funds were "safe and secure investments." (*Id.* ¶ 128.)

## LEGAL STANDARD

A complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). In addition, Fed. R. Civ. P. "9(b)'s heightened pleading standards apply to breach of fiduciary duty claims where the breach is premised on the defendant's fraudulent conduct," including a defendant's purported misrepresentations. *Henneberry* v. *Sumitomo Corp. of Am.*, 2007 WL 2068346, at *30 (S.D.N.Y. July 12, 2007).

SLUSA "concerns the subject matter jurisdiction of the Court," and motions to dismiss brought under the statute are therefore governed by Rule 12(b)(1). *Marchak* v. *JPMorgan Chase & Co.*, 2015 WL 500486, at *4 (E.D.N.Y. Feb. 6, 2015) (citation omitted). "[T]he standards for dismissal under [Rules] 12(b)(6) and 12(b)(1) are substantively identical," except that a plaintiff "invoking the jurisdiction of the court has the burden of proof in a 12(b)(1) motion . . . ." *Lerner* v. *Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003) (citations omitted).

## I.     SLUSA REQUIRES DISMISSAL OF THIS ACTION.

By the time Plaintiffs got around to suing here, a different group of lead plaintiffs had already brought federal securities claims concerning the Funds in the Securities Action. Plaintiffs now try to shoehorn classic securities claims into claims under Puerto Rico law. But all of these Puerto Rico claims are barred by a straightforward application of SLUSA.

Under SLUSA, no class action "may be maintained in any State or Federal court by any private party" if (i) it is brought on behalf of more than 50 persons or prospective class members, (ii) "based upon the statutory or common law of any State," and (iii) alleges "a misrepresentation or omission of a material fact," (iv) "in connection with the purchase or sale of

a covered security." 15 U.S.C. § 78bb(f)(1)(A). Claims falling under SLUSA—also known as a "covered class action"—must be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), regardless of a plaintiff's characterization of its claims "as dependent on a theory other than falsity," including, for example, "by characterizing a claim of falsity as a breach of the contractual duty of fair dealing." *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 135 n.9, 140 (2d Cir. 2015); *see Montoya* v. *N.Y. United Teachers*, 754 F. Supp. 2d 466, 473 (E.D.N.Y. 2010) (breach of fiduciary duty claims were "easily characterized as alleging 'an untrue statement or omission of a material fact' sufficient to bring the complaint within those covered by SLUSA"). Because Rule 12(b)(1) governs motions to dismiss pursuant to SLUSA, Plaintiffs bear "the burden of proving by a preponderance of the evidence" that jurisdiction exists, and, in carrying that burden, plaintiffs are not entitled to "draw[] from the pleadings inferences favorable" to them. *Morrison* v. *Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted). Here, Plaintiffs cannot meet their burden of proving that their claims survive SLUSA.

*First*, Plaintiffs purport to bring their claims on behalf of "hundreds of Puerto Rico-based investors" (AC ¶ 146), exceeding SLUSA's threshold of 50 potential class members.

*Second*, Plaintiffs admit that they seek to establish liability under Puerto Rico[8] law. (AC ¶¶ 30, 40, 49); *see Marchak*, 2015 WL 500486, at *13 (a plaintiff's breach of fiduciary duty claim under New York law was barred by SLUSA).

*Third*, Plaintiffs' claims are based on a theory that Plaintiffs purchased the Funds in reliance on Defendants' "misrepresent[ations] [about] the nature, stability and risk of the

---

[8]    "State" is defined in Title 15 to include Puerto Rico. *See* 15 U.S.C. § 78c(a)(16).

Funds." (AC ¶¶ 122, 146);[9] *see Rowinski* v. *Salomon Smith Barney Inc.*, 398 F.3d 294, 300 (3d Cir. 2005) ("Where, as here, allegations of a material misrepresentation serve as the factual predicate of a state law claim, the misrepresentation prong is satisfied under SLUSA.").

*Fourth*, although the Funds themselves were not "covered securities," *i.e.*, those "listed . . . on a national securities exchange," 15 US.C. § 77r(b)(1), SLUSA's restrictions are triggered here for two independent reasons: Plaintiffs allege that they were induced to *sell* covered investments in order to buy shares in the Funds, and they allege that the Funds themselves necessarily *purchased* covered securities in order to implement the Funds' strategy.

SLUSA's "in connection with" requirement is met where a plaintiff seeks relief from "deceptive practices touching [the plaintiff's] *sale* of [covered] securities as an investor." *Superintendent of Ins. of State of N.Y.* v. *Bankers Life & Cas. Co.*, 404 U.S. 6, 12-13 (1971) (emphasis added); *accord Chadbourne & Parke LLP* v. *Troice*, 134 S. Ct. 1058, 1062 (2014) (SLUSA's "in connection with" requirement was not satisfied absent allegations that "the sale of these covered securities (which were used to finance the purchase of the [fraudulent] certificates) constituted any part of the fraudulent scheme"); *S.E.C.* v. *Zandford*, 535 U.S. 813, 820 (2002) (misrepresentations were "in connection with" the sale of covered securities because they "were not independent events"). The statute applies here because Plaintiffs allege that Defendants duped them into selling covered securities in order to invest in the Funds. (*See, e.g.*, AC ¶¶ 72, 77, 87, 98, 134.) The Amended Complaint asserts that UBS directed its financial advisors to "sell their clients' *most liquid assets—i.e.*, securities other than UBS Closed-End Funds . . . ." (*Id.* ¶ 134 (emphasis added).) Elsewhere, it contends that "Defendants specifically targeted

---

[9]     *See also* AC ¶ 88 (alleging that "UBS pushed the Funds on investors while misleadingly portraying the Funds as safe, secure investments"); ¶ 107 (alleging "misrepresent[ations] to Class members that this investment strategy was low risk").

retirees and other clients interested in retirement planning" by, for example, "channel[ling] '*IRA investors*' into the Funds." (*Id.* ¶ 87 (emphasis added).) Thus, Plaintiffs allege that they sold "liquid" securities and positions in investment retirement accounts ("IRAs") *because of* Defendants' purported misconduct. *Romano* v. *Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) (SLUSA precluded claims arising from "IRA accounts, where covered securities were purchased"). That causal connection satisfies SLUSA's "in connection with" test, which merely requires a covered transaction to "coincide" with a misrepresentation. *Id.* at 521 (explaining that "the 'coincide' requirement is broad in scope") (citations omitted).

