UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORA FERNÁNDEZ; AUGUSTO SCHREINER; EDDIE TORO VÉLEZ; VÍCTOR R. VELA DÍEZ DE ANDINO; GEORGINA VÉLEZ MONTES; and JUAN VIERA and ESTHER SANTANA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBS AG; UBS FINANCIAL SERVICES, INC.; UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO; UBS TRUST COMPANY OF PUERTO RICO; UBS BANK USA; CARLOS V. UBIÑAS; MIGUEL A. FERRER; BANCO POPULAR de PUERTO RICO; and POPULAR SECURITIES, LLC,<br><br>Defendants. | No. 1:15-cv-02859-SHS<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW OF THE UBS DEFENDANTS IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

Jonathan K. Youngwood
Janet A. Gochman
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for the UBS Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS ..................................................................... 4

    A.    Plaintiffs' Allegations ................................................ 5

    B.    Each UBS Plaintiff Entered Into a Brokerage Account
        Agreement ...................................................... 6

    C.    The Twenty-Three Funds Provided Tax Advantages for Puerto
        Rico Residents ................................................... 8

    D.    The Risks Associated with the Funds Were Fully Disclosed ............ 9

LEGAL STANDARD ........................................................................ 10

ARGUMENT ............................................................................... 11

I.     THE COMPLAINT MUST BE DISMISSED BECAUSE
      PLAINTIFFS' CLAIMS ARE PRECLUDED BY SLUSA ......................... 11

II.    PLAINTIFFS' FIDUCIARY DUTY AND AIDING AND ABETTING
      CLAIMS MUST BE DISMISSED AS TIME-BARRED (COUNTS I
      AND II) ........................................................... 12

    A.    The Risks Alleged in the Complaint Were Publicly Disclosed in
        the Funds' Prospectuses ......................................... 14

    B.    "Storm Warnings" Easily Put Plaintiffs on Notice of Their
        Claims ......................................................... 14

III.   PLAINTIFF VELEZ MONTES' CLAIMS ARE ALSO
      EXTINGUISHED BY PRUSA'S STATUTE OF REPOSE ....................... 18

IV.   PLAINTIFFS' FIDUCIARY DUTY CLAIM MUST BE DISMISSED
      BECAUSE IT IS DUPLICATIVE OF THEIR CONTRACT CLAIM
      (COUNT I) ....................................................... 19

V.    THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS
      FAIL TO PLEAD THE ELEMENTS OF THEIR CLAIMS ....................... 19

    A.    Plaintiffs Fail To State a Claim for Breach of Fiduciary Duty
        (Count I) ....................................................... 19

B.      Plaintiffs Fail To State a Claim for Breach of Contract (Count
        V) ................................................................................................................ 24

C.      Plaintiffs Fail To State a Claim for Aiding and Abetting Breach
        of Fiduciary Duty (Count II) ........................................................................ 29

VI.   PLAINTIFFS LACK STANDING TO BRING CLAIMS WITH
      RESPECT TO FUNDS IN WHICH THEY DID NOT INVEST ................................ 29

CONCLUSION ........................................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ambert v. Caribe Equity Grp., Inc.,*
No. CIV. 11-1254 JAF, 2011 WL 4626012 (D.P.R. Sept. 30, 2011) ................................. 18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................................... 10

*Ashland Inc. v. Morgan Stanley & Co.,*
652 F.3d 333 (2d Cir. 2011) ........................................................................................ 20

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................................................... 10

*Berman v. Sugo LLC,*
580 F. Supp. 2d 191 (S.D.N.Y. 2008) .......................................................................... 28

*Bischoff v. G.K. Scott & Co.,*
687 F. Supp. 746 (E.D.N.Y. 1986) ............................................................................... 27

*BNP Paribas Mortg. Corp. v. Bank of Am. N.A.,*
866 F. Supp. 2d 257 (S.D.N.Y. 2012) ............................................................... 20, 21, 22

*Brown v. E.F. Hutton Grp.,*
991 F.2d 1020 (2d Cir. 1993) ...................................................................................... 23

*Celle v. Barclays Bank P.L.C.,*
48 A.D.3d 301 (1st Dep't 2008) .................................................................................. 20

*Chiste v. Hotels.com LP,*
756 F. Supp. 2d 382 (S.D.N.Y. 2010) ........................................................................... 12

*Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.,*
799 F. Supp. 261 (D.P.R. 1992) ................................................................................... 18

*Crigger v. Fahnestock & Co.,*
443 F.3d 230 (2d Cir. 2006) ........................................................................................ 23

*De Kwiatkowski v. Bear, Stearns & Co.,*
306 F.3d 1293 (2d Cir. 2002) .............................................................................. 21, 22, 25

*DeBlasio v. Merrill Lynch & Co.,*
No. 07 CIV 318 (RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ............................... 10

*Design Strategy, Inc. v. Davis,*
    469 F.3d 284 (2d Cir. 2006) .......................................................................... 29

*Dodds v. Cigna Sec., Inc.,*
    12 F.3d 346 (2d Cir. 1993) ....................................................................... 14, 28

*Doe 171 v. Order of Saint Benedict,*
    No. CIV. 11-1406 JAF, 2012 WL 1410320 (D.P.R. Apr. 20, 2012) ................... 17

*Fesseha v. TD Waterhouse Inv'r Servs., Inc.,*
    305 A.D.2d 268 (1st Dep't 2003) ............................................................... 19, 20

*Frota v. Prudential-Bache Sec., Inc.,*
    639 F. Supp. 1186 (S.D.N.Y. 1986) ............................................................ 23, 27

*Fuji Photo Film U.S.A., Inc. v. McNulty,*
    669 F. Supp. 2d 405 (S.D.N.Y. 2009) ............................................................ 24

*Gavin/Solmonese LLC v. D'Arnaud-Taylor,*
    No. 13-CV-6400 LAP, 2014 WL 7338718 (S.D.N.Y. Dec. 24, 2014) ................. 15

*Hoffman v. UBS-AG,*
    591 F. Supp. 2d 522 (S.D.N.Y. 2008) ............................................................ 22

*IBM v. Dale,*
    No. 7:11-CV-951 VB, 2011 WL 4012399 (S.D.N.Y. Sept. 9, 2011) ................... 24

*IBM. v. Liberty Mut. Ins. Co.,*
    363 F.3d 137 (2d Cir. 2004) .......................................................................... 12

*In re Kingate Mgmt. Ltd. Litig.,*
    784 F.3d 128 (2d Cir. 2015) ..................................................................... 10, 11

*In re Lehman Bros. Sec. & ERISA Litig.,*
    684 F. Supp. 2d 485 (S.D.N.Y. 2010) ......................................................... 29, 30

*In re Ticketplanet.com,*
    313 B.R. 46 (Bankr. S.D.N.Y. 2004) .............................................................. 29

*In re UBS Auction Rate Sec. Litig.,*
    No. 08 CIV. 2967 (LMM), 2010 WL 2541166 (S.D.N.Y. June 10, 2010) ........... 22

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,*
    157 F.3d 933 (2d Cir. 1998) ....................................................................... 20, 21

*LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC,*
    10 F. Supp. 3d 504 (S.D.N.Y. 2014) .............................................................. 21

*Martinez v. Vakko Holding A.S.*,
No. 07 Civ. 3413 (LAP), 2008 WL 2876529 (S.D.N.Y. July 23, 2008) ............................ 24

*MashreqBank, psc v. ING Grp. N.V.*,
No. 13 Civ. 2318, 2013 WL 5780824 (S.D.N.Y. Oct. 25, 2013) ........................................ 19

*Molina v. Union Independiente Autentica De La AAA*,
555 F. Supp. 2d 284 (D.P.R. 2008) ................................................................................... 13

*Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*,
392 F.3d 520 (2d Cir. 2004) ............................................................................................... 28

*Oppenheimer & Co. v. Trans Energy, Inc.*,
946 F. Supp. 2d 343 (S.D.N.Y. 2013) .................................................................................. 7

*PaineWebber, Inc.* v. *First Boston Inc.*,
136 D.P.R. 541 (P.R. 1994) ................................................................................................ 18

*Phillips v. Am. Int'l Grp., Inc.*,
498 F. Supp. 2d 690 (S.D.N.Y. 2007) ........................................................................... 25, 26

