UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORA FERNÁNDEZ; AUGUSTO SCHREINER; EDDIE TORO VÉLEZ; VÍCTOR R. VELA DÍEZ DE ANDINO; GEORGINA VÉLEZ MONTES; and JUAN VIERA and ESTHER SANTANA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBS AG; UBS FINANCIAL SERVICES, INC.; UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO; UBS TRUST COMPANY OF PUERTO RICO; UBS BANK USA; CARLOS V. UBIÑAS; MIGUEL A. FERRER; BANCO POPULAR de PUERTO RICO; and POPULAR SECURITIES, LLC,<br><br>Defendants. | No. 1:15-cv-02859-SHS<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW OF THE UBS DEFENDANTS IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS'
AMENDED CLASS ACTION COMPLAINT**

Jonathan K. Youngwood
Janet A. Gochman
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for the UBS Defendants*

## TABLE OF CONTENTS

                                                                      **Page**

ARGUMENT ........................................................................................................................ 1

I. PLAINTIFFS' BREACH OF FIDUCIARY DUTY AND AIDING AND ABETTING CLAIMS ARE TIME-BARRED ....................................................... 1

    A. Plaintiffs' Alleged Injuries Occurred at the Time of Purchase ........................... 2

    B. Plaintiffs Were on Notice of Their Injuries Before May 2013 ............................ 3

II. PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM FAILS ............................ 7

    A. No Fiduciary Duty Attached to Plaintiffs' Accounts .......................................... 7

    B. Plaintiffs Fail to Allege a Breach, Reliance or Damages ................................... 9

III. PLAINTIFFS' AIDING AND ABETTING CLAIM FAILS ....................................... 10

IV. PLAINTIFFS' CONTRACT CLAIM FAILS .............................................................. 11

V. PLAINTIFFS LACK STANDING TO BRING CLAIMS WITH RESPECT TO FUNDS IN WHICH THEY DID NOT INVEST ................................. 12

CONCLUSION ................................................................................................................. 12

# TABLE OF AUTHORITIES

## Cases

*Abbas v. Dixon*,
    480 F.3d 636 (2d Cir. 2007) ................................................................................................ 2

*BAII Banking Corp. v. UPG, Inc.*,
    985 F.2d 685 (2d Cir. 1993) ................................................................................................ 9

*Blum v. Spaha Capital Mgmt., LLC*,
    44 F. Supp. 3d 482 (S.D.N.Y. 2014) ................................................................................... 9

*Brooks v. Key Trust Co. Nat'l Ass'n*,
    26 A.D.3d 628 (3d Dep't 2006) ........................................................................................ 10

*Chiste v. Hotels.com L.P.*,
    756 F. Supp. 2d 382 (S.D.N.Y. 2010) ............................................................................. 4, 8

*Cooperativa Ahorro y Credito Aguada v. Kidder, Peabody & Co.*,
    942 F. Supp. 735 (D.P.R. 1996) .......................................................................................... 6

*Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*,
    129 F.3d 222 (1st Cir. 1997) ............................................................................................ 3, 4

*Cromer Fin. Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001) .............................................................................. 11

*Delgado Rodriguez v. Nazario de Ferrer*,
    21 P.R. Offic. Trans. 342 (P.R. 1988) ................................................................................ 3

*DeRosa v. Nat'l Envelope Corp.*,
    595 F.3d 99 (2d Cir. 2010) .................................................................................................. 6

*Dodds v. Cigna Sec., Inc.*,
    12 F.3d 346 (2d Cir. 1993) ............................................................................................. 4, 6

*Elkind v. Revlon Consumer Prods. Corp.*,
    No. 14-CV-2484 (JS) (AKT), 2015 WL 2344134 (E.D.N.Y. May 14,
    2015) .................................................................................................................................. 12

*Espada v. Lugo*,
    312 F.3d 1 (1st Cir. 2002) ................................................................................................... 5

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325 (2d Cir. 2005) ......................... 8

*Flickinger v. Harold C. Brown & Co.*,
    947 F.2d 595 (2d Cir. 1991) ................................................................................................ 9

*Frota v. Prudential-Bache Sec., Inc.*,
    639 F. Supp. 1186 (S.D.N.Y. 1986) .................................................................................. 11