Toro and Vela's account statements[10] confirm that these "most liquid assets" and IRA positions that they sold to invest in the Funds were covered securities. Vela's account statement revealed that on June 15, 2012, he sold $28,075 worth of shares in three mutual funds[11] traded on the New York Stock Exchange—thus, qualifying as covered securities—and, the same day, bought $29,997 of shares in one of the Funds. (Ex. K (Vela Account Statement at 8 (June 2012)).) Toro stated in his Account Agreement that he "liquida[ted]" his IRAs to

---

[10]    Although the Court *may* take judicial notice of account statements because the Amended Complaint directly incorporates them by reference, *supra* at 5 n.4, the Court "must" take judicial notice of these statements to the extent they "resolve disputed jurisdictional fact issues" about whether SLUSA requires dismissal under Rule 12(b)(1). *Robinson* v. *Gov't of Malaysia*, 269 F.3d 133, 141 n.6 (2d Cir. 2001) (requiring district courts to "consult evidence to decide a Rule 12(b)(1) motion" "if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction") (citations omitted).

[11]    (1) Eaton Vance Tax-Managed Global Buy-Write Opportunities Fund ("ETW"), which is traded under the ticker "ETW" (Ex. M (ETW Annual Rep. at 28 (Dec. 31, 2013))); (2) PIMCO Corporate & Income Strategy Fund ("PCN"), which is traded under the ticker "PCN" (Ex. N (PCN prospectus at iii, 58 (Feb. 14, 2002))); and (3) PIMCO High Income Fund ("PHK"), which is traded under the ticker "PHK" (Ex. O (PHK prospectus at ii, 1 (June 25, 2003))). *See Romano*, 609 F.3d at 520 (SLUSA applied where defendants "introduced account statements establishing that appellants [acquired an interest in] covered securities," including "mutual funds").

invest in PRITFF V (Ex. E (Toro Account Agreement at 1-2, 7 (listing "PR [Inv.] Tax Free" as the name of an investment for which Toro liquidated his IRAs), and his account statement shows that the IRAs he cashed out included stocks and bonds that are covered securities.[12] (Ex. L (Toro IRA statement at 2).) The sale of these covered securities—alone—merits SLUSA preclusion.

As for purchases of covered securities, the key feature of the Funds is that they were structured to extend the tax-free benefits from already tax-free investments in Puerto Rico entities to a substantial portion—up to 33%—of otherwise taxable securities. This extension was made possible by the 1995 Amendments, described above, which were enacted shortly before the Funds were formed. Those taxable investments typically included covered securities. (*See, e.g.*, Ex. B (PRITFF V prospectus at 14) (specifically advertising that up to 10% of the Fund assets could be invested in "taxable securities, including preferred stock").) The purchase of covered securities thus made the Funds materially more attractive to Puerto Rico residents looking for tax shelters.[13] And, to dismiss the Amended Complaint, no proof is needed that the Funds *in fact*

---

[12] On January 7, 2005—four days before he invested in PRITFF V—Toro liquidated his investment in "Popular Balanced IRA" for $107,687. (Ex. L (Toro IRA statement at 2).) That IRA fund invests in stocks and bonds of United States and Puerto Rico companies, *i.e.*, covered securities. *See Popular Balanced IRA*, Popular, http://www.popular.com/en/ira-balanced. *See also Scala* v. *Citicorp Inc.*, 2011 U.S. Dist. LEXIS 30871, at *14 (C.D. Cal. Mar. 15, 2011) (where the complaint alleged fraud in connection with false promise to purchase "stocks and bonds," there could be "no serious dispute" that they were "covered securities" under SLUSA).

[13] The First Circuit recently found that SLUSA did not preclude claims over mutual funds that invested 25% of their assets in covered securities, because the "*primary purpose in doing so was to acquire an ownership interest in uncovered securities*." *Hidalgo-Velez* v. *San Juan Asset Mgmt.*, 758 F.3d 98, 108 (1st Cir. 2014) (emphasis added). Here, however, the Amended Complaint addresses Funds whose primary distinguishing feature was the extension of tax-free benefits to *non*-Puerto Rico assets, including covered securities. In any case, *Hidalgo-Velez* is not controlling in the Second Circuit and we submit is wrongly decided. SLUSA contains no "primary purpose" test, but merely a requirement that the alleged misrepresentations have been "in connection with" covered securities. The Supreme Court has held that this standard incorporates a "materiality" standard, *Troice*, 134 S. Ct. at 1066 ("The phrase 'material fact in connection with the purchase or sale' suggests *a connection that matters*.") (emphasis added),

invested in covered securities because the Funds were marketed this way in their offering materials. *Instituto de Prevision Militar* v. *Merrill Lynch*, 546 F.3d 1340, 1352 (11th Cir. 2008) (under SLUSA, what controls is how "the product was *marketed* to the investor, not what the defendant actually did with the investor's money") (emphasis in original); *see In re Herald*, 730 F.3d 112, 118 (2d Cir. 2013) ("[T]he fact that Madoff Securities may not have actually executed their pretended securities trades does not take this case outside the ambit of SLUSA."). For these reasons, SLUSA precludes all of Plaintiffs' claims.