*Quintana Lopez v. Liggett Grp., Inc.*,
336 F. Supp. 2d 153 (D.P.R. 2004) ............................................................................... 13, 17

*Ritani, LLC v. Aghjayan*,
880 F. Supp. 2d 425 (S.D.N.Y. 2012) ................................................................................ 23

*Rodriguez v. SLM Corp.*,
No. 07CV1866(WWE), 2009 WL 598252 (D. Conn. Mar. 6, 2009) .................................. 13

*Santiago Nieves v. A.C.A.A.*,
19 P.R. Offic. Trans. 755  (P.R. 1987) ............................................................................... 13

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008) ............................................................................................... 15

*Torres v. E.I. Dupont De Nemours & Co.*,
219 F.3d 13 (1st Cir. 2000) ................................................................................................ 13

*Tucker v. Scott*,
No. 96 Civ. 1923(LLS), 1997 WL 151509 (S.D.N.Y. Apr. 1, 1997) .................................. 12

*Turkmen v. Ashcroft*,
No. 02 CV 2307 (JG), 2006 WL 1662663 (E.D.N.Y. June 14, 2006).......................... 10, 28

*VFS Fin., Inc. v. Falcon Fifty LLC*,
17 F. Supp. 3d 372 (S.D.N.Y. 2014).................................................................................. 24

*Zaccaro v. Shah*,
    746 F. Supp. 2d 508 (S.D.N.Y. 2010) ................................................................................. 29

## Statutes and Rules

10 L.P.R.A. § 890(e) .......................................................................................................... 18, 19

15 U.S.C. § 78bb(f)(1) ............................................................................................................. 11

31 L.P.R.A. § 5298(2) .............................................................................................................. 12

Fed. R. Civ. P. 12(b)(1) ........................................................................................................... 10

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 10

Fed. R. Civ. P. 8 ...................................................................................................................... 10

Fed. R. Civ. P. 9(b) ................................................................................................................. 10

Defendants UBS AG, UBS Financial Services Inc. ("UBS Financial"), UBS Financial Services Incorporated of Puerto Rico ("UBS PR"), UBS Trust Company of Puerto Rico ("UBS Trust"), and UBS Bank USA ("UBS Bank") (collectively, "UBS") and Carlos V. Ubiñas (together with UBS, the "UBS Defendants") respectfully submit this memorandum, together with the declaration of Jonathan K. Youngwood ("Youngwood Decl.") and the affidavits of Maureen Millett ("Millett Aff.") and Annie Naughton ("Naughton Aff."),[1] in support of their motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' Amended Class Action Complaint (the "Complaint").[2]

## PRELIMINARY STATEMENT

This lawsuit concerns investments by Plaintiffs in twenty-three closed-end mutual funds, managed by UBS Trust or co-managed by UBS Trust together with Banco Popular (the "Funds"). The seven named Plaintiffs, five of whom are alleged clients of UBS, bring state law claims for breach of contract, breach of fiduciary duty and aiding and abetting on behalf of a putative class of clients of both UBS and Banco Popular who purchased or held shares of the Funds from May 5, 2008 through May 5, 2014. The Funds, which were organized under Puerto Rico law, were structured to provide certain tax advantages to Puerto Rico residents and, as such, provided an attractive investment option for many individuals. On the other hand, there were well-disclosed risks to investing in the Funds, including concentration risk (the Funds were heavily invested in securities issued by Puerto Rico government entities),

---

[1]   Certain exhibits attached to the Millett and Naughton Affidavits have been redacted in accordance with Section 21 of the Electronic Case Filing Rules & Instructions.

[2]   To the extent set forth herein, the UBS Defendants join and incorporate Popular's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint ("Popular Mem.") and Miguel A. Ferrer's Memorandum of Law in Support of His Motion to Dismiss Plaintiffs' Amended Class Action Complaint ("Ferrer Mem."), and the appendices accompanying both memoranda.

leverage risks (Puerto Rico law allowed the Funds to borrow one dollar for every dollar of capital) and market or price risks (the market for the Funds was limited).

These risks were disclosed in the prospectuses that were issued in connection with the Funds and made available to investors and the public.  Investors were expressly informed, for example, of the "Geographic Concentration Risk," including that the Funds are "more susceptible to economic, political, regulatory or other factors adversely affecting issuers in Puerto Rico than an investment company that is not concentrated in Puerto Rico issuers." Nonetheless, Plaintiffs allege that Defendants misrepresented the Funds as safe and secure investments when, in reality, they were highly volatile and risky.  According to Plaintiffs, Defendants did so in order to earn inflated commissions and fees, without any regard as to the suitability of the Funds as an investment for their respective clients.  Plaintiffs allege no details about their respective Fund purchases (including the most basic of information, such as when they purchased the Funds), no details about their respective risk profiles or investment objectives, and no details about any information regarding the Funds that they relied on in making their purchases.  For these reasons, as well as the additional reasons discussed below, Plaintiffs fail to plead their claims and dismissal of the Complaint is required.

*First*, as set forth more fully in the motion to dismiss filed by Banco Popular, the Complaint must be dismissed under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  SLUSA precludes putative class actions brought under state law that allege misrepresentations or omissions in connection with the purchase or sale of a covered security. The Complaint satisfies these criteria and, accordingly, must be dismissed.

*Second*, Plaintiffs' fiduciary duty and aiding and abetting claims are time-barred pursuant to Puerto Rico's one-year statute of limitations for torts because all of the Fund

purchases made by the UBS Plaintiffs occurred before May 30, 2013 (one year prior to the filing of this action).  Plaintiffs fail to meet their burden to plead that the statute is tolled. Moreover, the extensive risk disclosures regarding the Funds—made in the prospectuses and other materials available to Plaintiffs at the time of their investments—as well as myriad "storm warnings" put Plaintiffs on notice of their claims no later than mid-2012.  Among other things, multiple lawsuits, each of which was reported in the press, have been filed against UBS in connection with the Funds.  This included a suit in 2010, by one of Plaintiffs' counsel, that contains certain of the same allegations found in the Complaint here, and a federal securities action filed in August 2012 (the "Securities Action") with which Plaintiffs sought to consolidate this case based on, they argued, the significant overlap between the two cases.  Furthermore, in May 2012, an investigation by the Securities and Exchange Commission ("SEC") into the Funds resulted in the issuance of administrative orders and a settlement by UBS, generating widespread publicity in Puerto Rico and nationally.

Separately, the claims brought by Plaintiff Georgina Velez Montes are subject to dismissal pursuant to the Uniform Securities Act of Puerto Rico's ("PRUSA") two-year statute of repose because the only Fund purchase made by Ms. Velez Montes was on February 7, 2012, over two years before filing this lawsuit.  This two-year statue of repose also extinguishes any claims by the other Plaintiffs (or putative class members) based upon Fund purchases made before May 30, 2012.

*Third*, in the alternative, if the Court were to find that Plaintiffs' claims are not time-barred, Plaintiffs' fiduciary duty claim should be dismissed as duplicative of their contract claim.  Under New York law, which governs Plaintiffs' claims, where a breach of fiduciary

duty claim is premised on the same facts and theories as a breach of contract claim, it must be dismissed.

*Fourth*, Plaintiffs fail to state a claim for breach of fiduciary duty, breach of contract, and aiding and abetting a breach of fiduciary duty under New York law.  Indeed, Plaintiffs' Complaint is notable for what it does not plead.  The crux of the Complaint is that Plaintiffs were injured because Defendants pushed them to purchase the Funds, which were unsuitable investments.  Yet, remarkably, nowhere do Plaintiffs allege when they made any of their respective Fund purchases, what their investment objectives and investing profiles were at the time, what information they were provided by their respective financial advisors about the Funds and/or what information they relied upon in deciding to invest.  Even though Plaintiffs plead this case as a class action, and focus on the purported harm to all class members, they cannot evade their respective pleading burden: Under both Rule 9(b), which applies because Plaintiffs allege misrepresentations and omissions, and Rule 8, Plaintiffs must plead the elements of each of their causes of action, which they entirely fail to do.  An investor cannot sue his or her broker (in tort or in contract) for recommending an unsuitable investment without providing any details regarding the investor's investment profile and risk tolerance or the advice and information that the broker supposedly provided.  This is true regardless of whether a plaintiff brings her claims individually, in arbitration (as required for individual actions under the UBS client agreements), or, as here, dressed up as a putative class action.