*G-I Holdings, Inc. v. Baron & Budd*,
    179 F. Supp. 2d 233 (S.D.N.Y. 2001) .............................................................................. 10

*Gould v. Berk & Michaels, P.C.*,
    No. 89 CIV. 5036 (SWK), 1991 WL 152613 (S.D.N.Y. July 29, 1991) ........................ 2

*In re AMR Corp.*,
    485 B.R. 279 (Bankr. S.D.N.Y. 2013) ............................................................................. 8

*In re Apple REITS Litig.*,
    No. 11-CV-2919 (KAM), 2015 WL 1345328 (E.D.N.Y. Mar. 25, 2015) .................... 10

*In re Estate of Molina-Velez v. R.J. Reynolds Tobacco Co.*,
    286 F. Supp. 2d 185 (D.P.R. 2003) .................................................................................. 1

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    289 F. Supp. 2d 429 (S.D.N.Y. 2003) .............................................................................. 7

*In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56 (2d Cir. 1998) ........................................... 2

*In re Refco Inc. Sec. Litig.*,
    826 F. Supp. 2d 478 (S.D.N.Y. 2011) ............................................................................ 11

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
    157 F.3d 933 (2d Cir. 1998) ............................................................................................. 9

*Lumbermens Mut. Cas. Co. v. Dillon Co.*,
    9 F. App'x 81 (2d Cir. 2001) ............................................................................................ 9

*MashreqBank, psc v. ING Grp. N.V.*,
    No. 13 CIV. 2318 (LGS), 2013 WL 5780824 (S.D.N.Y. Oct. 25, 2013) ..................... 10

*McPhee v. Gen. Elec. Int'l, Inc.*,
    736 F. Supp. 2d 676 (S.D.N.Y. 2010) .............................................................................. 8

*MLSMK Invs. Co. v. JP Morgan Chase & Co.*,
    737 F. Supp. 2d 137 (S.D.N.Y. 2010) ............................................................................ 11

*Ortega v. Pou*,
    No. CE-93-318, 1994 WL 909288 (P.R. Apr. 7, 1994) ................................................... 3

*Ortiz v. Municipio De Orocovis*,
    13 P.R. Offic. Trans. 619 (P.R. 1982) ............................................................................. 3

*Quintana Lopez v. Liggett Grp., Inc.*,
    336 F. Supp. 2d 153 (D.P.R. 2004) .................................................................................. 1

*Ret. Bd. of the Policemen's Annuity & Ben. Fund v. Bank of N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014) ....................................................................................... 12

*Rodriguez v. Banco Cent.*, 727 F. Supp. 759 (D.P.R. 1989) ....................................................... 2

*Rodriguez-Suris v. Montesinos*,
    123 F.3d 10 (1st Cir. 1997) ......................................................................................... 5

*Ruggiero v. Warner-Lambert Co.*,
    424 F.3d 249 (2d Cir. 2005) ....................................................................................... 9

*Salgado v. Piedmont Capital Corp.*, 534 F. Supp. 938 (D.P.R. 1981) ....................................... 6

*Sergeants Benev. Ass'n Annuity Fund v. Renck*,
    19 A.D.3d 107 (1st Dep't 2005) .................................................................................. 9

*Staehr v. Hartford Fin. Servs. Grp.*,
    547 F.3d 406 (2d Cir. 2008) .................................................................................... 5, 6

*Torres v. E.I. Dupont De Nemours & Co.*,
    219 F.3d 13 (1st Cir. 2000) ..................................................................................... 1, 5

*Transcience Corp. v. Big Time Toys, LLC*,
    50 F. Supp. 3d 441 (S.D.N.Y. 2014) ......................................................................... 12

*Villarini-Garcia v. Hosp. Del Maestro, Inc.*,
    8 F.3d 81 (1st Cir. 1993) ............................................................................................. 2

**Regulations**

*Uniform Securities Act of Puerto Rico*, Regulation 6078, Section 25.1 ............................ 7, 8, 9

As set forth in the UBS Defendants' Memorandum of Law (UBS Br.) and below, this Court should dismiss Plaintiffs' claims against the UBS Defendants with prejudice.[1]