## II.    ALL BUT ONE CLAIM AGAINST POPULAR IS TIME-BARRED.

Even if Plaintiffs' claims could survive SLUSA, nearly all are untimely under Puerto Rico law.[14] PRUSA's two-year statute of repose extinguishes *every* claim—including the contract, breach of fiduciary duty, and aiding and abetting claims—against Popular, except as to those claims arising from Vela's purchase in 2012. Even then, Puerto Rico's one-year statute of limitations for torts bars Vela's breach of fiduciary duty and aiding and abetting claim based on his 2012 purchase. All that is left is Vela's breach of contract claim based on his 2012 purchase.

---

not a primary-purpose test, and here it is clear that the extension of tax benefits to covered securities was material to the alleged misrepresentations.

[14]    Vela's Customer Agreement provides that it is governed by the law of Massachusetts, where NFS has its principal place of business. (Ex. G (Vela Customer Agreement at 4).) Pursuant to Massachusetts' "borrowing" statute, Puerto Rico law sets the applicable periods of limitations for the contract claim. Mass. Gen. Law ch. 260, § 9. Puerto Rico law applies to Vela's non-contract claims because Puerto Rico has the "most significant interest" in the dispute. *See Lazard Freres & Co.* v. *Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997) (torts are governed by the law of the forum with "most significant interest" in the dispute) (citation omitted); *Shelley* v. *Trafalgar House Pub. Ltd. Co.*, 918 F. Supp. 515, 521-23 (D.P.R. 1996) (same). Toro's Customer Agreement provides that it is governed by Puerto Rico law (Ex. E (Toro Account Agreement at 3)), leading to the same applicable statutes of limitations.

**A.** **With One Exception, PRUSA's Two-Year Statute of Repose Bars All of Plaintiffs' Claims.**

PRUSA Section 890 sets a two-year repose period for claims "sounding" in securities fraud. 10 L.P.R.A. § 890(e); (Ex. P (*Paine Webber, Inc.* v. *First Boston Inc.*, 136 D.P.R. 541, 548 (1994)); *Salgado* v. *Piedmont Capital Corp.*, 534 F. Supp. 938, 947 (D.P.R. 1981). Section 890 thus bars actions brought more than two years after the transaction, regardless of when plaintiffs had notice of their claims (and even if they did not have notice at all). *See Cooperativa de Ahorro y Credito Aguada* v. *Kidder, Peabody & Co.*, 799 F. Supp. 261, 263 n.4 (D.P.R. 1992) ("The lapse of time extinguishes the cause of action."), *rev'd on other grounds*, 993 F.2d 269 (1st Cir. 1993); *see also Merck & Co.* v. *Reynolds*, 559 U.S. 633, 650 (2010) (statutes of repose are "an unqualified bar on actions . . . giving defendants *total repose*") (emphasis added). The period runs from the date of the "sale contract," either in an offering or on the secondary market. *See Asociacion de Enfermeria Visitante Auffant, Inc.* v. *Great-West Life & Annuity Ins. Co.*, 775 F. Supp. 2d 333, 345 (D.P.R. 2011); *Generadora de Electricidad del Caribe, Inc.* v. *Foster Wheeler Corp.*, 92 F. Supp. 2d 8, 24 (D.P.R. 2000). Tort and contract claims that allege misrepresentations in the sale of securities *sound* in securities fraud and are subject to this repose period, regardless of whether they are styled as claims under Section 890 of PRUSA.[15] (Ex. P (*Paine Webber*, 136 D.P.R. at 547) (affirming dismissal of breach of contract claims brought after PRUSA's two-year period expired); Ex. Q (*Tollinche Puig* v. *Triple-S*

---

[15]     Regardless of whether the Amended Complaint uses the word "fraud," Plaintiffs' fiduciary duty claims sound in fraud because they allege Defendants "attempt[ed] to induce action or inaction on the part of . . . investors by means of falsehoods or material omissions." *Soley* v. *Wasserman*, 2010 WL 931888, at *7 (S.D.N.Y. Mar. 12, 2010) (citations omitted); *see Rombach* v. *Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (claims sounded in fraud despite plaintiff's "effort to characterize claims by the label used in the pleading" because "[t]hese nominal efforts are unconvincing where the gravamen of the complaint is plainly fraud") (citations omitted).

*Mgmt. Corp.*, 2010 WL 3200382, at *4 (P.R. Ct. App. May 28, 2010)) (Section 890 barred unjust enrichment claim).) Thus, Section 890's time bar applies to all of Plaintiffs' claims because each alleges that Defendants "*Misrepresent[ed]* The Nature And Risk Of The Funds." (AC at p. 43 (emphasis added).)

Here, Toro purchased shares of two Funds in January 2005 and January 2007; Vela purchased his respective shares in December 2011 and June 2012. *See supra* at 5. Accordingly, Vela's claims arising from his 2011 purchase and all Toro's claims are necessarily time-barred, because they did not assert these claims until May 30, 2014—more than two years later. Only Vela's claims based on his June 2012 purchase avoid Section 890's time bar.