## STATEMENT OF FACTS

This specific case was commenced on May 30, 2014, when Plaintiffs filed their complaint in the District of Puerto Rico.  Just three weeks earlier, the very same Plaintiffs represented by the very same lawyers filed a complaint in this Court that was assigned to

Judge Gardephe.  Plaintiffs dismissed that complaint, however, and, on the same day, filed the identical complaint, other than its venue allegations, in Puerto Rico.  Plaintiffs moved to consolidate this case with the Securities Action that had been pending in Puerto Rico for two years.  That motion was properly denied and Defendants' motion to transfer venue back to this Court (in accordance with the venue provision of the relevant UBS contracts) was granted.  *See* Order, Jan. 30, 2015, ECF No. 52; Op. and Transfer Order, Mar. 30, 2015, ECF No. 53.  Thereafter, Plaintiffs filed their third complaint, on May 8, 2015, which is the subject of this motion to dismiss.

Although similar to their earlier complaints, the Complaint includes numerous references and citations to the testimony by various witnesses in the thirteen-day administrative hearing that resulted from the SEC's investigation into the Funds.  The Complaint fails to mention, however, that in a thorough 94-page decision, the administrative law judge who adjudicated the SEC proceeding, found in no uncertain terms that neither UBS nor Miguel Ferrer made misrepresentations or omissions in connection with the sale of the Funds.  *See* Youngwood Decl. Ex. 4 (Ferrer, Release No. 513, 2013 WL 5800586 (ALJ Oct. 29, 2013) (initial decision)), at 88, 91.

### A.    Plaintiffs' Allegations

According to the Complaint, UBS breached or aided and abetted in the breach of its fiduciary and contractual duties by "steer[ing] Class members . . . to invest in the Funds, which were high-risk volatile investments," while at the same time "portray[ing] the Funds as safe, secure, 'fixed income'" securities.  Compl. ¶¶ 1–3.  In particular, Plaintiffs allege that UBS had "conflicted roles," which allowed it to earn significant fees, including for underwriting Puerto Rico municipal bonds, selling the bonds into the Funds, and managing the Funds.  *Id.* ¶¶ 73–81.  In addition, UBS purportedly adopted certain policies to incentivize

its employees to "push" clients to invest in the Funds; "pressed clients to receive" dividends in the form of additional Fund shares; and engaged in a "loan scheme" by which class members could use loan proceeds to purchase more shares of the Funds. *Id.* ¶¶ 29, 102–111.  Notably, Plaintiffs do not allege that any of these policies or programs had an impact on or, for that matter, any connection to their respective investments in the Funds.  For example, there are no allegations that any Plaintiff was "pushed" to reinvest dividends from the Funds in additional shares or received a loan from UBS Bank by which he purchased Fund shares.

Moreover, even though the Complaint alleges that, "[c]lass members were pushed into purchasing the Funds without any analysis of the suitability of such a high-risk investment," *id.* ¶ 94, it provides no information regarding when Plaintiffs invested in the Funds, what information was provided to Plaintiffs in connection with their investments, or the nature of Plaintiffs' risk profiles or investment objectives.  Instead, Plaintiffs make sweeping, conclusory statements about putative class members—for example, that many are retirees, *id.* ¶ 84—which do not suffice to state a claim under any of the causes of action alleged.

###### B.    Each UBS Plaintiff Entered Into a Brokerage Account Agreement

Five of the seven named Plaintiffs—Nora Fernandez, Augusto Schreiner, Georgina Velez Montes, Juan Viera, and Esther Santana—are alleged clients of UBS (the "UBS Plaintiffs" or "Plaintiffs").  The other two, Eddie Toro Velez and Victor R. Vela Diez De Andino, are alleged clients of Banco Popular (the "Popular Plaintiffs") and are not alleged to have any relationship with or connection to UBS.  Compl. ¶¶ 19–24.  Each of the five UBS Plaintiffs entered into a Client Relationship Agreement, or "master account agreement" ("CRA") with UBS.  *See id.* ¶¶ 19–20, 23–24, 51.  Each CRA incorporates by reference

6

additional agreements and disclosures, including an Agreements and Disclosures booklet or

Account Information booklet ("Disclosures").  *Id.* ¶ 185.[3]

Upon opening an account, each client was assigned a "Financial Advisor" employed

by UBS Financial, who, along with its subsidiary UBS PR, are registered broker-dealers.  *Id.*

¶¶ 26–27, 52.  As the CRAs make clear, a Financial Advisor is, by default, a broker-dealer,

not an investment advisor, whose services must be explicitly and separately contracted for.

*See, e.g.*, Millett Aff. Ex. A (Fernandez), at 50 ("[Y]our account will be designated a

'brokerage' account and our obligations to you . . . will be solely that of a broker dealer

. . . ."); *id.* at 21 ("Unless otherwise agreed to in writing . . . [UBS] ha[s] no authority or

responsibility to act as a 'fiduciary' . . . or to act as an 'investment advisor'.").  Under the

CRAs, UBS's responsibilities as broker-dealer include: "taking customer orders and executing

securities transactions . . . executing trades . . . [and] mak[ing] recommendations to our

brokerage clients about whether to buy, sell, or hold securities."  *See id.* at 49; Ex. D

(Schreiner), at II-2; Ex. G (Velez Montes), at 3.

Contrary to Plaintiffs' conclusory pleadings, neither UBS nor its Financial Advisors

acted in a fiduciary capacity with respect to Plaintiffs' respective brokerage accounts.  In

order for Plaintiffs to enter into an investment advisory account with UBS, by which UBS acts

in a fiduciary capacity, they were required to enter into an investment advisory agreement,

separate and apart from the CRA.  *See, e.g.*, *id.* Ex. A (Fernandez), at 49 ("When we act as

your investment adviser, we will enter into a written agreement with [client] expressly

acknowledging our investment advisory relationship with [client] and describing our

---

[3]    The Court may consider the CRAs and Disclosures on this motion.  *See Oppenheimer & Co. v. Trans Energy, Inc*., 946 F. Supp. 2d 343, 344 (S.D.N.Y. 2013) ("Where the claim is for breach of contract . . . the complaint is deemed to incorporate the alleged contract by reference because the alleged contract is integral to the claim.").

obligations to you.").  Plaintiffs do not plead that they entered into any investment advisory agreements with UBS or that UBS had discretion over their accounts or executed any unauthorized trade.

Each of the relevant CRAs has a New York choice-of-law provision.  The CRAs executed by Plaintiffs Fernandez, Schreiner, Viera and Santana broadly provide: "This Agreement . . . its enforcement ***and the relationship between [client] and [UBS]*** will be governed by the laws of the State of New York."  Millett Aff. Ex. A (Fernandez), at 12 (emphasis added); *see also* Ex. C (Schreiner), at 23; Ex. I (Viera & Santana), at 18.  Velez Montes' CRA states: "This Agreement . . . and its enforcement, are governed by the laws of the State of New York."  *Id.* Ex. F (Velez Montes), at 12.

### C.      The Twenty-Three Funds Provided Tax Advantages for Puerto Rico Residents

Of the twenty-three Funds, Plaintiffs allege that nine are co-managed by Banco Popular and a division of UBS Trust and fourteen are managed by the division of UBS Trust alone.  Compl. ¶¶ 28, 38, 42.  The Funds, which were organized under Puerto Rico law, were structured and are managed in a way to provide tax advantages for Puerto Rico residents.  *Id.* ¶¶ 28, 44–45.  Specifically, the Funds were structured so that two-thirds of their holdings were invested in Puerto Rico-issued securities, such as securities issued by the Puerto Rico government and preferred stock of Puerto Rico entities.  *Id.* ¶ 44.  Under the relevant tax laws, and in order to encourage investment in Puerto Rico, this structure allowed the Funds to provide income to Puerto Rico residents that was exempt from municipal, state and federal taxes.  *Id.*  This structure was particularly attractive because each Fund could hold up to one-third of its assets in non-Puerto Rico securities, which would otherwise have been taxable, but, through the Funds, were tax-exempt for Puerto Rico residents.  *Id.*  According to the

applicable prospectuses, these non-Puerto Rico securities could include any combination of U.S. Government or municipal securities, mortgage or asset-back securities or corporate debt or preferred stock.  *See, e.g.*, Youngwood Decl. Ex. 1 (Puerto Rico Fixed Income Fund II, Inc., Prospectus, Jan. 30, 2004), at 14.