## ARGUMENT

### I. PLAINTIFFS' BREACH OF FIDUCIARY DUTY AND AIDING AND ABETTING CLAIMS ARE TIME-BARRED

Plaintiffs do not dispute that, pursuant to New York's borrowing statute, Puerto Rico's one-year statute of limitations for torts applies to their fiduciary duty and aiding and abetting claims. Nor do they dispute that the statute begins to run when a plaintiff has "notice of the injury" and "notice of the person who caused it," neither of which require actual knowledge. Plaintiffs' Omnibus Memorandum ("Opp.") at 45; UBS Br. at 13. Where, as here, the injury occurred more than a year before the commencement of the lawsuit, it is the plaintiff's burden to "prov[e] that she lacked the requisite 'knowledge' at the relevant times." *See Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 19 (1st Cir. 2000). The Complaint, however, contains no allegations that Plaintiffs lacked notice of their claims prior to May 2013—one year before the Complaint was filed—and for this reason alone dismissal of Plaintiffs' tort claims is required. *See In re Estate of Molina-Velez v. R.J. Reynolds Tobacco Co.*, 286 F. Supp. 2d 185,189–90 (D.P.R. 2003) ("[W]here a tort claim is filed beyond the one-year statutory term . . . [d]ismissal under Rule 12(b)(6) is appropriate if [ ] plaintiffs' pleadings do not lend any support to a finding of due diligence [in pursuing their claims]."); *Quintana Lopez v. Liggett Grp., Inc.*, 336 F. Supp. 2d 153, 158–59 (D.P.R. 2004) ("Plaintiffs have

---

[1] The UBS Defendants incorporate by reference the Reply Briefs of Miguel Ferrer and Banco Popular de Puerto Rico and Popular Securities ("Popular"). Accordingly, the Complaint should be dismissed in its entirety because Plaintiffs' claims are precluded by SLUSA. Popular Reply at 9–11; UBS Br. at 11–12. Furthermore, Plaintiff Velez Montes' claims should be dismissed because they are subject to PRUSA's two-year statute of repose. Popular Reply at 8–9; UBS Br. at 18–19. To the extent not otherwise defined, capitalized short-form terms have the meanings set forth in the UBS Br.

failed to meet their pleading burden of proving their timeliness to file the suit and/or their 'lack' of knowledge to toll the statute of limitations."). Plaintiffs' argument that Puerto Rico law does not impose a pleading burden is contrary to this controlling authority and should not be credited.[2]  Moreover, regardless of Plaintiffs' failure to plead that they lacked knowledge of their claims, there was abundant publicly available information that put Plaintiffs on notice before May 2013. For this reason as well, Plaintiffs' tort claims must be dismissed.

### A. Plaintiffs' Alleged Injuries Occurred at the Time of Purchase

Plaintiffs argue that they could not have been on notice of their injury by May 2013 because their injury did not occur until "mid-2013," when the Funds "precipitously" dropped in value. This argument confuses the injury with circumstances giving notice of the injury. Plaintiffs' alleged injury occurred when they bought the shares, which was more than a year before bringing this lawsuit in May 2014—a fact that they do not dispute. *See Rodriguez v. Banco Cent.*, 727 F. Supp. 759, 779 (D.P.R. 1989) (plaintiffs who alleged defendants misrepresented nature of investment were injured at the time they made "the payments . . . that were induced by misleading statements."); *Gould v. Berk & Michaels, P.C.*, No. 89 CIV. 5036 (SWK), 1991 WL 152613, at *5 (S.D.N.Y. July 29, 1991) (holding that where an investor purchases a security alleged to have been sold in breach of a duty, "the injury is suffered [ ] when plaintiffs purchased shares").[3]

---

[2] Plaintiffs rely on *Villarini-Garcia v. Hosp. Del Maestro, Inc.*, 8 F.3d 81 (1st Cir. 1993), which does not discuss pleading and *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007), which does not concern Puerto Rico law and notes only that a court should not *sua sponte* dismiss a complaint.