**B.** **Puerto Rico's One-Year Statute of Limitations for Torts Independently Bars Vela's Fiduciary Duty Claims.**

In addition to Section 890's statute of repose, Puerto Rico's one-year statute of limitations for torts renders Vela's remaining breach of fiduciary duty and aiding and abetting claims untimely.[16] Puerto Rico treats breach of fiduciary duty claims as torts, subject to a one-year period of limitations upon accrual. 31 L.P.R.A. § 5298(2); *Medina & Medina* v. *Country Pride Foods Ltd.*, 631 F. Supp. 293, 302 (D.P.R. 1986) (fiduciary duty allegations "stat[e] a cause of action based on misrepresentation, a tort"). "The statute of limitations for a claim of aiding and abetting a breach of fiduciary duty is the same limitations period that would apply to the underlying breach." *Balta* v. *Ayco Co.*, 626 F. Supp. 2d 347, 359 (W.D.N.Y. 2009) (citation omitted).

The one-year period accrues when a plaintiff has knowledge of the claim *or*, "by due diligence, such knowledge would likely have been acquired." *In re Alicano Ayala* v. *Philip*

---

[16] If they were not already barred by the statute of repose, the statute of limitations would also have barred all of Toro's claims and Vela's claims based on his 2011 purchase.

*Morris, Inc.*, 263 F. Supp. 2d 311, 316 (D.P.R. 2003) (citations omitted). This "discovery rule" presents an objective test: the limitations period runs once "the aggrieved party could have reasonably become aware of the cause of the injury and the person that caused it." *Serrano* v. *Figueroa-Sancha*, 878 F. Supp. 2d 301, 313 (D.P.R. 2012) (citing *Colon Prieto* v. *Geigel*, 155 D.P.R. 232, 234 (1984)).

Under this test, Plaintiffs should have known of their fiduciary duty claims well before May 30, 2013, as ample information was publicly available that, as a matter of law, put Plaintiffs on notice of their claims several years before Plaintiffs filed suit. Indeed, the Amended Complaint cribs liberally from legal and regulatory actions filed prior to May 30, 2013. The Amended Complaint repeats allegations from the Securities Action, which was filed on August 13, 2012 asserting that UBS made material misrepresentations about *thirteen of the same Funds* at issue here, among others. *See Roman* v. *UBS Fin. Servs., Inc. of P.R.*, No. 3:12-cv-01663 (D.P.R.) (Class Action Complaint, Aug. 13, 2012, ECF No. 1). There, like here, the plaintiffs alleged that UBS "promoted the [closed-end funds'] 'extraordinary "market returns"' and low risk and volatility, while simultaneously not disclosing that [closed-end fund] share prices and liquidity were dependent upon [UBS'] continued manipulation and support of the market." *Id.* ¶ 4. In fact, Plaintiffs previously sought *consolidation* with the Securities Action in the District of Puerto Rico, arguing that both "(i) share common defendants (*e.g.*, UBS-PR); (ii) involve common issues of fact (*e.g.*, the risks of the [closed-end funds]); (iii) involve common issues of mixed fact and law (*e.g.*, whether UBS breached its contractual duties); and (iv) will require common proof of liability . . . ." *Fernandez* v. *UBS AG*, 3:14-cv-01441 (D.P.R.) (Joint Motion for Leave to File a Master Consolidated Complaint, June 12, 2014, at 2, ECF No. 6); *see WaMu Mortg. Pass-Through Certificates, Series AR1*, 748 F. Supp. 2d 1246, 1258 (W.D.

Wash. 2010) (statute of limitations was triggered when a class-action complaint was filed against common defendants, focusing "almost exclusively" on the same offering materials); *see also NECA-IBEW Pension Trust Fund* v. *Bank of Am. Corp.*, 2013 WL 620257, at *10 (S.D.N.Y. Feb. 15, 2013) (earlier lawsuits put plaintiffs on notice of their claims).

Similarly, the Amended Complaint cites to public administrative proceedings initiated on May 1, 2012 by the Securities and Exchange Commission ("SEC") against UBS for making "misrepresentations and omissions of material facts to numerous retail customers in Puerto Rico" regarding closed-end mutual funds, including *all nine* of the Funds at issue here that Popular co-managed. *In re UBS Fin. Servs., Inc. of P.R.*, Securities Act Release No. 9318, 2012 WL 1514678, at *2 n.2 (May 1, 2012); (AC ¶ 3.)[17] With the same Funds and the same underlying purported wrongdoing, it is unsurprising that the Amended Complaint's allegations mimic these actions in an attempt to flesh out its bare-boned legal conclusions.

If that were not enough, by May 30, 2013, the market was inundated with media accounts disclosing the debt problems of Puerto Rico and the concentration of the Funds in Puerto Rico assets. (*See* Appendix 1.)[18]

Taken together or separately, the Securities Action, government investigation, and news articles would have put any reasonable investor in the Funds on notice of its claims. *See,*

---

[17] Additional instances in which the Amended Complaint cites to the SEC investigation, and extensive publicity about that investigation prior to May 30, 2013, are collected in Miguel A. Ferrer's Memorandum of Law in Support of his Motion to Dismiss at 7-10, and supporting exhibits.

[18] The Court may take judicial notice of newspaper articles, analyst reports and similar sources to show "the market was aware of the information" contained therein. *Heliotrope Gen., Inc.* v. *Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999). *See also Staehr* v. *Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[I]t is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents . . . .") (emphasis in original).

*e.g.*, *Marshall* v. *Milberg LLP*, 2009 WL 5177975, at *5 (S.D.N.Y. Dec. 23, 2009) (imputing notice based on "three articles alone [that] revealed the basic allegations" underlying the complaint); *In re Merrill Lynch & Co. Res. Reps. Sec. Litig.*, 272 F. Supp. 2d 243, 251, 265 (S.D.N.Y. 2003) (claims were time-barred because "the information regarding the alleged conflict of interest was public knowledge, and had been for years").