### D.    The Risks Associated with the Funds Were Fully Disclosed

Based upon their structure, and the manner in which they traded, there were inherent risks associated with the Funds.  To obtain the attendant tax benefits, the Funds were required to be heavily concentrated in Puerto Rico securities and could be disproportionately and adversely affected by the performance of Puerto Rico's economy and securities markets. Compl. ¶¶ 60–66.  In addition, as allowed by Puerto Rico law, the Funds were leveraged (by up to 50 percent).  This leverage enabled the Funds to borrow money to buy additional assets, increasing the tax-exempt returns available to investors, but, at the same time, making the Funds more susceptible to risk.  *Id.* ¶¶ 67–69.  Finally, the Funds were subject to conflicts of interest, because they could engage in transactions with UBS entities.  *Id.* ¶¶ 76–77.  These risks were no secret to Plaintiffs or the public.  Rather, they were fully disclosed in prospectuses, offering circulars and annual reports, which UBS published before and throughout the Class Period.  *See id.* ¶¶ 125–26.  By way of example, the Fund Prospectuses disclosed that:

> The Fund's assets are invested primarily in securities of Puerto Rico issuers. Consequently, the Fund in general is more susceptible to economic, political, regulatory or other factors adversely affecting issuers in Puerto Rico . . . .

> Use of leverage through the issuance of preferred stock, debt securities, and other forms of leverage is a speculative investment technique and involves increased risk for Shareholders to a greater extent than in a non-leveraged fund . . . .

> For most securities purchased by the Fund, one of [UBS entities] may be the only dealer, or one of only a few dealers, in the securities being purchased or sold by

the Fund.  In that event, independent sources for valuation or liquidity of a
security may be limited or nonexistent.

*See, e.g.*, Youngwood Decl. Ex. 2 (Puerto Rico AAA Portfolio Bond Fund, Inc., Prospectus,

Jan. 30, 2003), at 6, 7, 17; Ex. 3 (Tax-Free Puerto Rico Target Maturity Fund, Inc.,

Prospectus, Aug. 29, 2001), at 1, 2, 12.

## LEGAL STANDARD

Dismissal of the Complaint is required under Federal Rule of Civil Procedure 12(b)(1)

for lack of subject matter jurisdiction because the Complaint is precluded by SLUSA.  *See In*

*re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 135 n.9 (2d Cir. 2015).[4]  Additionally, Rules 8

and 12(b)(6) require dismissal because the Complaint lacks "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Conclusory allegations and legal conclusions must be disregarded.  *Id.*  Where no class has

been certified, "the allegations of the named plaintiffs must state a claim for relief," and

allegations regarding "members of the putative class" are irrelevant.  *Turkmen v. Ashcroft*, No.

02 CV 2307 (JG), 2006 WL 1662663, at *45 n.42 (E.D.N.Y. June 14, 2006), *aff'd in part*,

*vacated in part on other grounds*, 589 F.3d 542 (2d Cir. 2009).  Here, because Plaintiffs

premise their claims on allegations of misrepresentations and omissions, they also must meet

the pleading standard of Rule 9(b) by stating with particularity the circumstances constituting

the alleged misrepresentations or omissions.  *See DeBlasio v. Merrill Lynch & Co.*, No. 07

CIV 318 (RJS), 2009 WL 2242605, at *12 (S.D.N.Y. July 27, 2009) (applying Rule 9(b) to

---

[4]   Plaintiffs' claims also should be dismissed under 12(b)(1) for lack of standing with respect
to the fourteen Funds that were not purchased by any of the five UBS Plaintiffs and with
respect to the two Popular Plaintiffs who have no accounts with UBS.

breach of fiduciary duty and breach of contract claims because they are "based on . . . allegations of intentional misrepresentations and omissions by Defendants").

## ARGUMENT

### I.  THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS' CLAIMS ARE PRECLUDED BY SLUSA

The purpose of SLUSA is to prevent plaintiffs from bringing class action lawsuits under state law in order to evade the federal securities laws.  *See In re Kingate,* 784 F.3d at 138 ("To prevent that evasion of the PSLRA's restrictions, Congress in 1998 enacted SLUSA . . . .").  To do so, it bars putative class actions, brought under state law, alleging misrepresentations or omissions in connection with the purchase or sale of covered securities. 15 U.S.C. § 78bb(f)(1).  Here the elements of SLUSA are satisfied: (i) Plaintiffs bring a covered class action alleging state law claims, and (ii) the Complaint plainly alleges misrepresentations and omissions in connection with the purchase of the Funds.  Compl. ¶¶ 88, 122, 146.  Although the Funds themselves are not "covered" securities, each of the twenty-three Funds was marketed to include investments in covered securities, which, under the case law of this Circuit, is sufficient to satisfy SLUSA.  *See* Popular Mem. at 14–15.  In fact, the applicable prospectuses for the nine Funds purchased by the UBS Plaintiffs, provide that, as a key component and advantage to Fund investors, as much as one-third of the Funds' holdings may be invested in non-Puerto Rican securities, including, *inter alia*, "preferred stock," (which are generally covered securities), and still provide tax exempt income.  *See, e.g.*, Youngwood Decl. Ex. 2 (Puerto Rico AAA Portfolio Bond Fund, Inc., Prospectus, Jan. 30, 2003), at 1.  The prospectuses also provide that the two-thirds of the Funds' holdings required to be invested in Puerto Rico issued securities may include covered securities in the form of preferred stock.  *See, e.g.*, *id.*; Compl. ¶ 44.  Separately, the purported

misrepresentations and omissions are in connection with covered securities because the
Complaint alleges that covered securities were sold by Plaintiffs (and class members) either to
purchase the Funds or in lieu of selling the Funds.  *See* Compl. ¶¶ 87, 134; Popular Mem. at
12–13.  As such, SLUSA is satisfied, and the Complaint should be dismissed.

## II.     PLAINTIFFS' FIDUCIARY DUTY AND AIDING AND ABETTING CLAIMS MUST BE DISMISSED AS TIME-BARRED (COUNTS I AND II)

New York law applies to each of the claims alleged in the Complaint because the
CRAs for Plaintiffs Fernandez, Schreiner, Viera and Santana provide both that their contract
and their "relationship" with UBS is governed by New York law.  *See Tucker v. Scott*, No. 96
Civ. 1923(LLS), 1997 WL 151509, at *4–5 (S.D.N.Y. Apr. 1, 1997) (finding choice-of-law
provision to encompass tort claims arising incident to the contractual relationship where the
provision "encompass[es] the entire relationship between the contracting parties").  New York
law also applies to the tort (as well as contract) claims alleged by Plaintiff Velez Montes
because Puerto Rico law is not in conflict with New York law on the issues applicable to her
fiduciary duty claims.  *See IBM. v. Liberty Mut. Ins. Co*., 363 F.3d 137, 143 (2d Cir. 2004)
(finding, "[i]n the absence of substantive difference," New York courts are free to apply New
York law).

Under New York law, the Court must "apply, whichever statute of limitations is
shorter—New York's or that of the state where the cause of action accrued," which is Puerto
Rico.  *See Chiste v. Hotels.com LP*, 756 F. Supp. 2d 382, 410 (S.D.N.Y. 2010); *see also id*.
("[A] cause of action accrues at the time and in the place of the injury . . . [which, for
economic injuries] usually is where the plaintiff resides and sustains the economic impact of
the loss.").  Under Puerto Rico law, a fiduciary duty claim such as Plaintiffs' is a tort and
subject to the one-year limitations period set forth in the Civil Code of Puerto Rico, 31

L.P.R.A. § 5298(2).  *See Santiago Nieves v. A.C.A.A.*, 19 P.R. Offic. Trans. 755, 760–61

(P.R. 1987).  Similarly, aiding and abetting a breach of fiduciary duty is also a tort subject to

the same limitations period.  *See Molina v. Union Independiente Autentica De La AAA,* 555 F.

Supp. 2d 284, 305 (D.P.R. 2008) ("Tort claims in Puerto Rico are subject to a one-year statute

of limitations period . . . .).