[3] *See also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998) (plaintiffs who alleged defendants misrepresented risks of investment "sustained recoverable out-of-pocket losses when they invested; namely, the difference between the value of the security they were promised and the one they received."). The difference between the injury itself and the circumstances that give rise to notice is demonstrated by Plaintiffs' own cases. In *Delgado Rodriguez v. Nazario de Ferrer*,

2

Although a precipitous drop in the value of a security could be one factor that puts a plaintiff on notice of his injury, it is not the injury itself.  Security prices often fluctuate.  If a precipitous drop constitutes an injury, it begs the question of whether a large or moderate drop also constitutes an injury or whether, if the value were to subsequently increase, there would be any injury at all.  Here, the Funds dropped (and gained) in value prior to mid-2013.  For example, certain Funds "declined by 10–15%" in 2009.  *See* Youngwood Decl. Ex. 6 (SEC Order) ¶ 4.  This decline could have put Plaintiffs on notice of their purported injury—*i.e.*, that they allegedly purchased high-risk investments—but that does not mean that it constituted the injury itself.  *See Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 129 F.3d 222, 225 (1st Cir. 1997) (where broker attested to the "low risk" of securities, a ten percent drop in market value put investor on notice that broker "had not accurately described the investment.").  Puerto Rico law is clear that injury is not defined in such subjective terms.  *See Ortiz v. Municipio De Orocovis*, 13 P.R. Offic. Trans. 619, 622 (P.R. 1982) ("[Plaintiff] could not wait for his injury to reach its final degree of development and postpone the running of the period of limitation according to his subjective appraisal and judgment.").

### B.   Plaintiffs Were on Notice of Their Injuries Before May 2013

Even if Plaintiffs had pled that they lacked knowledge of their injury (which they did not), dismissal is still required because public information put Plaintiffs on notice of their injury and "the person" who caused it prior to May 2013.  The crux of this lawsuit is that

---

21 P.R. Offic. Trans. 342, 357 (P.R. 1988), the court distinguished between the "moment when the damage is caused" and the "moment when the aggrieved party becomes aware of it," and in *Ortega v. Pou*, No. CE-93-318, 1994 WL 909288 (P.R. Apr. 7, 1994), the court found that a plaintiff who underwent a defective sterilization procedure "learned that she had suffered 'a damage'" at the time she discovered her pregnancy; it did not find that her discovery of the pregnancy was the time she suffered a damage.

Defendants purportedly "steered" clients to invest in the Funds, portraying them as "safe" investments, while they were really "high-risk" and unsuitable. Compl. ¶¶ 1–5. The UBS Defendants allegedly did so in order to "line their own pockets" with fees earned from their various "conflicted" roles. *Id.* Yet, the very risks associated with the Funds that purportedly made them unsuitable were fully disclosed in prospectuses which stated that, *inter alia,* at least 67% of assets would be invested in Puerto Rico securities; the Funds would be leveraged up to 50%, which "may cause you to lose some or all amounts invested"; UBS entities acted as underwriter, investment advisor, and administrator; and the Funds would engage in transactions directly with UBS entities. *See* Youngwood Decl. Ex. 1 at 2–4. These disclosures were sufficient to put Plaintiffs on notice of their alleged injuries at the time they purchased the Funds. *See Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 351 (2d Cir. 1993) ("[Prospectuses] put a reasonable investor on constructive notice that she had not been sold investments of the type she sought."); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 414 (S.D.N.Y. 2010) (disclosure of fees and taxes in user agreement triggered an "objectively reasonable consumer's 'duty to inquire.'"). Further, these risks and the UBS Defendants' purported misconduct were the subject of lawsuits and an SEC investigation, and received widespread publicity, all before May 2013. For example:

- In February 2010, Plaintiffs' counsel brought a class action complaint alleging that certain UBS Defendants "breach[ed] their fiduciary and other duties to the Funds and their shareholders" by "us[ing] the Funds as a dumping ground for toxic pension bonds underwritten by UBS Financial." Youngwood Decl. Ex. 7 ¶ 76.

- In May 2012, the Securities Action was filed alleging that UBS PR and UBS Trust made "misrepresentations and omissions of material facts to . . . retail customers in Puerto Rico regarding [the Funds]" and "fraudulent[ly] conceal[ed] . . . [the] nature of the Funds and the risks and volatile nature inherent in them." *Id.* Ex. 8 ¶¶ 5, 71.

- In May 2012, the SEC issued an order stating that UBS PR "made misrepresentations and omissions of material facts to numerous retail customers in Puerto Rico" regarding pricing

4

of the Funds and "failed to disclose the conflict of interest created by recommending [Funds] to investors while selling its own shares." *Id*. Ex. 6 ¶¶ 1, 43.