As noted, much of this is in fact cited in the Amended Complaint itself. Plaintiffs cannot have it both ways: if Plaintiffs claim that "extensive publicly available information cited in its [Amended] [C]omplaint supports its claims, then these public materials would also have contributed to the totality of the circumstances putting [Plaintiffs] on notice of possible claims" before May 30, 2013. *Woori Bank* v. *Merrill Lynch*, 923 F. Supp. 2d 491, 499 (S.D.N.Y. 2013), *aff'd*, 542 Fed. App'x 81 (2d Cir. 2013). In short, Plaintiffs' failure to bring their claims until May 2014 cannot be excused.

## III. THE BREACH OF CONTRACT ALLEGATIONS FAIL TO STATE A CLAIM.

Plaintiffs broadly claim that Popular Securities breached its contractual duties, but factual allegations concerning the actual terms of any agreement with Popular Securities are scarce. Plaintiffs do not trouble themselves to identify a single term in their agreements that Popular Securities supposedly breached. Nor do Plaintiffs support "with any assertion of material fact" their contention that Popular contravened whatever contractual obligations it had. *Cohen* v. *State St. Bank & Trust Co.*, 893 N.E.2d 425, 430 (Mass. App. Ct. 2008) (dismissing breach of contract claim alleging that defendant "failed to invest [plaintiff's] funds in accordance with the objective he had selected"); *Martinez* v. *Vakko Holding A.S.*, 2008 WL 2876529, at *2 (S.D.N.Y. July 23, 2008) (dismissing breach of contract claim for failing "to allege the essential terms of the parties' purported contract, including specific provisions of the contract upon which liability is predicated") (citation omitted). Instead, Plaintiffs rely largely on isolated excerpts

from Popular Securities' website *as of May 30, 2014*—nine years after the first purchase of the Funds. (AC ¶ 58.) Plaintiffs never contend that those website terms constituted a contract, that those terms were the same when Plaintiffs invested in the Funds, or that Plaintiffs even viewed the webpage. *See Fortis Corp. Ins., S.A.* v. *M/V Cielo del Canada*, 320 F. Supp. 2d 95, 98 (S.D.N.Y. 2004) ("Current websites maintained by the defendant cannot be taken as controlling evidence of the facts that existed [two years prior].").

Even if the website allegations were controlling, Plaintiffs do not allege how Popular Securities failed to abide by the statements made on the website. The website purportedly stated that Popular Securities would, among other things, "work with [its] clients to understand their particular circumstances and financial goals and offer specialized, trustworthy advice." (AC ¶ 58.) But the Amended Complaint never alleges what Toro and Vela's "particular circumstances" were, and—most conspicuously—makes no allegations about any advice they received from Popular Securities in light of those circumstances. The closest the Amended Complaint comes to describing Toro and Vela's investment goals is insinuating that they were "conservative" (*Id.* ¶ 95), yet that is contradicted by the agreements they each signed. Both Toro and Vela indicated that they sought to take "*moderate*" rather than "*conservative*" risk positions in their respective Account Agreements. (Exs. F (Vela Account Agreement at 2) & E (Toro Account Agreement at 2).)[19]

Those website representations also cannot support a breach of contract claim when construed with the written contracts that Plaintiffs actually executed. Toro's customer

---

[19]     Those moderate risk positions entailed the "risk of substantial losses," and, together with the Funds' extensive risk disclosures, defeat allegations that "defendants promised a secure investment without warning that preservation of that capital was not guaranteed." *Olkey* v. *Hypoerion 1999 Term Trust, Inc.*, 98 F.3d 2, 9 (2d Cir. 1996).

agreement stated that Popular would "not provide any investment advice in relation to this account, or counsel or opinions with respect to the suitability of any security or order." (Ex. E (Toro Account Agreement at 3).) Vela's customer agreement specified that, notwithstanding any advice from Popular Securities, he agreed to "accept full responsibility for . . . all investment decisions and transaction orders, and all instructions that you or anyone authorized by you places." (Ex. G (Vela Customer Agreement at 1).) Courts have repeatedly found such language sufficient to defeat contract claims like Plaintiffs' here. *See, e.g.*, *Szulik* v. *State St. Bank & Trust Co.*, 935 F. Supp. 2d 240, 256-57 (D. Mass. 2013) (plaintiff assumed responsibility under contract "with respect to any directions to receive securities"); *Matana* v. *Merkin*, 989 F. Supp. 2d 313, 319-20 (S.D.N.Y. 2013) (dismissing contract claim because plaintiff "disclaimed any reliance on representations outside 'the Fund Documents and independent investigations made by the Investor'").

Plaintiffs also allege that Popular Securities breached obligations in the Funds' offering materials, specifically, that the Funds sought to provide investment income "consistent with the preservation of capital." (AC ¶ 126.) As shown above, however, the offering materials *disclose* precisely the information that the breach of contract claim relies upon having been *undisclosed*. *See supra* at 7-9. Because these disclosures "accurately conveyed the specific risk that the plaintiffs assert materialized," "any breach of contract action based on the same [documents] must fail." *In re Proshares Trust Sec. Litig.*, 889 F. Supp. 2d 644, 656 (S.D.N.Y. 2012); *see Steinberg* v. *PRT Grp.*, 88 F. Supp. 2d 294, 304 (S.D.N.Y. 2000) (alleged misrepresentation was "not misleading as a matter of law, because the prospectus disclosed these very risks"); *Finkel* v. *Putnam Convertible Opportunities Income & Trust*, 1997 WL 371177, at

*4 (S.D.N.Y. July 3, 1997) (breach of contract claims were futile because "allegations of broken promises [we]re contradicted by the cautionary language" in the prospectus).