The statute of limitations begins to run when a plaintiff has "notice of the injury" and

"notice of the person who caused it."  *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13,

18 (1st Cir. 2000).  "[I]f a plaintiff brings an action more than a year after the injury took

place, she bears the burden of proving that she lacked the requisite 'knowledge' at the relevant

times."  *Id*. at 19.  Notice does not require "actual knowledge."  *Id.*  Instead, courts looks to

whether "by due diligence, such knowledge would likely have been acquired."  *Id.*  "[D]ue

diligence . . . requires reasonable, active efforts to seek answers and clarify doubts."

*Quintana Lopez v. Liggett Grp., Inc.*, 336 F. Supp. 2d 153, 157 (D.P.R. 2004) (dismissing

claim as untimely because a reasonably diligent plaintiff would have been on notice from

other lawsuits and press reports).

Plaintiffs were purportedly injured when they purchased shares of the Funds, which

they allege were too risky and thus unsuitable.  *See* Compl. ¶ 1.  Each of the UBS Plaintiffs

purchased their Fund shares prior to May 2013—more than one year prior to the filing of the

Complaint.  *See* Naughton Aff. Exs. A–D (UBS Plaintiffs' Account Statements).[5]

Accordingly, in order to avoid dismissal, Plaintiffs must sufficiently plead that they lacked

---

[5]   Plaintiffs' account statements, which are referenced in the Complaint, *see* Compl. ¶¶ 85, 127, may be considered on this motion to dismiss.  *See Rodriguez v. SLM Corp*., No. 07CV1866(WWE), 2009 WL 598252, at *4 (D. Conn. Mar. 6, 2009) (taking judicial notice of documents for the purpose of establishing the dates loans originated, and the statute of limitations commenced, because the complaint referenced the documents and the origination dates "are integral to the complaint").

knowledge of their claims, despite due diligence.  Plaintiffs plead no facts (nor could they plead facts) to meet this burden.

> **A.**      **The Risks Alleged in the Complaint Were Publicly Disclosed in the Funds' Prospectuses**

Each of the risks that allegedly made the Funds unsuitable—concentration in Puerto Rico-issued securities, UBS's conflicts of interest, and the Funds' use of leverage, *see* Compl. ¶¶ 63–83—were fully disclosed in prospectuses and offering circulars.  *See, e.g.*, Youngwood Decl. Ex. 2 (Puerto Rico AAA Portfolio Bond Fund, Inc., Prospectus, Jan. 30, 2003), at 6, 7, 17 (disclosing the Fund's use of leverage, which "is a speculative investment technique and involves increased risk for Shareholders"; the "Geographic Concentration Risk" which makes the Fund more "susceptible to economic, political, regulatory or other factors adversely affecting issuers in Puerto Rico"; and the "Conflicts of Interest Risk" including that UBS may be "the only dealer, or one of only a few dealers, in the securities being purchased or sold by the Fund.").  As such, Plaintiffs knew or should have known of these risks at the time they purchased the Funds.  *See Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993) (dismissing as time-barred claim by unsophisticated investor that defendants "induced her to invest" in "unsuitable"  investments because "the risk, and the illiquidity of investments . . . were clearly disclosed in the prospectuses").

> **B.**      **"Storm Warnings" Easily Put Plaintiffs on Notice of Their Claims**

The risks associated with the Funds, UBS's purported conflicts of interest, and its alleged programs and policies to "push" the Funds on clients were also widely known and publicized throughout the Class Period by the filing of multiple lawsuits, including other

putative class actions, SEC proceedings, and myriad press reports.[6]  These storm warnings

were more than sufficient to put Plaintiffs on notice of their claims prior to May 2013.  *See*

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*, No. 13-CV-6400 LAP, 2014 WL 7338718, at *3

(S.D.N.Y. Dec. 24, 2014) ("[A] reasonably diligent plaintiff would undertake an investigation

based on [t]he filing of related lawsuits, news articles and analyst's reports, and prospectuses,

quarterly reports, and other information related to their investments.").

### 1.      Regulatory Investigations and Proceedings Regarding the Same Alleged Misconduct

In 2011, the SEC commenced an investigation into the Funds, focusing on, *inter alia*,

UBS's marketing and brokerage practices.  *See* Youngwood Decl. Ex. 10 (Sree

Bhaktavatsalam, *UBS May Be Sued by SEC Over Puerto Rico Closed-End Bond Funds*,

Bloomberg, Feb. 4, 2011).  As a result of the investigation, on May 1, 2012, the SEC publicly

issued an order with respect to Defendant Ferrer and Carlos Leon-Ortiz (instituting the

proceeding referenced throughout the Complaint), which alleged that Messrs. Ferrer and

Ortiz, as senior officers for UBS PR:

> "misrepresented the nature and liquidity of the CEF market, both directly to investors and to UBS PR's financial advisors, who repeated those misstatements to customers"; "failed to disclose the conflict of interest created by recommending CEFs to investors while dumping the firm's own shares"; engaged in a "campaign to create CEF demand while also concealing the liquidity crisis and inventory dump"; and "[m]ade misrepresentations and omissions to thousands of customers . . . about the CEFs' superior returns and consistent liquidity levels."

*Id.* Ex. 5 (Ferrer, Exchange Act Release No. 66892, 2012 WL 1514677 (May 1, 2012)), ¶¶ 5,

66, 69, 73.  At the same time, the SEC also issued a cease and desist order against UBS PR,

---

[6]     *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[I]t is proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information . . . in deciding whether so-called 'storm warnings' were adequate to trigger inquiry notice . . . .").

containing similar findings, made pursuant to UBS's offer of settlement, without admission. *See id.* Ex. 6 (UBS Fin. Servs. Inc. of Puerto Rico, Exchange Act Release No. 66893, 2012 WL 1514678 (May 1, 2012)), ¶¶ 1, 21, 28, 45; *see also* Ferrer Mem., App.

These orders, and UBS PR's concurrent settlement, were widely publicized in the national and Puerto Rico press. *See, e.g.*, *id.* Ex. 11 (*Puerto Rico Unit of UBS Pays SEC Settlement*, Associated Press, May 1, 2012); Ex. 12 (Joshua Gallu, *UBS to Pay $27 Million Over SEC Mutual Fund Disclosure Claims*, Bloomberg, May 1, 2012); Ex. 13 (CB Online Staff, *Ferrer To Fight SEC Charges; UBS Settles for $26.6M*, Caribbean Bus., May 2, 2012); Ex. 14 (*Multa Federal Para UBS Puerto Rico*, El Nuevo Día, May 2, 2012); Ex. 15 (Daniel Solin, *Investor Confidence in UBS May Be Misplaced*, U.S. News & World Rep., May 10, 2012); Ferrer Mem. at 10 and Popular Mem., App. 1 (citing additional publicity and other "storm warnings")  Thus, as of May 2012, the UBS Plaintiffs (each of whom owned shares of the Funds at that time) should have known of the SEC proceedings and resultant publicity.

## 2. Lawsuits Containing the Same or Similar Allegations

There also have been multiple lawsuits filed making similar allegations and generating additional publicity.  In February 2010, investors brought a putative class action claim against UBS PR and UBS Trust and a derivative claim on behalf of four of the Funds alleging, *inter alia*, breach of fiduciary duty and fraud.  The plaintiffs in that action—represented by Grant & Eisenhofer, one of the very same firms representing Plaintiffs here—alleged, for example:

> Defendants used the Funds as a dumping ground for the toxic pension bonds underwritten by UBS Financial in order to maximize the . . . Bonds' offering price and the UBS Defendants' fees, thereby breaching their fiduciary and other duties . . . .

*Id.* Ex. 7 (*Union de Empleados v. UBS Financial Services Incorporated of Puerto Rico*, Shareholder Derivative Action and Class Action Complaint, 3:10-cv-01141-ADC) ¶ 76.  The

lawsuit was also the subject of press reports.  *See, e.g.*, *id.* Ex. 10 (Bloomberg, Feb. 4, 2011).

And notably, the Complaint here mimics allegations in that suit (brought over four years

earlier), sometimes word for word.  *See, e.g.*, Compl. ¶ 82 ("Defendants used the Funds as a

dumping ground for the high-risk Puerto Rico government bonds they underwrote.").