- The allegations in the Securities Action and SEC order also were widely reported in 2012, including in the Associated Press, Bloomberg, Caribbean Business, El Nuevo Día, and a U.S. News and World Reports article titled, "Investor Confidence in UBS May Be Misplaced." UBS Br. at 15–17.

Contrary to Plaintiffs' assertions, these and other storm warnings (*see* UBS Br. at 14–18) plainly put them on notice of "whom to sue." *See Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 16 (1st Cir. 1997) (notice requires only that "plaintiff knew or with the degree of diligence required by law would have known whom to sue.").[4] The risks of the Funds, as disclosed in the prospectuses, connected any alleged injury from these risks to Defendants. Moreover, the fact that the well-publicized lawsuits and SEC proceedings were brought against UBS also put Plaintiffs on notice that the UBS Defendants purportedly caused the alleged injuries. Indeed, in *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 429–34 (2d Cir. 2008), cited by Plaintiffs, the court found that certain prior lawsuits and articles did not provide inquiry notice because they made no mention of the defendant and instead focused on general industry misconduct. Here, in contrast, the storm warnings were specifically about the Funds and Defendants' purported misconduct.

That Plaintiffs do not bring the exact claims as were alleged in the Securities Action and SEC proceedings does not negate the storm warnings. Notice of injury does not require that the same claims have previously been brought, only that there "exist some outward . . . signs through which the aggrieved party may become aware and realize that he has suffered an injurious aftereffect." *Torres*, 219 F.3d at 19. Regardless, the Securities Action and the

---

[4] Plaintiffs rely on inapposite medical malpractice cases that involved a factual dispute over when plaintiffs were on notice that their injuries were caused by defendants' negligence as opposed to the underlying condition being treated. *See, e.g.*, *Espada v. Lugo*, 312 F.3d 1, 4 (1st Cir. 2002).

5

SEC proceedings (as well as the 2010 lawsuit, which Plaintiffs do not distinguish) include many of the key allegations brought here.[5]  Ferrer Reply 5–9; *Salgado v. Piedmont Capital Corp.*, 534 F. Supp. 938, 951 (D.P.R. 1981) ("[T]he statutory period d[oes] not await . . . leisurely discovery of the full details of the alleged scheme."); *Dodds*, 12 F.3d at 352 ("An investor does not have to have notice of the entire fraud being perpetrated to be on inquiry notice."); *Staehr*, 547 F.3d at 435 ("allegations that are similar to *some of* the key allegations in the instant complaint" would provide notice if they had been publicized) (emphasis added).

Finally, Plaintiffs' allegation that the UBS Defendants touted the Funds as safe and conservative investments does not nullify the notice Plaintiffs received.  *See Cooperativa Ahorro y Credito Aguada v. Kidder, Peabody & Co*., 942 F. Supp. 735, 739 (D.P.R. 1996), *aff'd sub nom*, 129 F.3d 222 (1st Cir. 1997) ("[B]lind faith in the assurances of an investment advisor does not constitute due diligence . . . ."); *Dodds*, 12 F.3d at 352 (affirming dismissal of suit as time barred given disclosures in prospectuses, even where broker assured plaintiff that investments were suitable).  The very conflicts that Plaintiffs argue maximized the risks of the Funds (and were purportedly unknown to Plaintiffs until mid-2013) were, in fact, expressly disclosed by UBS in the prospectuses and were alleged, *inter alia,* in the SEC proceedings and the Securities Action.  *See* UBS Br. at 14–17.  Moreover, the UBS Defendants' denial of wrongdoing in the SEC proceedings and the Securities Action does not

---

[5]  Plaintiffs incorrectly assert that because Defendants successfully opposed consolidation of this action with the Securities Action, Defendants should be estopped from arguing that the Securities Action provided notice of Plaintiffs' claims.  For estoppel to apply, the statements at issue must be "clearly inconsistent," the former position must have been adopted by the court, and the party asserting the two positions must derive unfair advantage.  *DeRosa v. Nat'l Envelope Corp*., 595 F.3d 99, 103 (2d Cir. 2010).  Defendants' arguments against consolidation are not inconsistent with finding the Securities Action (along with other storm warnings) put Plaintiffs on notice of their claims, and the Court did not rule on the similarity of the cases.  *See* Order, ECF #52 (Jan. 30, 2015).