Finally, Plaintiffs try to bolster their deficient pleading by resorting to an implied covenant in the parties' bargain. Reduced to its core, Plaintiffs contend that Popular Securities breached an implied duty of "good faith" by putting its "own pecuniary interests ahead of the interests of Plaintiffs and the Class." (AC ¶ 192.) But it is axiomatic that an *implied* duty only extends as far as the *express* terms of a contract—it is an allegation that the duties explicitly provided for were not carried out in good faith. *Ayash* v. *Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005) ("The scope of the [implied] covenant is only as broad as the contract that governs the particular relationship."). The Customer Agreements made clear that Popular Securities served as a nondiscretionary broker, and that Plaintiffs assumed "all responsibility" for their investment decisions. (Ex. G (Vela Customer Agreement at 1, 5); Ex. E (Toro Account Agreement at 3).) The implied covenant of good faith and fair dealing thus cannot alter that bargain because it does not "create rights and duties not otherwise provided for in the [contract]." *Ayash*, 443 Mass. at 385 (citation omitted).

## IV.    THE FIDUCIARY DUTY ALLEGATIONS FAIL TO STATE A CLAIM.

Plaintiffs' breach of fiduciary duty claim fails for three *independent* reasons.

### A.    Plaintiffs' Breach of Fiduciary Duty Claim Is Duplicative.

It is black-letter law that no cause of action for torts lies where defendants' "alleged breach of [fiduciary duty] is intertwined with their alleged breach of contract." *Lincoln Rd. Prods, Inc.* v. *Reign Entm't Grp.*, 2014 WL 6893663, at *9 (D.P.R. Dec. 5, 2014). Rather, under both Massachusetts and Puerto Rico law, the "failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made." *Galvin* v. *U.S. Bank Nat'l Ass'n*, 2015 WL 1014549, at *5 (D. Mass. Mar. 9, 2015) (citation omitted); *Unum Grp.* v.

*Benefit P'ship, Inc.*, 938 F. Supp. 2d 177, 187 (D. Mass 2013) (a plaintiff "is not permitted to recover in both contract and tort for the same harm") (citations omitted); *Linares-Acevedo* v. *Acevedo*, 38 F. Supp. 3d 222, 228 (D.P.R. 2014) (holding that plaintiff cannot recover in tort for "conduct which forms the basis of [plaintiff's] breach of contract claim").

In every instance in which Plaintiffs assert a purported breach of fiduciary duty, it is for the identical supposedly unsuitable investment advice underlying its adjoining breach of contract claim. For example, Plaintiffs assert claims for breach of fiduciary duty and contract on the identical allegation that Popular "push[ed] Plaintiffs and other Class members to invest in the very profitable Funds without any regard for [their] circumstances or risk appetites." (AC ¶ 8; *compare id.* ¶¶ 172 and 192 (Counts III and VI).) The same pattern repeats throughout.[20] This action should be litigated based on the parties' agreements, and Plaintiffs' breach of fiduciary duty claim must be dismissed.

### B. As a Matter of Law, Popular Never Owed Plaintiffs a Fiduciary Duty.

Like New York, Puerto Rico follows tort principles articulated in the Restatement (Second) of Torts. *See Malave-Felix* v. *Volvo Car Corp.*, 946 F.2d 967, 971 (1st Cir. 1991) (citing *Mendoza* v. *Cerveceria Corona, Inc.*, 97 P.R.R. 487, 495-96 (1969)). The Restatement provides that "[a] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Restatement (Second) of Torts § 874 cmt. a.

The "scope of the relation" with securities brokers depends upon the extent to which they enjoy *discretion* over a client's account. Thus, brokers with discretionary trading

---

[20] Appendix 3 compares the operative language supporting the counts, illustrating the complete overlap between Plaintiffs' fiduciary duty and contract claims.

authority owe a greater duty, *Howell* v. *Freifeld*, 631 F. Supp. 1222, 1224 (S.D.N.Y. 1986), but nondiscretionary brokers who merely execute transactions and give basic advice owe a lesser one. *Press* v. *Chem. Inv. Servs. Corp.*, 988 F. Supp. 375, 386 (S.D.N.Y. 1997). That lesser duty is limited to "the proper execution of transactions upon explicit customer instructions." *In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 323 (S.D.N.Y. 2010).[21]

Here, Plaintiffs have not alleged that Popular assumed *any* discretionary authority beyond consummating trades requested by the client. To the contrary, the Customer Agreements expressly state that Popular Securities acted solely as a broker without any discretion over the account. (Exs. E (Toro Account Agreement at 3), G (Vela Customer Agreement at 1).) Plaintiffs' legal conclusions that Popular served as "investment advisers"—a legal term of art— receive no weight, as they are not supported by a single allegation of fact. *See Spinelli* v. *Nat'l Football League*, 2015 WL 1433370, at *40 (S.D.N.Y. Mar. 27, 2015) ("legal conclusion" that defendant "'held itself out' as Plaintiffs' 'agent' and therefore owes them a special fiduciary duty" was "conclusively contradicted by the Plaintiffs' own agreement"); 15 U.S.C. § 80b-2(a)(11) (defining "investment adviser").