The Funds' risks were further publicized in August 2012, when investors brought the

complaint in the Securities Action, which alleged, *inter alia*, that:

> [D]uring the class period, Defendants knew, but did not disclose to Plaintiffs,
> material facts about the truth behind th[e] lucrative CEF business; [and
> Defendants] fail[ed] to timely disclose known defects of the Funds and
> misrepresent[ed] their products as liquid and safe, [and] actively concealed
> from Plaintiffs and the Class the true risks associated with the Funds.

Youngwood Decl. Ex. 8 (*Roman v. UBS Financial Services, Inc. of Puerto Rico*, 3:12-cv-

01663-CCC, Class Action Complaint), ¶¶ 4, 69; *see also, e.g.*, *id.* Ex. 16 (CB Online Staff,

*UBS PR Faces Class Action Lawsuit*, Caribbean Bus., Aug. 15, 2012).  Indeed, although

unsuccessful, Plaintiffs moved to consolidate this action with the Securities Action because,

they argued, there is "significant overlap in alleged misconduct, defendants, and relevant time

periods" of the two cases.  *See id.* Ex. 9 (*In re: UBS Financial Services, Inc. Of Puerto Rico*

*Securities Litigation*, 3:12-cv-01441-CCC, Pls.' Joint Memorandum), at 3.

Thus, given Plaintiffs' total failure to plead that they did not have notice of their

claims before May 30, 2013 (one year before this lawsuit was filed), as well as the widespread

"storm warnings," which undoubtedly would have caused a diligent plaintiff to be on notice of

her claims well before May 30, 2013, Plaintiffs' breach of fiduciary duty and aiding and

abetting claims are untimely and must be dismissed.  *See Quintana Lopez*, 336 F. Supp. 2d at

158–59 (dismissing complaint where "Plaintiffs have failed to meet their pleading burden of

proving their timeliness to file the suit and/or their 'lack of knowledge' to toll the statute of

limitations."); *Doe 171 v. Order of Saint Benedict*, No. CIV. 11-1406 JAF, 2012 WL

1410320, at *3 (D.P.R. Apr. 20, 2012) (dismissing complaint as time-barred where "Plaintiff

has not alleged any specific facts . . . that may show that 'diligent efforts' were conducted

before the statute of limitations elapsed").

## III.   PLAINTIFF VELEZ MONTES' CLAIMS ARE ALSO EXTINGUISHED BY PRUSA'S STATUTE OF REPOSE

One of the five UBS Plaintiffs, Ms. Velez Montes, bought her only shares of the Funds

in February 2012, more than two years before filing this lawsuit.  *See* Naughton Aff. Ex. C

(Velez Montes Account Statement).  As such, all of her claims against the UBS Defendants

also have been extinguished under PRUSA's statute of repose and must be dismissed.

PRUSA Section 890 prohibits a plaintiff from bringing any claim sounding in securities fraud

"more than two (2) years after the sale contract has been executed."  10 L.P.R.A. § 890(e).

Section 890 is absolute and applies even if a plaintiff is ***not*** on notice of the claim.  *See*

*Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 799 F. Supp. 261, 263

(D.P.R. 1992), *rev'd on other grounds*, 993 F.2d 269 (1st Cir. 1993) (Section 890 is a "*plazo*

*de caducidad* " and "[t]he lapse of time extinguishes the cause of action").

Section 890 applies to state law claims where the underlying conduct alleged in the

case was the equivalent of securities fraud.  *See Ambert v. Caribe Equity Grp., Inc.*, No. CIV.

11-1254 JAF, 2011 WL 4626012, at *7 (D.P.R. Sept. 30, 2011) (finding Section 890 to apply

to state law fraud claim where the "very conduct alleged in this case" was that of securities

fraud); *see also PaineWebber, Inc.* v. *First Boston Inc.*, 136 D.P.R. 541, 548 (P.R. 1994)

(applying Section 890 to a breach of contract action) (certified translation attached as Ex. 17

to the Youngwood Decl.).  Here, even though Plaintiffs do not expressly bring claims for

securities fraud, "the very conduct alleged"—*i.e.,* that Defendants purportedly engaged in a

18

fraudulent scheme to mislead Plaintiffs regarding securities (the Funds) in order to reap the

benefits from their conflicted roles—is that of securities fraud and Section 890 applies. [7]

## IV.  PLAINTIFFS' FIDUCIARY DUTY CLAIM MUST BE DISMISSED BECAUSE IT IS DUPLICATIVE OF THEIR CONTRACT CLAIM (COUNT I)

If Plaintiffs' breach of fiduciary duty claim is not dismissed as time-barred, it is then,

in the alternative, subject to dismissal as duplicative of their breach of contract claim.  Under

New York law, a breach of fiduciary duty claim that is not "based on a duty independent of

the contract" cannot stand, even if, like here, the breach of contract claim also fails as a matter

of law. *MashreqBank, psc v. ING Grp. N.V.*, No. 13 Civ. 2318, 2013 WL 5780824, at *4–5

(S.D.N.Y. Oct. 25, 2013) (dismissing breach of fiduciary duty claim against financial advisor

because "Complaint does not allege a fiduciary duty apart from" the contract between the

parties); *Fesseha v. TD Waterhouse Inv'r Servs., Inc.*, 305 A.D.2d 268, 268–69 (1st Dep't

2003) (fiduciary duty claim dismissed as "duplicative of the breach of contract claim" where

court also affirmed dismissal of the contract claim).  Here, Plaintiffs' fiduciary duty claim is

premised on the same underlying allegations as their contract claim and must be dismissed as

duplicative. *See, e.g.,* Compl. ¶¶ 8, 10, 59, 97; *MashreqBank,*  2013 WL 5780824, at *4–5

(dismissing fiduciary duty claim "based upon the same facts and theories" as contract claim).

## V.  THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF THEIR CLAIMS

### A.  Plaintiffs Fail To State a Claim for Breach of Fiduciary Duty (Count I)

Plaintiffs' breach of fiduciary duty claim must be dismissed for the independent reason

that Plaintiffs have failed to plead: (1) the existence of a fiduciary relationship between the

---

[7]   For the same reasons, the claims brought by the other UBS Plaintiffs in connection with Fund purchases made before May 30, 2012, also must be dismissed pursuant to PRUSA Section 890.  *See* Naughton Aff. Exs. A-D.

parties; (2) a breach of the duty flowing from that relationship; (3) defendant's knowing participation in the breach; and (4) damages. *See BNP Paribas Mortg. Corp. v. Bank of Am. N.A.*, 866 F. Supp. 2d 257, 269 (S.D.N.Y. 2012). Moreover, Plaintiffs fail to plead reasonable reliance, which is necessary for a fiduciary relationship to exist. *See id.*; *Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 339 (2d Cir. 2011) ("Reasonable reliance is a required element of . . . breach of fiduciary duty . . . under New York law.").

### 1.    UBS Has No General Fiduciary Duties in Connection with Plaintiffs' Non-Discretionary Accounts

Under New York law, "brokers for non-discretionary accounts do not owe clients a fiduciary duty," *Celle v. Barclays Bank P.L.C.*, 48 A.D.3d 301, 302 (1st Dep't 2008), and New York courts consistently dismiss complaints brought by holders of non-discretionary accounts against their brokers. *See, e.g.*, *id.*; *Fesseha*, 305 A.D.2d at 268; *see also Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998) ("Under New York law, as generally, there is no general fiduciary duty inherent in an ordinary broker/customer relationship.").

Here, Plaintiffs' conclusory allegation—that UBS owed them fiduciary duties—is unsupported by both factual allegations and the contracts at issue, and does not suffice to state a claim. Significantly, Plaintiffs do not plead that their accounts were discretionary, that their brokers were authorized to independently execute trades or that they entered into written investment advisory agreements with UBS. Plaintiffs' contracts with UBS make clear that for UBS to act in a fiduciary capacity, as an investment advisor, Plaintiffs were required to enter into a separate written investment advisory agreement: "When we act as your investment adviser, we will enter into a written agreement with [client] expressly acknowledging our investment advisory relationship with [client] and describing our obligations to you." *See,*

*e.g.*, Millett Aff. Ex. A (Fernandez), at 49.  Plaintiffs did not do so and UBS did not act as a fiduciary with respect to their accounts.