6

defeat inquiry notice. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig*., 289 F. Supp. 2d 429, 433 (S.D.N.Y. 2003) ("A plaintiff's duty to inquire is not dissipated merely because of a defendant's denial of wrongdoing.").

## II.   PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM FAILS

Plaintiffs have failed to plead their fiduciary duty claim because (i) Plaintiffs' account agreements make clear they were owed no fiduciary duty; and (ii) Plaintiffs' generalized allegations are insufficient to state a breach of duty, reliance, or damages.[6]

### A.   No Fiduciary Duty Attached to Plaintiffs' Accounts

Plaintiffs do not dispute that they entered into non-discretionary brokerage accounts with UBS.  As set forth in the applicable CRAs, a fiduciary duty only attaches when a client opens a separate investment advisory account which requires the execution of a separate written agreement, neither of which are alleged.  *See, e.g.*, Millett Aff. Ex. A at 50 ("[I]f you are establishing an investment advisory account with us . . . you will be required to execute both an investment advisory agreement and a brokerage account agreement.").  Furthermore, the CRAs for five of the six UBS Plaintiffs expressly disclaim a fiduciary duty.  *See e.g.*, *id.* ("It is important to note that when we act as your broker-dealer, we do not enter into a fiduciary relationship with you.").  This alone precludes Plaintiffs' claim.  *See* UBS Br. at 21.

Despite this unambiguous language, Plaintiffs argue that a section of Puerto Rico's securities law, Regulation 6078, imposes a fiduciary duty upon UBS because a provision of the CRAs states: "[w]hen we act as your broker, we are held to the legal standards of the Securities Exchange Act of 1934, the Securities Act of 1933, the rules of self-regulatory organizations such as the National Association of Securities Dealers (NASD) and the New

---

[6] Plaintiffs' allegations are deficient under both Rule 9(b) and Rule 8.  *See* Popular Reply at 2–3.

7

York Stock Exchange and state law, where applicable." This general language makes no mention of fiduciary duties or Regulation 6078, and, in each CRA in which it appears, it is followed by the explicit disclaimer of a fiduciary duty. *See e.g.*, Millet Aff. Ex. A at 50. Under basic principles of contract interpretation, this general reference to "state, law where applicable," cannot reasonably be read to override the specific terms disclaiming a fiduciary duty. *In re AMR Corp.*, 485 B.R. 279, 302 (Bankr. S.D.N.Y. 2013) ("[A] basic princip[le] on contract interpretation . . . is that specific terms in a contract will override the general.").

Furthermore, the choice-of-law provisions in Plaintiffs' CRAs require that New York, not Puerto Rico, law apply to their tort claims. Under New York law, a choice-of-law clause applies to tort claims where it encompasses the "relationship between the contracting parties." *See McPhee v. Gen. Elec. Int'l, Inc.*, 736 F. Supp. 2d 676, 681–82 (S.D.N.Y. 2010), *aff'd*, 426 F. App'x 33 (2d Cir. 2011) (finding clause that applies to "any claim arising from the employment relationship" governs tort claims); *Chiste*, 756 F. Supp. 2d at 409 (finding clause that applies to "any dispute of any kind that arises between [contracting parties]" governs tort claims). *Finance One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325 (2d Cir. 2005), cited by Plaintiffs, is not to the contrary. There, the court found that a choice-of-law clause did not apply to tort claims because it narrowly stated that "[t]his Agreement will be governed by and construed" under New York law. *Id.* at 332. The choice-of-law clause in the CRAs, on the other hand, expressly applies to both the "agreement" and "the relationship between [client] and [UBS]."[7] As such, it necessarily encompasses the breach of fiduciary duty and aiding and abetting claims, which both pertain to the UBS Plaintiffs' relationship with UBS.

---

[7] Plaintiff Velez Montes' CRA only applies to the contract. *See* UBS Br. at 12.