The remaining allegations as to Popular's duties refer to its purported recommendation to invest in the Funds and to general marketing materials on Popular's website as of May 30, 2014. But "advice and recommendations with respect to a given trade" do not transform a broker into an investment adviser, or charge the broker with a duty beyond "the

---

[21] Plaintiffs never assert that Popular owed Plaintiffs a duty "based on 'transformative special circumstances,'" such as 'the customers' incapacity or simplicity.'" *In re Refco*, 759 F. Supp. 2d at 325 n.22 (quoting *de Kwiatkowski* v. *Bear, Stearns & Co.*, 306 F.3d 1293, 1308-09 (2d Cir. 2002).) "There is no indication in the [Amended C]omplaint that . . . [P]laintiffs had 'impaired faculties,' 'a closer than arms-length relationship with [Popular],' or that they are 'so lacking in sophistication that de facto control of the assets were deemed to rest in [Popular].'" *Id.*

narrow task of consummating the transaction requested." *de Kwiatkowski*, 306 F.3d at 1302 (citation omitted). And the website statements fail to impose obligations of investment advisers. "[A]dvertisements" and "sales pitch[es]" that a broker "is particularly well qualified to offer investment advice do[] not alter the limited scope of the broker's legally enforceable obligations." *DeBlasio* v. *Merrill Lynch & Co.*, 2009 WL 2242605, at *30 (S.D.N.Y. July 27, 2009) (citation omitted). That is because "no reasonable investor would expect that these vague and general advertisements created any sort of extra-contractual relationship extending beyond the terms specified in Plaintiffs' account agreements." *Welch* v. *Ameritrade Holding Corp.*, 2009 WL 2356131, at *42 (S.D.N.Y. July 27, 2009).

Nor, contrary to Plaintiffs' conclusory allegations, does PRUSA bind nondiscretionary brokers with the same "highest standard of fiduciary duty" as discretionary brokers or investment advisers. (AC ¶ 49.) The fiduciary duties of brokers do not exist in a vacuum.[22] Rather, they are only intelligible (and actionable) in context, namely, in light of the relationship between a broker and a client. *Bissell*, 937 F. Supp. at 246 (a broker's "fiduciary obligation . . . is limited to affairs entrusted to the broker"). Here, the Amended Complaint fails to plead that Plaintiffs placed trust or confidence in Popular beyond their arm's-length agreement that Popular would execute Plaintiffs' investment instructions and would not exercise any investment discretion. The duty that Popular owed Plaintiffs, therefore, was confined to doing just that—faithfully executing requested transactions.

---

[22]     As Justice Frankfurter put it, "to say that a man is a fiduciary only begins analysis; it gives direction to further inquiry. To whom is he a fiduciary? What obligations does he owe as a fiduciary? In what respect has he failed to discharge these obligations?" *S.E.C.* v. *Chenery Corp.*, 318 U.S. 80, 85-86 (1943).

**C.    The Allegations of Breach of Fiduciary Duty Fail Under Rule 9(b).**

Under Rule 9(b), for a fiduciary duty claim premised on an alleged misrepresentation to survive dismissal, the complaint must allege details of the statement, where and when the statement was made, the identity of the speaker, and why the statement is false. *See DeBlasio*, 2009 WL 2242605, at *10.   The Amended Complaint, however, contains no what/where/when/who/why allegations against Popular, in particular, and instead relies on generalized allusions to Popular's misrepresentations.   By definition, that pleading does not satisfy Rule 9(b).   Under any relevant standard, the Amended Complaint does not adequately plead that Popular breached its fiduciary duties by recommending "unsuitable" investments in the Funds because it fails to:  (1) allege what Toro or Vela's investment goals were, as opposed to those of "some" or "many" putative class members (AC ¶¶ 1, 94); *Turkmen* v. *Ashcroft*, 2006 WL 1662663, at *45 n.42 (E.D.N.Y. June 14, 2006) (allegations regarding "members of the putative class" were irrelevant), *vacated in part on other grounds*, 589 F.3d 542 (2d Cir. 2009); (2) plead what Toro or Vela told Popular about their investment objectives, *see Frota* v. *Prudential-Bache Sec., Inc.*, 639 F. Supp. 1186, 1191 (S.D.N.Y. 1986) (suitability allegations fail where plaintiffs do not allege "what their investment objectives were, or that those objectives were made known to defendants"); or (3) identify a single transaction in which Plaintiffs invested in the Funds based on Popular's advice, *de Kwiatkowski*, 306 F.3d at 1306 (breach must be pleaded on a "transaction-by-transaction" basis).

Even if the Amended Complaint contained plaintiff-by-plaintiff and transaction-by-transaction allegations, as is required, it would still fail because Plaintiffs cannot plead—as they must—that they "reasonably relied on [any] advice" from Popular.  *BNP Paribas Mortg. Corp.* v. *Bank of Am., N.A.*, 866 F. Supp. 2d 257, 271 (S.D.N.Y. 2012).   In Puerto Rico as elsewhere, "[t]here is no liability for . . . matters which plaintiff[s] could ascertain on [their] own

in exercise of due diligence." *Adrian* v. *Mesirow Fin. Structured Settlements, LLC*, 736 F. Supp. 2d 404, 422 (D.P.R. 2010); *see also Thrivent Fin. for Lutherans* v. *Strojny*, 882 F. Supp. 2d 260, 268 (D. Mass. 2012) (dismissing fiduciary duty claim as a matter of Massachusetts law because the defendant "disclosed all the relevant information"). The Amended Complaint plainly flunks this test of diligence. The most elementary level of diligence by Plaintiffs—reading the offering materials—would have undercut any notion that the Funds were risk free and well diversified out of Puerto Rico. (*See* Appendix 2 (excerpting disclosures).)[23] Thus, even assuming that Plaintiffs were subjectively unaware of the risks of the Funds,[24] the robust offering material disclosures defeat *any investors'* (including Plaintiffs') claim of reliance on a belief that the Funds were not concentrated in Puerto Rico or leveraged up to 50% of their assets.