Moreover, the CRAs entered into by Plaintiffs Fernandez, Schreiner, and Velez Montes expressly disclaim any fiduciary duties:

> It is important to note that when we act as your broker-dealer, we do not enter into a fiduciary relationship with you, regardless of the fee structure you select. Absent special circumstances, we are not held to the same legal standards that apply when we have a fiduciary relationship with you, as we do when providing investment advisory services.

*Id.* Ex. A (Fernandez), at 50; *see also* Ex. D (Schreiner), at II-2; Ex. F (Velez Montes), at 3. In light of these disclaimers, no fiduciary relationship could arise.  "Courts have repeatedly found no fiduciary duty between the parties where the Agreement [between them] contains a clear and unambiguous disclaimer of a fiduciary relationship." *BNP Paribas*, 866 F. Supp. 2d at 269 (finding no fiduciary duty owed by broker to investor); *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 523 (S.D.N.Y. 2014) ("[N]o fiduciary duty is owed where explicit contractual disclaimers of fiduciary duty apply.").

> **2.  Plaintiffs Do Not Plead A Breach of the Limited and Transaction Specific Duties A Broker Owes Its Clients Under New York Law**

To the extent brokers owe non-discretionary clients any duties, they are "quite limited." *Foresters*, 157 F.3d at 940.  "On a transaction-by-transaction basis, the broker owes duties of diligence and competence in executing the client's trade orders, and is obliged to give honest and complete information when recommending a purchase or sale.  The client may enjoy the broker's advice and recommendations with respect to a given trade, but has no legal claim on the broker's ongoing attention . . . . The giving of advice triggers no ongoing duty to do so." *De Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293, 1302 (2d Cir. 2002). To state a claim that a broker breached these limited duties, a plaintiff must allege that, for a

given transaction, the broker gave "incomplete or misleading advice" and the customer "reasonably relied on this advice." *BNP Paribas*, 866 F. Supp. 2d at 271.

Plaintiffs have not alleged such a breach. Plaintiffs do not allege any transaction which UBS did not execute with "diligence and competence" or for which UBS did not give "honest and complete information when recommending a purchase or sale." The Complaint does not describe a single transaction in which a Plaintiff purchased shares in a Fund or for which UBS recommended a Plaintiff purchase shares in a Fund. Moreover, UBS provided complete and accurate information in the Fund prospectuses and other disclosures, and Plaintiffs do not plead otherwise. Instead, Plaintiffs devote significant portions of their Complaint to UBS's incentive structures, *see* Compl. ¶¶ 77–121, but "[t]here is no duty to disclose the incentives that a company provides its own employees to encourage those employees to sell specific products," *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 533 (S.D.N.Y. 2008). Moreover, allegations about incentives do not state a claim for breach of UBS's limited duties.

Plaintiffs also repeat the same conclusory allegation (in various forms) that Defendants "exhort[ed] clients to invest in the risky Funds without regard for the clients' circumstances or risk appetites." Compl. ¶ 84; *see also id.* ¶¶ 70, 83, 105. Such allegations—which are not specific to any Plaintiff or transaction and do not allege any instance of incomplete or misleading advice—do not suffice to plead a breach of UBS's limited "transaction-by-transaction" duties. *De Kwiatkowski*, 306 F.3d at 1302. This is especially true as Plaintiffs are required to plead omissions or misrepresentations with particularity. *See In re UBS Auction Rate Sec. Litig.*, No. 08 CIV. 2967 (LMM), 2010 WL 2541166, at *20 (S.D.N.Y. June 10, 2010) (finding allegations insufficient because "Plaintiffs fail to connect the exertion of

22

pressure or provision of financial incentives with the sale of any of the specific [securities] allegedly purchased by Plaintiffs"); *Frota v. Prudential-Bache Sec., Inc.*, 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986) (applying Rule 9 to a breach of fiduciary duty claim based on alleged unsuitable trading).

### 3.      Plaintiffs Fail To Plead Reliance

The Complaint does not allege that any of the named Plaintiffs relied on advice given by UBS, and, even if Plaintiffs had pled reliance, such reliance would be unreasonable as a matter of law because full and complete information in Fund prospectuses and other disclosures was readily available to Plaintiffs at the time they made their investments.  *See Brown v. E.F. Hutton Grp.*, 991 F.2d 1020, 1031–32 (2d Cir. 1993) ("We find that the . . . reliance on the oral statements presumptively made by [the broker] as to the low risk, conservative character of the investment is not justified as a matter of law . . . [when] the information available to the [investors] about the suitability of their investments was materially complete and not misleading.  An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth."); *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 235 (2d Cir. 2006) ("[I]f the plaintiff has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction . . . .").

### 4.      Plaintiffs Fail To Plead Damages

Plaintiffs also fail to plead "damages resulting from [the] breach," a required element of their claim.  *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 454 (S.D.N.Y. 2012).  Plaintiffs do not allege, as they must, when they purchased the Fund shares, at what price, or how the value of any particular Plaintiff's investment was affected by the decline in the prices of

Puerto Rico bonds (which only constituted a portion of the Funds' holdings). *See IBM v. Dale*, No. 7:11-CV-951 VB, 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011) ("An allegation that defendant 'suffered damages' without particular facts as to how she was damaged does not satisfy *Twombly* and *Iqbal*.").

### B.     Plaintiffs Fail To State a Claim for Breach of Contract (Count V)

To state a claim for breach of contract, Plaintiffs must plead: (1) the existence of a contract between the plaintiff and defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by the defendant; and (4) damages resulting from the breach. *See VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 379 (S.D.N.Y. 2014). Plaintiffs must allege the "specific provisions" of the contract upon which the breach of contract claim is based. *See Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412, 416 (S.D.N.Y. 2009) (holding that defendants failed to state a claim because they "fail[ed] to point to the specific terms of the contract that [plaintiff] breached"); *see also Martinez v. Vakko Holding A.S.*, No. 07 Civ. 3413 (LAP), 2008 WL 2876529, at *2 (S.D.N.Y. July 23, 2008). Here, Plaintiffs do not sufficiently plead breach of contract because (1) certain alleged obligations either do not appear in Plaintiffs' contracts with UBS, or do not apply to Plaintiffs, who held non-discretionary brokerage accounts; or (2) to the extent Plaintiffs plead the existence of applicable contractual provisions, they have not alleged breach of such provisions. Finally, Plaintiffs fail to sufficiently plead that they were damaged as a result of any breach.

### 1.     Plaintiffs Allege Purported Breaches of Provisions that Either Do Not Appear in the Contracts at Issue or Are Inapplicable to Plaintiffs' Accounts

Many of the alleged contractual obligations that Plaintiffs claim were breached do not appear in their contracts with UBS. Plaintiffs, for example, assert that UBS contracted to:

24

"meet [class members] unique needs"; use a "holistic wealth management approach to carefully understanding [their] unique needs and goals"; "deliver an optimal investment solution to meet" those needs; and "look outside the firm to [find] the appropriate solutions to address [investors'] needs." Compl. ¶¶ 8, 55. Plaintiffs do not plead which documents these purported terms arise from and, in fact, a review of the relevant contracts does not reveal such language. Accordingly, these allegations cannot form the basis of Plaintiffs' breach of contract claim. *See, e.g.*, *Phillips v. Am. Int'l Grp., Inc.*, 498 F. Supp. 2d 690, 695 (S.D.N.Y. 2007) (holding that plaintiff's allegation that defendants breached their promise to provide a "permanent" bonus failed to state a viable claim for breach where the contract did not include this term).