Moreover, even if there were no choice-of-law provisions, New York law would still apply because there is no conflict between New York and Puerto Rico law.[8] New York adheres to the general rule that "there is no general fiduciary duty inherent in an ordinary broker/customer relationship." *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998); *see* Popular Br. at 24–26. Plaintiffs cite to no Puerto Rico cases finding such a duty, as a result of Regulation 6078 or otherwise. Accordingly, no fiduciary duty attaches to Plaintiffs' non-discretionary brokerage accounts, whether under New York or Puerto Rico law. *See Lumbermens Mut. Cas. Co. v. Dillon Co.*, 9 F. App'x 81, 83 (2d Cir. 2001) (finding where a jurisdiction is "silent on the disputed issue," court will adopt the rule used by "numerous [other] courts and jurisdictions").

### B. Plaintiffs Fail to Allege a Breach, Reliance or Damages

To the extent brokers owe any fiduciary duties under New York law, they are limited and transaction-specific. *See* UBS Br. at 21–23.[9] Plaintiffs do not dispute that their generalized allegations—which contain no information at all regarding the transactions at issue—fail to state a breach of this standard. Nonetheless, Plaintiffs assert, without support,

---

[8] Plaintiffs wrongly assert that the UBS Defendants waived an argument that they do not owe a fiduciary duty to Plaintiffs. The UBS Defendants argued in their opening brief that New York law applies and that, under New York law, UBS did not owe Plaintiffs a fiduciary duty. In response, Plaintiffs argue that Puerto Rico law applies. The UBS Defendants are now entitled to respond. In the opening brief, the UBS Defendants also stated that, with respect to the fiduciary duty claim, Puerto Rico Law is not in conflict with New York—*i.e.*, no fiduciary duty attaches under either law—the same argument advanced here. UBS Br. at 12. For this reason as well, Plaintiffs' waiver argument has no merit. *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (reply may appropriately address issues within a "broader and subsuming argument" in the moving papers).

[9] Plaintiffs' cases are inapposite. *Sergeants Benev. Ass'n Annuity Fund v. Renck*, 19 A.D.3d 107, 111 (1st Dep't 2005), concerns the duties owed by asset managers. *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991), does not comment on the scope of the fiduciary duty, and, the general language Plaintiffs cite in *BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 700 (2d Cir. 1993), only applies on a "transaction by transaction basis." *Blum v. Spaha Capital Mgmt., LLC*, 44 F. Supp. 3d 482, 497 (S.D.N.Y. 2014) (discussing *BAII Banking*).

9

that they may avoid their pleading burden by styling their complaint as a putative class action, Opp. at 24 n.16. This argument, however, is contrary to the case law. *See* UBS Br. at 10; *In re Apple REITS Litig.*, No. 11-CV-2919 (KAM), 2015 WL 1345328, at *3–5 (E.D.N.Y. Mar. 25, 2015) (holding that complaint brought on behalf of a putative class of "individual retail investors, typically retirees" alleging that their broker sold them unsuitable investments and made misrepresentations failed to state a claim for breach of the transaction-specific fiduciary duties or for the existence of any more general duties).

Plaintiffs' generalized allegations also fail to plead reliance, and regardless, given the disclosures contained in the prospectuses, reliance on the purported misrepresentations would be unreasonable. Plaintiffs now argue that the prospectuses did not sufficiently put them on notice of the Funds' risks, but this was not pled and must be disregarded. *See G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 265–66 (S.D.N.Y. 2001). Moreover, the disclosures were not "boilerplate"; the specific risks were disclosed. *See supra* Section I.B.; UBS Br. at 9–10, 14. Plaintiffs also fail to plead that they were individually damaged. Plaintiffs rely on generalized allegations and argue, without any authority, that the drop in value of the Funds caused class members to lose money. Contrary to Plaintiffs' assertion this does not suffice to plead damages. *See* UBS Br. at 23.[10]

### III.  PLAINTIFFS' AIDING AND ABETTING CLAIM FAILS

Even if Plaintiffs had sufficiently alleged a primary breach, they do not plead the other required elements of their aiding and abetting claim against UBS AG, UBS Trust, and Carlos

---

[10] Contrary to Plaintiffs' argument, their fiduciary duty claim also must be dismissed as duplicative of their contract claim. *See MashreqBank, psc v. ING Grp. N.V.*, No. 13 CIV. 2318 (LGS), 2013 WL 5780824, at *5 (S.D.N.Y. Oct. 25, 2013) (dismissing as duplicative fiduciary duty claim of plaintiff with discretionary brokerage account); *Brooks v. Key Trust Co. Nat'l Ass'n*, 26 A.D.3d 628, 630 (3d Dep't 2006) (same).