Nor do Plaintiffs' bald conclusions that Popular had "dramatically inflated commissions" and "obvious conflicts of interest" come close to pleading breach of fiduciary duty. *First*, these allegations fail because Popular's purported "inflated commissions" and "conflicts of interest" were fully disclosed in Plaintiffs' contracts and the Funds' offering materials. (*See* Exs. A-G; Appendix 2.) Even assuming the truth of the allegations, it is not a breach of duty to have conflicts of interest, if those conflicts are disclosed to the beneficiaries. *In re AIG Advisor Grp. Sec. Litig.*, 309 Fed. App'x 495, 498 (2d Cir. 2009) (disclosures of the "very 'conflict of interest' at the heart of plaintiffs' complaint . . . barr[ed] any claim based thereon"). *Second*, Plaintiffs' suggestion that the purported fees and conflicts of interest *led* to

---

[23]    Plaintiffs cannot avoid the disclosures or their express agreement "to read the prospectus of any mutual fund in which I purchase or trade." (Ex. G (Vela Customer Agreement at 5); *see also* Ex. E (Toro Account Agreement at 7).)

[24]    Plaintiffs' subjective reliance on alleged misstatements from Popular is also incredible as a matter of law given that the Amended Complaint quotes the prospectuses containing the very information that Popular purportedly withheld. (AC ¶ 126); *Strojny*, 882 F. Supp. 2d at 268.

Popular's purported breach of fiduciary duty is sheer speculation, unadorned by factual pleading. (*See, e.g.,* AC ¶ 5 ("Disregarding obvious conflicts of interest, Defendants profited handsomely by participating in all aspects of the creation, management and trading of the Funds.").)  Indeed, Plaintiffs' allegations here rest entirely on Popular's *own* disclosure of potential conflicts of interest.  (*See, e.g., id.* ¶¶ 47, 99.)  Plaintiffs' mere conclusions are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 678, and the fiduciary duty claim must be dismissed.

## V.   THE AMENDED COMPLAINT'S AIDING AND ABETTING ALLEGATIONS FAIL TO STATE A CLAIM.

A plaintiff can only state a claim for aiding and abetting a breach of fiduciary duty by pleading "(1) the existence of a violation by the primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) proof that the aider and abettor substantially assisted the primary wrongdoer."  *In re Refco*, 759 F. Supp. 2d at 333 (citation omitted); *see also Rodriguez* v. *Banco Cent.*, 727 F. Supp. 759, 774 (D.P.R. 1989).  In addition to failing to plead their primary fiduciary duty claim, Plaintiffs fail to plead Banco Popular's knowledge of the breach or substantial assistance.

Because a plaintiff must plead *actual knowledge* of the breach in detail, constructive knowledge is insufficient to state a claim absent "facts sufficient [to] give rise to a strong inference of conscious avoidance or actual knowledge."  *In re MF Global Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 182 (S.D.N.Y. 2014).  Plaintiffs' cursory allegation that Banco Popular's knowledge follows from "the nature of the scheme alleged," overlap of certain officers and/or directors, and "general[] disregard[ of] corporate distinctions"  (AC ¶ 179), is a sparse and wholly conclusory accusation that does not satisfy the pleading requirements.  *Filler* v. *Hanvit Bank*, 339 F. Supp. 2d 553, 559 (S.D.N.Y. 2004).  Similarly, substantial assistance only exists where a defendant (1) "affirmatively assists, helps conceal, or by virtue of failing to act when

required to do so" enables the breach to proceed, and (2) "the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *UniCredito Italiano SPA* v. *JPMorgan Chase Bank*, 288 F. Supp. 2d 485, 502 (S.D.N.Y. 2003). Accordingly, "substantial assistance means more than just performing routine business services" for the alleged wrongdoer. *Meridian Horizon Fund, LP* v. *KPMG (Cayman)*, 487 Fed. App'x 636, 643 (2d Cir. 2012) (internal quotation omitted). The conclusory allegation that Banco Popular "knowingly provided substantial assistance" through the overlap of officers with Popular Securities is, at most, an allegation that Banco Popular provided "routine business services" to Popular Securities.

## IV.    PLAINTIFFS FAIL TO PLEAD DAMAGES FOR ANY OF THEIR CLAIMS.

For the reasons articulated by UBS, the Amended Complaint must be dismissed because it fails to plead the required element of damages for any of Plaintiffs' claims. *See* UBS' Mem. in Supp. of their Mot. to Dismiss, at Sections V.A.4 & V.B.3.

## V.    PLAINTIFFS LACK STANDING TO BRING CLAIMS WITH RESPECT TO FUNDS IN WHICH THEY DID NOT INVEST.

"[N]amed plaintiffs have standing only with respect to the offerings in which they purchased securities." *In re IndyMac Mortg.-Backed Sec. Litig.*, 718 F. Supp. 2d 495, 501 (S.D.N.Y. 2010). Toro and Vela only purchased shares of four Funds—three of which Banco Popular co-managed with UBS and the other of which UBS solely managed. In consequence, Plaintiffs' claims based on the six jointly-managed Funds that Toro and Vela did not purchase must be dismissed against Popular for lack of standing. *See Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago* v. *Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) (plaintiffs lacked standing for trusts they did not invest in because "alleged misconduct must be proved loan-by-loan and trust-by-trust").

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
       June 18, 2015

Respectfully submitted,

_____/s/ Joseph E. Neuhaus_____
Joseph E. Neuhaus
Matthew A. Schwartz
James F. Ianelli
Myla G. Arumugam
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000 (telephone)
(212) 558-3588 (facsimile)
neuhausj@sullcrom.com
schwartzmatthew@sullcrom.com
ianellij@sullcrom.com
arumugamm@sullcrom.com

*Attorneys for Defendants Banco*
*Popular de Puerto Rico and Popular*
*Securities, LLC*