Although other provisions that Plaintiffs claim were breached do appear in the CRAs or Disclosures for certain of the Plaintiffs (Fernandez, Velez Montes and Schreiner), they only pertain to investment advisory relationships, which require execution of separate investment advisory agreements. Plaintiffs do not allege that they entered into such investment advisory agreements with UBS and, accordingly, the provisions cited do not pertain to Plaintiffs and cannot have been breached.[8] For example, Plaintiffs allege that UBS breached contractual provisions requiring that it "[a]ct in what [UBS] reasonably believe[s] to be [class members'] best interests, and in the event of a conflict of interest, place [class members'] interests before [its] own"; and make "investment decisions or recommendations" that are "suitable and appropriate for [class members] and consistent with [class members'] investment objectives

---

[8] Plaintiffs' allegation that UBS gave advice to class members, Compl. ¶ 53, is insufficient as a matter of law to convert the broker-dealer relationship into that of an investment advisor. *See De Kwiatkowski*, 306 F.3d at 1307 ("[T]he giving of advice is an unexceptional feature of the broker-client relationship. . . . [it] does not alter the character of the relationship . . . .").

and reflect goals and any restrictions [class members] have placed on [UBS]."  Compl. ¶¶ 54, 72, 185.  These terms, however, pertain solely to UBS's fiduciary responsibilities when acting as an investment advisor and are preceded by express language which states that UBS's investment advisory services are "separate and distinct" from its brokerage services and governed by a separate contract:

> "**It is important to understand that investment advisory and brokerage services are separate and distinct and each is governed by different laws and separate contracts with you.**"
>
> . . .
>
> **Our Fiduciary Responsibilities as an Investment Adviser**
>
> . . .
>
> The investment decisions or recommendations we make for you must be suitable and appropriate for you and consistent with your investment objectives and goals and any restrictions you have placed on us.  We must act in what we reasonably believe to be your best interests and in the event of a conflict of interest, we must place your interests before our own.

Millett Aff. Ex. A (Fernandez), at 49 (emphasis in original).  Simply put, Plaintiffs allege breaches of contractual provisions that do not apply to their non-discretionary, brokerage accounts and cannot form the basis of liability.  *See Phillips*, 498 F. Supp. 2d at 693 ("Where a plaintiff selectively quotes language from a document that is integral to a complaint . . . the Court may appropriately consider the full text of that document.").

> **2.**   **Plaintiffs Do Not Adequately Plead Any Breach of the Relevant Contractual Provisions**

Although the Complaint does plead certain contractual provisions that appear in the CRAs or Disclosures of Plaintiffs Fernandez, Schreiner and Velez Montes, Plaintiffs fail to plead a breach of these provisions.[9]  The applicable provisions that are pled require UBS to have a reasonable basis for believing that an investment recommendation it makes is suitable

---

[9]   None of the contract provisions that Plaintiffs allege were breached appear in the CRA or Disclosures for Plaintiffs Santana and Viera.  As such, their contract claims must fail.

to the customer to whom it makes it, given that customer's individual financial circumstances and goals. *See, e.g.*, Compl. ¶ 54 ("We must have a reasonable basis for believing that any securities recommendations we make to you are suitable and appropriate for you, given your individual financial circumstances, needs and goals."); *id.* ¶¶ 56, 185 (UBS is responsible for "Providing you investment advice . . . and having reasonable grounds for believing that any recommended transaction relating to your brokerage account is suitable for you based on the facts you disclosed, including your other security holdings and financial situation and needs."). *See* Millett Aff. Ex. A (Fernandez), at 21, 50; Ex. D (Schreiner), at I-3, II-2; Ex. G (Velez Montes), at 3, 12.

An allegation that any of these provisions were breached requires factual pleadings regarding whether a particular investment is suitable for a given Plaintiff in light of the information provided by that Plaintiff to his broker.  In other words, a Plaintiff cannot state a claim that UBS breached an obligation to have "a reasonable basis for believing that any securities recommendations [made to that Plaintiff] are suitable and appropriate for [Plaintiff], given [Plaintiff's] individual financial circumstances, needs and goals," Compl. ¶ 54, without alleging Plaintiff's "financial circumstances, needs and goals" that were disclosed to UBS. *See Frota*, 639 F. Supp. at 1191 (dismissing claim that broker engaged in trading contrary to plaintiffs' objectives because plaintiffs did not allege "what their investment objectives were, or that those objectives were made known to [their broker]"); *Bischoff v. G.K. Scott & Co.*, 687 F. Supp. 746, 753 (E.D.N.Y. 1986) ("Because the complaint fails to adequately detail plaintiff's investment objectives and the manner in which the selected securities were inappropriate, the unsuitability claim . . . must fail.").

Plaintiffs, however, plead no facts about their specific financial characteristics, investment objectives, or the information, if any, they communicated to UBS.  Plaintiffs make general and conclusory allegations that *some* or *many* of the putative class members have "conservative" risk profiles, are retired, "need[] money in the short term," "express[ed] concern about incurring losses," or informed UBS that they wanted their "money to be safe." *See* Compl. ¶¶ 86, 94, 107.  These vague allegations are irrelevant and do not plead any investment was unsuitable with regard to the named Plaintiffs, which is required to state a claim.  *Turkmen*, 2006 WL 1662663, at *45 (finding allegations regarding "members of the putative class" to be irrelevant); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) ("Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract.").[10]

### 3.     Plaintiffs Fail To Plead Damages

Plaintiffs' breach of contract claim also fails because they fail to plead how they were damaged as a result of the alleged breach.  *See supra*, Section V.A.4; *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004) ("Causation is an essential element of damages in a breach of contract action . . . a plaintiff must prove that a defendant's breach *directly and proximately caused* his or her damages.") (emphasis in original).

---

[10]   Plaintiffs also allege that the Funds were risky and that they declined in value in 2013. Compl. ¶¶ 60–69, 131–136.  As matter of law, and common sense, the fact that the Funds had risks or lost value does not show that UBS lacked a reasonable basis for believing them to be suitable when recommended.  *See Dodds*, 12 F.3d at 351 ("The riskiest and most illiquid investment may perform well or may perform poorly.  Actual performance will shed little light on its ex ante suitability for a given investor.").

### C.       Plaintiffs Fail To State a Claim for Aiding and Abetting Breach of Fiduciary Duty (Count II)

Plaintiffs fail to plead any of the required elements for aiding and abetting breach of fiduciary duty.  To state a claim, Plaintiffs must plead: "(1) the existence of a . . . violation by the primary (as opposed to the aiding and abetting) party; (2) 'knowledge' of this violation on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation."  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 303 (2d Cir. 2006); *see also Zaccaro v. Shah*, 746 F. Supp. 2d 508, 525 (S.D.N.Y. 2010) ("Actual knowledge of the breach of fiduciary duty is required, constructive knowledge will not suffice.").  Plaintiffs fail to plead a primary breach of fiduciary duty, and moreover, plead no facts to suggest actual knowledge or substantial assistance.  That there is "overlap in directorships and upper management" among various UBS entities, Compl. ¶ 35, "is not uncommon or impermissible," *In re Ticketplanet.com*, 313 B.R. 46, 71 (Bankr. S.D.N.Y. 2004), and does not suggest that UBS AG, UBS Trust, or Carlos Ubiñas had "actual knowledge" of the alleged breach or in any way provided "substantial assistance" such that they can be liable for aiding and abetting.  Plaintiffs' aiding and abetting claims against UBS PR and UBS Financial also necessarily fail because one cannot both be liable for a primary violation and aiding and abetting that same primary violation.  *See Design Strategy*, 469 F.3d at 303 (A plaintiff must show "the existence of a . . . violation by the primary (as opposed to the aiding and abetting) party . . . .").

## VI.       PLAINTIFFS LACK STANDING TO BRING CLAIMS WITH RESPECT TO FUNDS IN WHICH THEY DID NOT INVEST

Article III of the Constitution requires that before a plaintiff may maintain a lawsuit, the "plaintiff must allege [1] personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief."  *In re Lehman Bros.*

*Sec. & ERISA Litig.*, 684 F. Supp. 2d 485, 490 (S.D.N.Y. 2010), *aff'd sub nom. In re Lehman Bros. Mortgage-Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011).  To satisfy the first element, "the named plaintiffs must show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class . . . they purport to represent."  *Id.* at 491.  Plaintiffs plead that they only purchased nine of the Funds, *see* Compl. ¶¶ 19–20, 23–24, and therefore lack standing to bring claims with respect to the other fourteen Funds.  *Lehman Bros.*, 684 F. Supp. 2d at 491(finding that named plaintiffs have no standing to assert claims relating to offerings in which they did not purchase).  In addition, to the extent the Popular Plaintiffs assert claims against the UBS Defendants, these claims must be dismissed for lack of standing.  They were not clients of UBS and make no allegations that their alleged injuries were "fairly traceable" to UBS's conduct.

## CONCLUSION

For the foregoing reasons, the UBS Defendants respectfully submit that Plaintiffs' Amended Class Action Complaint should be dismissed with prejudice in its entirety.

Dated: June 18, 2015

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By: /s/ Jonathan K. Youngwood

Jonathan K. Youngwood
Janet A. Gochman

425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for the UBS Defendants*