Ubiñas. Plaintiffs do not dispute that they did not allege these defendants had actual knowledge of the purported fiduciary status or breaches. *MLSMK Invs. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 144–45 (S.D.N.Y. 2010). Moreover, allegations that UBS Trust managed an investment fund that held notes issued by the Funds, Compl. ¶ 68, fail to show substantial assistance, which requires that the defendant's affirmative assistance cause plaintiff's harm. *See Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001). Allegations regarding UBS AG's subsidiaries and an entity for which Mr. Ubiñas was an officer, Compl. ¶ 70, are insufficient to state a claim against UBS AG or Mr. Ubñas. *See In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 519 (S.D.N.Y. 2011).

## IV. PLAINTIFFS' CONTRACT CLAIM FAILS

Plaintiffs do not dispute that most of the alleged obligations they claimed were breached either are not actually terms of their contracts or else govern only investment advisory relationships and, as such, are inapplicable. Plaintiffs now narrow their claim to provisions (which only appear in certain Plaintiffs' CRAs) that require UBS to have a reasonable basis for believing that its investment recommendations to a client are suitable based on that client's risk profile and investment objectives. UBS Br. at 24–27. Plaintiffs do not dispute that they failed to plead facts that suggest any investment was unsuitable for any particular Plaintiff. Instead, Plaintiffs now assert that, in order to state a claim, they need only broadly allege that Defendants did not conduct suitability analyses. Opp. at 30. Plaintiffs, however, cite to no cases to support this proposition and it is not the law. *See Frota v. Prudential-Bache Sec., Inc.*, 639 F. Supp. 1186, 1191 (S.D.N.Y. 1986) (dismissing unsuitability claim because of failure to allege plaintiffs' "investment goals and objectives" and noting that plaintiffs may have been "interested in more speculative investments"). Moreover, having conceded that they do not plead any of their investments are unsuitable,

11

Opp. at 30, Plaintiffs cannot claim they were damaged by any investment recommendation, which is a necessary element of their claim.  UBS Br. at 28.[11]

## V. PLAINTIFFS LACK STANDING TO BRING CLAIMS WITH RESPECT TO FUNDS IN WHICH THEY DID NOT INVEST

Plaintiffs do not dispute that they lack Article III standing with respect to Funds they did not purchase.  Opp. at 56.  Those claims must therefore be dismissed, and cannot be saved by Plaintiffs' (unsupported) assertion that in the future they can show "class standing."  *See Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484 (JS) (AKT), 2015 WL 2344134, at *4 (E.D.N.Y. May 14, 2015) (dismissing claims concerning product not purchased and holding that "[b]ecause Plaintiffs do not have Article III standing to assert claims arising from the marketing of the [product they did not purchase], the Court need not determine whether Plaintiffs have class standing to do so").  Moreover, Plaintiffs do not plead that the Funds had the same holdings or concentrations of holdings as each other.  *See Ret. Bd. of the Policemen's Annuity & Ben. Fund v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) (finding no "class standing" for investment in which plaintiffs did not invest where claims could depend on investment-specific proof).  Additionally, the Popular Plaintiffs do not dispute that they have no standing to bring claims against the UBS Defendants.

## CONCLUSION

For the foregoing reasons, the UBS Defendants' motion to dismiss should be granted.

---

[11] To the extent Plaintiffs claim a breach of the implied covenant of good faith, this must be dismissed as duplicative "because it is based on the same facts as those underlying the contract claim."  *See Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 452 (S.D.N.Y. 2014).

Date:   August 21, 2015.

                       Respectfully submitted,

                       SIMPSON THACHER & BARTLETT LLP

                       By: /s/ Jonathan K. Youngwood

                       Jonathan K. Youngwood
                       Janet A. Gochman
                       425 Lexington Avenue
                       New York, New York 10017
                       Telephone: (212) 455-2000
                       Facsimile: (212) 455-2502

                       *Attorneys for the UBS Defendants*